# Exhibit C

UNITED STATES DISTRICT COURT
for the
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **LOGANTREE, LP** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Civil Action No. 2:15-cv-1575** |
| **FITBIT, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF THEODORE L BRANN

1. My name is Theodore L. Brann.  I am over eighteen years of age, of sound mind, and competent to make this declaration.

2. I submit this Declaration in support of Plaintiff's Motion for Reconsideration of Order Granting Defendant's Motion to Transfer Venue to the Northern District of California or, in the Alternative, Motion to Transfer Venue to the Western District of Texas.

3. I am the inventor of the patent-in-suit (re-examined U.S. Patent No. 6,059,576).

4. I live at my home in Boerne, Texas with my wife, Anne Brann.  My home in Boerne, Texas, is my only residence.  I have lived in the Boerne, Texas area continuously since August of 1998.

5. I have lived in Texas my entire life except for two brief periods of less than one year each when I lived in Utah.  I have never lived in Nevada or California.

### My Relationship to Plaintiff LoganTree, LP

6. In or about August 2002, I created the Plaintiff, LoganTree, LP ("LoganTree") as a limited partnership under the laws of the State of Nevada.  I chose the name LoganTree because my wife and I had our sealing ceremony in 1976 at the Mormon Temple in Logan, Utah.

7. I created LoganTree in consultation with legal counsel in order to provide greater legal protection to my intellectual property, namely, the patent-in-suit, and to provide myself

and my family with greater protection from personal liability in the event of litigation involving the patent. Accordingly, I assigned my rights, title, and interest in the patent to LoganTree shortly after creating the company.

8. My wife and I lived in Boerne, Texas at the time I created LoganTree in 2002. I have never lived in Nevada. I organized LoganTree under the laws of Nevada based on the advice of my counsel at the time.

9. My wife and I were the original General Partners of LoganTree. In approximately 2011, however, in consultation with my counsel at the time, I created Gulfstream Ventures, LLC ("Gulfstream") as a limited liability company under the laws of the State of Nevada, for the purpose of having Gulfstream act as the General Partner for LoganTree. My wife and I are the sole Managing Members of Gulfstream.

10. My wife and I lived in Boerne, Texas at the time I created Gulfstream in 2011. I organized Gulfstream under the laws of Nevada based on the advice of my counsel at the time.

11. Today, my wife and I are the sole Managing Members of Gulfstream, which itself is the sole General Partner of LoganTree.

12. LoganTree and Gulfstream have no physical presence in Nevada. The business addresses listed in LoganTree's and Gulfstream's filings with the Nevada Secretary of State are the addresses of their registered agents for service of process in Nevada.

13. I am the only person who acts on behalf of either LoganTree or Gulfstream, and I do so from my home in Boerne, Texas. All business activities involving LoganTree and Gulfstream occur at my home in Boerne, Texas, and all decisions concerning Gulfstream and LoganTree are made by me in Boerne, Texas.

14. All documents pertaining to LoganTree and Gulfstream are located at my home in Boerne, Texas.

**My Health Issues and Physical Limitations**

15. I suffer from painful and debilitating back injuries that severely limit my mobility and ability to travel or engage in many other normal activities. I am unable to fly and unable to drive or travel long distances by automobile. I am therefore extremely concerned that transferring this litigation more than 1,700 miles from my home in Boerne, Texas to San Francisco, California, will make it difficult if not impossible for me to participate in important aspects of the litigation, including testifying at trial.

16. I have suffered from back pain since injuring my back during a fall in 1970 while serving in the U.S. Air Force.

17. Beginning in 1996, I have had a series of procedures or surgeries intended to alleviate my back pain and improve my mobility. In or about 1996, I underwent a laser disc decompression. In or about 2003, I underwent a mitre procedure to widen my spinal canal. Most recently, in late 2004, I underwent a surgical fusion of four of my vertebrae.

18. Unfortunately, these surgeries did not alleviate my back problems, but exacerbated them instead. As a consequence, I am now suffering the worst pain and most severely limited mobility of my life, and I now require another surgery to reverse the effects of the unsuccessful spinal fusion performed in 2004. In particular, my physicians have informed me that the two lower screws implanted in my spine have come loose, causing me intense pain when even slight stress or pressure is applied to my back.

19. The pain resulting from my unsuccessful spinal fusion is intense, and I have been prescribed and have used morphine for approximately twelve years for pain relief. On a typical day, I take five to six 60 mg morphine tablets, plus additional 15mg tablets for spikes in my pain as necessary.

20. Due to my daily use of morphine to alleviate my back pain for more than a decade, I am physically dependent on morphine. My physicians advise me that even if I am able to surgically correct my current back problems, I should still expect for it to take six months or more after surgery to safely wean me off of morphine.

21. Even with morphine treatment, I am severely limited in my ability to do many normal daily activities and I spend much of my day reclined in bed or in a chair. I try to limit the amount of time and distance that I need to walk, and when I do walk I often need to use a cane or walker. If I sit for even a few minutes, my legs and feet will often become numb and cold, making it difficult or impossible to walk without assistance or operate the pedals of a car. Frequently when I stand after sitting, I find that I urgently need to urinate, and have less than a minute to make it to a restroom. I have had Type 2 Diabetes for over 20 years.

22. My back pain and associated symptoms make it impossible for me to fly, and my primary care physician, Dr. Victor Vela, has instructed me not to fly until I am able to have additional surgery to correct my back problems. I would not be able to sit in an airplane seat, even a first class seat, without experiencing excruciating pain. I am also concerned that I would be unable to stand and walk to an airplane lavatory in time to relieve myself if I were to attempt to travel by airplane. Attempting to maneuver through an airport, and navigate airport security, would also be difficult, if not impossible, and extremely painful for me.

23. I also cannot drive or travel long distances as the passenger in an automobile. Driving is particularly difficult, and even dangerous, for me due to the numbness I experience in my legs and feet after sitting, which makes it difficult or impossible for me to operate the car's pedals. I am also sometimes unable to drive due to my use of morphine to alleviate

my back pain. My back pain, foot and leg numbness, limited mobility, and frequent need to urinate also make it impossible for me to travel long distances as the passenger in a automobile. As a result, I rarely travel any further than the approximately thirty-minute drive to San Antonio, Texas.

24. My doctors have informed me that the only way to effectively alleviate my back pain is to perform surgery to remove the loose and degraded hardware implanted during my spinal fusion procedure. I urgently hope to have surgery soon, but I have been unable to schedule the surgery yet due to the complicated nature of my case and other health issues that have delayed the procedure.

25. First, many surgeons refuse to perform "do-over" surgeries to fix problems created or exacerbated by prior surgeries, and I have contacted physicians who have declined to operate on me for this reason. Second, other health conditions have forced me to delay my surgery. In particular, I experience chest pain for which I have sought treatment in the emergency room approximately four or five times over the last two years. This had caused my physicians concern that my heart may not be healthy enough for surgery.

26. In November 2015, I attempted to have a heart catheterization performed to determine if my heart is healthy enough for surgery on my back. This catheterization procedure is normally performed in a supine (lying) position so that a catheter can be inserted through the patient's groin. This posture was intensely painful for me, as the loose screws in my back were pressed against the table on which I was told to lie. Approximately ten minutes into the procedure, the anesthesiologist canceled the procedure because I was in too much pain to proceed. I was finally able to have the catheterization procedure performed in April of this year after identifying a physician who specializes in performing the procedure through the wrist rather than the groin, allowing me to undergo a thirty minute procedure instead of a four to six hour one. The procedure showed that I am healthy enough for back surgery.

27. I have identified a neurosurgeon who may be willing to perform the surgery. I have an MRI scheduled to be performed in the next few days, after which I will make an appointment with the neurosurgeon to discuss the procedure in question. I do not know when the surgery might be scheduled or how long it will take to recover.

## Location of Other Evidence and Witnesses

28. Because I am the inventor of the patent-in-suit and the only person who acts on behalf of LoganTree or Gulfstream, all documents in Plaintiff's possession, custody, or control pertaining to this case are located at my home in Boerne, Texas. These include documents pertaining to my work on the patented invention, my application for the patent-in-suit, my application for a re-examination of the patent-in-suit, and my efforts to market the patented invention.

29. In 1996, I incorporated a company named Bio Kinetics Corporation ("Bio Kinetics") in Texas as the vehicle for developing and marketing a device based on the patented technology that we called BackTalk. In brief, the BackTalk device is designed to monitor and report on the user's body movements in order to help the user to recognize proper lifting mechanics and the necessity of developing overall awareness of the user's operating environment. This system was proven to train the user to develop an awareness of when the user is in an at-risk situation and what the user can do to eliminate or minimize the risk of being injured on the job. The user is educated in proper lifting mechanics and assessment. Basically, the user is trained to "Think Safety."

30. In 1998, acting through Bio Kinetics, a company named Paradigm Manufacturing in Austin, Texas was contracted to build slightly over 2,000 BackTalk devices.

31. In 2002, I and other representatives of Bio Kinetics met with and demonstrated the BackTalk Training and Safety System to representatives of the H.E.B. chain of grocery stores at H.E.B.'s headquarters in San Antonio, Texas, and provided H.E.B. with several BackTalk devices to use and test. In 2004, Bio Kinetics entered into a contract with H.E.B. pursuant to which Bio Kinetics agreed to lease BackTalk units to H.E.B., provide reports to H.E.B. based on data downloaded from the BalkTalk devices, and to service the devices needed. At any given time since the contract went into effect in 2004, H.E.B. has leased approximately 70-100 BackTalk devices from Bio Kinetics.

32. All documents pertaining to Bio Kinetics, the development and marketing of the BackTalk device, and Bio Kinetics' contractual relationship with H.E.B. are located with me in Boerne, Texas.

33. Kevin Holguin, the Corporate Safety Manager for H.E.B., has been my principal point of contact with H.E.B. since we first approached H.E.B. in 2002. Mr. Holguin works for H.E.B. in San Antonio, Texas.

34. My son, Jeremy Brann, who assisted me with the invention of the patented technology and is a knowledgeable witness, lives in Humble, Texas.

## My Choice of Forum

35. For all of the reasons set forth above – including my limited mobility and extremely limited ability to travel and the location of records, witnesses, and evidence supporting my claim – I chose to file my lawsuit against FitBit in the nearest federal district court in Texas with a reputation for patent expertise and expeditious handling of patent infringement lawsuits. In consultation with my attorneys, I decided that the Eastern District of Texas was the most appropriate venue for this action given its relatively close location to my home, its active patent docket, the fact that it has patent-specific local rules, and its reputation for patent expertise and expeditious handling of patent cases.

36. I am gravely concerned that transferring this case to the Northern District of California will adversely impact my ability to participate meaningfully in the prosecution of the case. Because of my back problems, I will not be able to fly or drive to San Francisco to attend hearings, depositions, or testify at trial. Although my back problems would also make travel to Marshall, Texas difficult, Marshall is approximately 1,300 miles closer to my home than San Francisco, California, and is a much more convenient venue for me. However, if this Court should determine that the Eastern District of Texas is not an appropriate venue for this action, the Western District of Texas would be more convenient than the Northern District of California for all the reasons set forth herein.

I declare under penalty of perjury that the foregoing is true and correct.


_Theodore L. Brann_

Theodore Brann