# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LOGANTREE LP | |
| *Plaintiff*, | |
| v. | CIVIL ACTION NO. 6:17-CV-01217 |
| GARMIN INTERNATIONAL, INC., and GARMIN USA, INC. | |
| *Defendants*. | |

## PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

Pursuant to District of Kansas Local Patent Rule 4.5, Plaintiff, LoganTree LP ("Plaintiff or "LoganTree"), submits its Responsive Claim Construction Brief, and requests that the Court deny the attempts of Garmin International, Inc. and Garmin USA, Inc. ("Defendants" or "Garmin") to invalidate the asserted Patent claims as "indefinite" or impermissibly narrow the claim terms.

## TABLE OF CONTENTS

**Page:**

I. INTRODUCTION………………………….............................................................................1

II. LEGAL STANDARD……………...........................................................................................4

III. ARGUMENT ..........................................................................................................................7

      A.       "First time stamp information reflecting a time at which the movement
data causing the first user-defined event occurred"……………………………………7

      B.       "Angle" and "Velocity" ..........................................................................................9

      C.       "Unrestrained movement in any direction"……………………………………...12

IV. CONCLUSION ......................................................................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*Acumed LLC v. Stryker Corp.*, 483 F.3d 800 (Fed. Cir. 2007) ....................................................... 8

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334 (Fed. Cir. 2016) .......................... 18

*Amgen Inc. v. F. Hoffman–LA Roche Ltd.*, 580 F.3d 1340, 1371 (Fed. Cir. 2009) ..................... 24

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348 (Fed. Cir. 2013) ......... 10, 12

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367 (Fed. Cir. 2004) ...................... 18

*BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360 (Fed. Cir. 2017)........................................ 17

*Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 949 (Fed. Cir. 2007) ........................... 24

*Biosig Instruments, Inc.*, 783 F.3d at 1378-79 .............................................................................. 18

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d. 134 (Fed.
    Cir. 2001 ....................................................................................................................................... 9

*Capital Sec. Sys., Inc. v. NCR Corp.*, No. 1:14-CV-1516, 2016 WL 3517595, at *4 (N.D. Ga.
    June 28, 2016) ............................................................................................................................ 24

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002)....................................... 10

*Commil USA, LLC*, 135 S. Ct. at 1929............................................................................................ 22

*Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920 (2015) ..................................................... 16

*CSB-Sys. Int'l Inc.*, 2011 WL 3240838, at *17.............................................................................. 24

*Eon Corp. IP Holdings LLC v. Silver Spring Network, Inc*. 815 F.3d 1314 (Fed. Cir. 2016)........ 8

*Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001)............... 24

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002) ........................... 17

*Home Diagnostics, Inc.*, 381 F.3d at 1358..................................................................................... 10

*In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359 (Fed. Cir. 2004) ............................................. 16

*In re Miller*, 441 F.2d 689, 169 USPQ 597 (CCPA 1971).............................................................. 23

*Int'l Dev. LLC v. Richmond*, No. CIV.A. 09-2495, 2010 WL 4703779, at *7 (D.N.J. Nov. 12,
    2010)............................................................................................................................................ 24

*Junker v. Med. Components, Inc.*, No. CV 13-4606, 2017 WL 4922291, at *2 (E.D. Pa. Oct. 31,
    2017). .......................................................................................................................................... 24

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ..................................................... 8

*McCarty v. Lehigh Val. R.R. Co.*, 160 U.S. 110 (1895)............................................................ 13,15

*Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91 (2011) ................................................................. 17

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014). .................................. 10,11,17,18

*O2 Micro Int'l Ltd.*, 521 F.3d at 1360............................................................................................. 9

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); ............................. 8, 9, 10, 12, 13, 14,24

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291 (Fed. Cir. 2014) .................... 13,14

*SuperGuide Corp. v. DirecTV Enters, Inc.*, 358 F.3d 870 (Fed. Cir. 2004) ................................. 12

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 135 S. Ct. 831 (2015) ....................... 8, 11

*Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012)............................... 10

*U.S. Surgical Corp.*, 103 F.3d at 1568........................................................................................... 8

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ...................................... 9, 14

*W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540 (Fed. Cir. 1983) ............................... 23

**Statutes**                                                                      **Page(s)**

35 U.S.C. § 282(a) .......................................................................................... 17, 18

35 U.S.C. § 112(a) ............................................................................................... 17

35 U.S.C. § 282(a), .............................................................................................. 17

35 U.S.C. § 112..................................................................................................... 24

# I.    **INTRODUCTION**

Contrary to the very narrow narrative Defendants paint, the '576 patent is broadly directed to a portable, self-contained device for monitoring movement of body parts during physical activity.  **Ex. A**, '576 Patent at 2:6-9.  The device includes a movement sensor for measuring data associated with unrestrained movement in any direction and generating signals indicative of the movement.  *Id*. at 4:37-48.  The movement sensor is electronically connected to a microprocessor which receives the signals generated by the movement sensor for analysis and subsequent processing.  *Id.* at 4:52-55.  The microprocessor is connected to a real-time clock to provide date and time information to the microprocessor.  *Id.* at 5:35-37.  In the '576 patent, user-programmable configuration information can be entered by a user, and the user-programmed operation parameters are uploaded to the microprocessor for use by the microprocessor.  *Id.* at 5:59-6:9, 7:6-11.

Using the microprocessor, the '576 patent interprets the physical movement data measured by the sensor using the user-programmed operation parameters and the real-time clock.  *Id.* at 5:40-47.  The '576 patent stores the physical movement data in a memory.  *Id.* at 5:57-59.  The microprocessor detects a user-defined event using the physical movement data and the user-programmed operation parameters.  *Id.* at 40-47.  The microprocessor also stores first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred.  *Id.*

Figure 2C provides a clear example of the invention in practice:



FIG. 2C

*Id.*, at Fig. 2C.  As shown in Fig. 2C, the device 12 is worn by a person for monitoring movement of body parts during physical activity.

LoganTree asks for the Court to see past Defendants' attempts to narrow the claims by improperly limiting the invention of the '576 Patent using its "Title," "Background" section, or "goals."  Any such attempts by Defendants fall outside of the fundamentals of patent law, where the claims govern the subject matter of the invention.  Claims 1 and 20 have been set forth in full below for the Court's convenience, highlighting the terms or claim phrases brought into dispute by the Defendants.

Claim 1 recites:

>A portable, self-contained device for monitoring movement
>of body parts during physical activity, said device comprising:

a movement sensor capable of measuring data associated with **unrestrained movement in any direction** and generating signals indicative of said movement;

a power source;

a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters, detecting a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data, and storing first event information related to the detected first user-defined event along with **first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred**;

at least one user input connected to said microprocessor for controlling the operation of said device; and

a real-time clock connected to said microprocessor;

memory for storing said movement data;

an output indicator connected to said microprocessor for signaling the occurrence of user-defined events;

wherein said movement sensor measures the **angle** and **velocity** of said movement.

Claim 20 recites:

A method to monitor physical movement of a body part comprising the steps of:

attaching a portable, self-contained movement measuring device to said body part for measuring **unrestrained movement in any direction**;

measuring data associated with said physical movement;

interpreting, using a microprocessor included in the portable, self-contained movement measuring device, said physical movement data based on user-defined operational parameters and a real-time clock;

storing said data in memory;

detecting, using the microprocessor, a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data; and

storing, in said memory, first event information related to the detected first user-defined event along with **first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred**.

Through the claim construction process as governed by the Local Rules, Garmin has placed the following terms and phrases in dispute: (1) first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred, (2) angle, (3) velocity, and (4) unrestrained movement in any direction.

LoganTree is adamant that these terms and phrases are clear on their face to one of ordinary skill in the art and should be accorded their plain and ordinary meaning.  To the extent LoganTree has provided alternate claim constructions, these constructions were provided out of an abundance of caution to avoid an instance where Defendants created scope disputes and provided an overly narrow construction.  *Cf. Eon Corp. IP Holdings LLC v. Silver Spring Network, Inc*. 815 F.3d 1314, 1320 (Fed. Cir. 2016) (finding that because the scope of the terms at issue was disputed during claim construction, the court improperly left the issue of claim scope to the jury when it construed the terms as having their plain and ordinary meaning).

## II.      <u>LEGAL STANDARD</u>

Claim construction is a matter of law.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-91 (1996).  Construction may, however, depend on the determination of certain facts by the court. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 324-25 (2015).  A person having ordinary skill in the art often can easily understand claim terms without the need for any further construction, especially in the context of the surrounding words of the claim.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005); *see also U.S. Surgical Corp.*, 103 F.3d at 1568 (providing that claim construction is "not an obligatory exercise in redundancy"); *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007) ("[A] sound claim construction need not always purge every shred of ambiguity.").  "[A] district court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word

in the asserted claims." *O2 Micro Int'l Ltd.*, 521 F.3d at 1360; *see also Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d. 1341, 1349 (Fed. Cir. 2001).

While claim terms are viewed from the perspective of the hypothetical person of ordinary skill in the art, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id*. at 1314. There is a "heavy presumption" that a claim term or phrase has its ordinary and customary meaning. *See, e.g.*, *Epistar Corp. v. ITC*, 566 F.3d 1321, 1334 (Fed. Cir. 2009).

Accordingly, to begin claim interpretation, the Court should first read the claim language in light of the intrinsic evidence—the specification and the prosecution history. *Phillips*, 415 F.3d at 1313-17. The specification, which includes all of the text before the claims, as well as the drawings or figures of the patent, is "highly relevant to the claim construction analysis . . . [and] [u]sually it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Courts may look to the prosecution history as part of the intrinsic record; however, the prosecution history lacks the clarity of the specification and is often less useful for claim construction purposes. *Phillips*, 415 F.3d at 1317. Finally, if necessary, courts may consider "extrinsic evidence," which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* (citation omitted). However, where claim terms are clear and supported within the specification, there is "no reason to resort to consideration of extrinsic

evidence." *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1358 (Fed. Cir. 2013).  Further, "extrinsic evidence . . . is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (citation omitted).  In fact, because "extrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation [it] can suffer from bias that is not present in intrinsic evidence." *Id*. at 1318.

"There are only two exceptions to this general rule to interpret a claim term or phrase to have its ordinary and customary meaning: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).  To be a lexicographer, the "patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Id*. (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)).  The same clear intent is required for disavowal: "Absent a clear disavowal or contrary definition in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language." *Home Diagnostics, Inc.*, 381 F.3d at 1358.  As shown below, neither of these exacting conditions is present here.

### A.    Applicable Legal Principles for Indefiniteness.

To determine whether an accused infringer can meet its burden of proof of clear and convincing evidence to show invalidity by indefiniteness, a claim is "to be read in light of the patent's specification and prosecution history." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 908 (2014).  "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those

skilled in the art about the scope of the invention."  *Id*. at 901.  "The definiteness requirement must take into account the inherent limitations of language.  'Some modicum of uncertainty . . . is the price of ensuring the appropriate incentives for innovation.'"  *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015) (quoting *Nautilus*, 572 U.S. at 909).

## III.   ARGUMENT

### A.  "First time stamp information reflecting a time at which the movement data causing the first user-defined event occurred"

For the phrase "first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred," Garmin is insisting on the inclusion of the word "system" in its construction of the phrase.  As described below, this insertion of "system" alone into the definition violates the principles of claim construction by attempting to unnecessarily limit the claims.

| Term/Phrase At Issue | LoganTree's Position | Defendants' Position |
|---|---|---|
| "first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred" | LoganTree believes that no construction of this language is needed.  To the extent the Court chooses to construe it, LoganTree believes that the following construction is appropriate:<br><br>"first time stamp information reflecting a system time associated with the movement data occurrence causing the first user-defined event" | "first time stamp information reflecting a system time at which the movement data causing the first user-defined event occurred" |

Defendants' construction offers nothing but a narrowing and self-serving limitation in an effort to have this Court rewrite the claims so that they can try to avoid infringement.  As shown in their proposed construction, Defendants do not have any issue understanding the term "time."

Rather, Defendants seek to impermissibly limit the claims to "read a limitation into otherwise unambiguous language." *SuperGuide Corp. v. DirecTV Enters, Inc.*, 358 F.3d 870, 876-81 (Fed. Cir. 2004) (finding that the claim language "regularly received television signal" did not limit the disputed phrases to any particular type of technology or signal format).

Defendants go to great length and provide pages of analysis of the intrinsic evidence to make its argument regarding the "at which" phrase. [1] *See* Defendants' Opening Claim Construction Brief at 7-10. In doing so, however, Defendants reveal that the intrinsic evidence is incredibly clear in supporting the scope of the phrase "first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred." Nowhere does the intrinsic evidence provide for the phrase "<u>system</u> time." The insertion of the term "system" must, therefore, stem from some form of extrinsic evidence.

Typically, only if necessary, will courts consider "extrinsic evidence," which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317. However, where claim terms are clear and supported within the specification, there is "no reason to resort to consideration of extrinsic evidence." *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1358 (Fed. Cir. 2013). Further, "extrinsic evidence . . . is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (citation omitted).

Defendants attempt to add a limitation to an otherwise understood term. Federal Circuit principles repeatedly reject this practice. Defendants cannot "add[ ] language without support from

---

[1]     LoganTree does not agree with each and every assertion made of LoganTree's actions within this analysis.

the specification or prosecution history, altering otherwise unambiguous claim language" "instead of looking to the words themselves." *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1299 (Fed. Cir. 2014); *see also Phillips*, 415 F.3d at 1312 ("[W]e look to the words of the claims themselves . . . to define the scope of the patented invention." (alternation in original) (citation omitted)); *McCarty v. Lehigh Val. R.R. Co.*, 160 U.S. 110, 116 (1895) ("[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim . . . we should never know where to stop.").

With respect to LoganTree's alternate proposed construction, LoganTree offered this construction again out of an abundance of caution in case the Court adopts Defendants' overly narrow construction. In this regard, during the preliminary exchange of constructions, Defendants proposed the following construction: "First time stamp information reflecting the exact time of day (e.g., hour:minute) at which the movement data causing the first user-defined event occurred." In light of the findings *Eon Corp. IP Holdings LLC v. Silver Spring Network, Inc.*, LoganTree felt obligated to propose an alternate construction.

**B.   "Angle" and "Velocity"**

| Term/Phrase At Issue | LoganTree's Position | Defendants' Position |
|---|---|---|
| "angle" | LoganTree believes that no construction of this language is needed. To the extent the Court chooses to construe it, LoganTree believes that the following construction is appropriate:<br><br>a measure of the amount of movement | The space between two intersecting planes at the point where they meet. |
| "velocity" | LoganTree believes that no construction of this language is needed. To the extent the Court chooses to construe it, | Speed of something in a given direction |

| | LoganTree believes that the following construction is appropriate:<br><br>rate of change of angular position | |
|---|---|---|

LoganTree is fuzzy on the logic behind Defendants' reasoning for the dispute on the terms "angle" and "velocity".  LoganTree also provides the following in its infringement contentions.



Source: https://buy.garmin.com/en-US/US/p/529988

**Ex. B**, Excerpt from LoganTree's Appendix C to its Amended Infringement Contentions.   If Garmin is taking the position that its devices' do not measure the angle and velocity of movement, then this appears to be a question of fact for the jury.

The '576 Patent explains this technology in a straightforward and clear manner in its claims and specification, and thus extensive claim construction is not necessary.  Rather, consistent with the "'heavy presumption' that claim terms carry their accustomed meaning" to those of skill in the art, the Court should generally decline to redefine the claims except to the extent necessary to explain technical terms for easier understanding by the lay jury.  *See, e.g.*, *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1355 (Fed. Cir. 2004).

Claim terms are generally given their ordinary and customary meaning.  *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Only after considering the intrinsic evidence and only where an ambiguity persists should courts turn to extrinsic evidence.  *Id.*  Moreover, extrinsic evidence should *not* be used to "contradict or override intrinsic evidence." *Id.* at 1583.  Still, intrinsic evidence is "the most significant source of the legally operative meaning of disputed claim language."  *Id*. at 1582.

It is LoganTree's position that the terms "angle" and "velocity" do not require any further defining.   Their customary and ordinary meaning are used throughout the specification in a consistent manner.  *See* **Ex. A** '576 Patent at 2:38-41, 3:32-62, and 3:35-52; *see also* 1:58-67, 2:38-41, and 4:37-45.  Moreover, the definitions provided by Defendants are submitted to contradict or override the intrinsic evidence provided by the specification.  In this regard, the term "angle" has more than one definition in the dictionary utilized by Defendants.  The other definition for "angle" provides for "*a measure of the amount of turning necessary to bring one line or plane into coincidence with or parallel to another.*"  *See* Webster's New Collegiate Dictionary, G. and C.

Merriam Company, 1981, pg. 44.  It is LoganTree's position that the term "angle" includes both definitions.

Furthermore, one of ordinary skill in the art would readily recognize that the broader term "velocity" includes both linear velocity and angular velocity.  The specification of the '576 patent uses the terms angular velocity, speed, and velocity.  *See* **Ex. A** '576 Patent at 1:58-67, 2:38-41, and 4:37-45.  Since the claims include the broader term velocity, the scope of the term velocity should include both linear and angular velocity.  Moreover, the term "velocity," in the broader sense, also has more than one definition in the dictionary utilized by Defendants.  The other definition for "velocity" provides for angular velocity as "*the time rate of change of angular position that has direction and sense such that the motion appears clock-wise to one looking in the direction of the vector.*"  *See* Webster's New Collegiate Dictionary, G. and C. Merriam Company, 1981, pg. 44.  It is LoganTree's position that the term "velocity" includes both definitions.

### C.  Alleged Indefiniteness of "unrestrained movement in any direction"

Defendants' attempt to invalidate the '576 Patent through this claim construction proceeding is meritless, and, at best, premature.  Patent "[v]alidity and infringement are distinct issues, bearing different burdens, different presumptions, and different evidence." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929 (2015); *see Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993) ("A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement.").  "Invalidity is an affirmative defense that 'can preclude enforcement of a patent against otherwise infringing conduct.'" *Commil USA, LLC*, 135 S. Ct. at 1929 (quoting 6A Chisum on Patents § 19.01, p. 19–5 (2015)). Because, pursuant to 35 U.S.C. § 282(a), "[a] patent shall be presumed valid," a defendant in an infringement case seeking to raise the defense of invalidity must show such invalidity "by clear and convincing

evidence." *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 97 (2011); *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1228 (Fed. Cir. 2016) ("Any fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence.").

That a patent may be found invalid for indefiniteness is a natural corollary to the requirement in 35 U.S.C. § 112(a) that the "specification shall contain a written description of the invention" in "full, clear, concise, and exact terms." As the Supreme Court has explained,

> [a] patent holder should know what he owns, and the public should know what he does not. For this reason, the patent laws require inventors to describe their work in "full, clear, concise, and exact terms," 35 U.S.C. § 112, as part of the delicate balance the law attempts to maintain between inventors, who rely on the promise of the law to bring the invention forth, and the public, which should be encouraged to pursue innovations, creations, and new ideas beyond the inventor's exclusive rights.

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002).

Under the operative standard, "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "Reasonable certainty does not require absolute or mathematical precision." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017) (quotation marks omitted).

First, the '576 patent carries a presumption of validity that can only be rebutted by clear and convincing evidence. *See Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004). Defendants, as the party alleging indefiniteness, bears this burden of proof to show the patents are indefinite, and thus invalid. *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1345 (Fed. Cir. 2016); *see also* 35 U.S.C. § 282(a). Defendants have not met their burden to show that the disputed claim phrase is indefinite.

The Supreme Court in *Nautilus, Inc. v. Biosig Instruments, Inc.*, established that a patent is indefinite only "if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901. The standard imparted by the Supreme Court "mandates clarity, while recognizing that absolute precision is unattainable." *Id*. at 910. Thus, "the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter." *Id*. (citations omitted); *Biosig Instruments, Inc.*, 783 F.3d at 1378-79.

The claims of the '576 Patent, including the phrase "unrestrained movement in any direction," when read in light of the specification and the prosecution history, inform those skilled in the art about the scope of the invention. First, the specification of the '576 Patent provides support and illustration for the phrase "unrestrained movement in any direction." *See* **Ex. A**, '576 Patent, Figures 2A-2C, reproduced below. In each of the example embodiments shown in these figures, the device 12 is shown as providing no restraint on the free movement of the wearer to be measured by the device. In this regard, the downloadable, self-contained device can be worn at various positions along the torso or appendages being monitored depending on the specific physical task being performed. *Id*. at 2:21-24. Moreover, the self-contained movement measuring device 12 may be worn by the individual being monitored in a variety of positions based on the specific movement being observed, the particular application in which the device is used, and the convenience of the wearer. *Id*. at 3:25-31.



FIG. 2A



FIG. 2B



FIG. 2C

The Specification of the '576 Patent also provides that the device 12 may include a low G, multi-axis accelerometer, which supports measuring unrestrained movement in any direction. *See* **Ex. A**, '576 Patent at 4:48-52.

Turning to the prosecution history, the claims of the '576 Patent including the phrase "unrestrained movement in any direction," in view of the prosecution history, continue to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  For example, in arguing against an anticipation rejection, the application argued as follows:

> The Examiner has rejected claims 1, 2, 4-7, 9-11, 13-17, 21, 23-27 and 29 under Section 102(b) as being anticipated by U.S. Pat. No. 5,052,375 issued to Stark et al. The Examiner states that Stark "broadly discloses the concept of the system and method for monitoring physical movement of the body part." The Examiner apparently misunderstands the applicant's invention. Stark describes an orthopedic limb immobilization device while applicant's invention is designed to measure an individual's free movement of

limb or torso. In particular, Stark's invention is an orthopedic <u>restraining</u> device used to immobilize and rehabilitate injured human limbs by providing controlled <u>resistance</u> to movement of the limb. The device monitors the force exerted by the wearer via the injured limb through <u>stress sensing means.</u> And it is this sensed data which is monitored and recorded by the device.  The only real movement measured by Stark's device is the relative angular position of the "distal end sections" of the device (col. 2, line 55-58) about an adjustable hinge. Stark does not describe a highly portable device used to measure torso or limb movement along multiple axes, including distance and speed of the movement, <u>without</u> any restraint to the movement as is taught by applicant's invention. Thus, Stark's disclosure does not anticipate any of the claims made by the applicant in the present invention.

**Ex. C** '576 Patent, Original Prosecution File History, Amendment & Response dated May 4, 1999,

initialed by Examiner, page 3.  Moreover, in arguing against an obvious rejection, the application

argued as follows:

> The Examiner has rejected claims 3, 22, 28 and 30 under Section 103 as being unpatentable over Stark in view of Pratt. However, this rejection is ill-founded. Pratt, just as with Stark, discloses a device which is a "resisting apparatus" (col. 3, lines 8-9). This is in direct opposition to applicant's device which allows the wearer to move in any desired direction and with any desired speed for purposes of monitoring the wearer's movement. Thus, while both Stark and Pratt disclose devices used to restrain or resist the wearer's movement, applicant's device does not and in fact could not in order for it to be used for its intended purpose. The wearer of the applicant's device is not restrained in any way, and this is critical in order to monitor the wearer's natural motion for analysis, whether while performing physical labor or athletic drills. Furthermore, applicant's invention measures and records a wide variation of movement speeds whereas Pratt simply controls the device resistance in order to maintain constant speed throughout the movement (claim 6). Thus, nothing in these two references integrate to form the unique and non- obvious aspects claimed in claims 3, 22, 28 and 30.

**Ex. C** '576 Patent, Original Prosecution File History, Amendment & Response dated May 4, 1999,

initialed by Examiner, pages 3-4.  It is clear from the foregoing that the movement to be measured

by the device is not to be restrained.

In their Opening Claim Construction Brief, the Defendants construct a creative argument that the claims of the '576 Patent are now indefinite because LoganTree is allegedly applying "different constructions in front of the Patent Office and this Court."  Defendants' Opening Claim Construction Brief at 14.  To concoct such a creative argument, the Defendants make the assertion that a Helmet particularly configured to record and store data relating to translational and angular accelerations of a person's head due to impact forces acting thereon is "just like" Defendants' activity tracker worn as a watch that tracks a number of steps taken.  This inventive argument lacks merit for the following reasons.

First, as stated above, the rule of law is clear – a patent is indefinite only if its claims, read light in light of the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  *Nautilus*, 572 U.S. at 901.  Defendants' utilization of LoganTree's infringement contentions, which can be subject to be supplemented or amended based on, for example, future discovery, is improper.[2]  Patent "[v]alidity and infringement are distinct issues, bearing different burdens, different presumptions, and different evidence."  *Commil USA, LLC*, 135 S. Ct. at 1929.

Second, LoganTree's usage and position that the claims require that the movement measured be unrestrained during the prosecution history have remained consistent.  In this regard, LoganTree's statement that "[a]ny such movement measured here is believed to be restrained" with respect to the Helmet system disclosed in U.S. Patent No. 5,978,972 to Stewart ("Stewart") in the *Inter Partes* Review proceedings is submitted to be consistent with LoganTree's positions

---

[2]     While it is asserted that discussion of the infringement contentions is not relevant to the discussion of invalidity, LoganTree's infringement contentions are not believed to be inconsistent with the positions taken in the prosecution history of the '576 Patent.  Nevertheless, if this Court disagrees with LoganTree in this matter, LoganTree would request permission to supplement or amend the infringement contentions to resolve any alleged inconsistency.

regarding previously argued prior art discussed above.  Stewart's disclosure is ripe with support that would inform a person of ordinary skill in the art that the Helmet structure is configured to measure movement where the movement being measured is restrained.  *See* **Ex. D**, at 1:24-28 (the invention "relates to a helmet-based system which is typically worn while playing a sport such as boxing or football, and to the method of recording and storing data relating to translational and angular accelerations of the person's head due to <u>impact forces acting thereon</u>") (emphasis added); *see also* 10:44-59 ("Studies of boxers have shown accelerations to frequently be in range of 20 G's, with many punches being between 50 and 100 G's, while predictions were made that some boxers may <u>deliver punches resulting in head accelerations</u> as high as 260 Gs . . . .  The HAT device is easily capable of <u>measuring blows in excess of 80 to 100 G's</u> in less than 0.1 second, but has a useful range of up to 250 G's with Entran accelerometers.") (emphasis added); 4:20-25 ("In sports such as boxing where the bout is scored with the number of punches of a certain <u>force connecting to the head</u>, scoring is made difficult by conventional observational techniques of scoring.") (emphasis added); 14:4-14 ("For instance, in boxing, it is possible to <u>correlate certain responses of the accelerometers . . . with desirable punches</u> exceeding a predetermined threshold . . . .") (emphasis added).  Defendants are reminded that a prior art reference must be considered in its entirety.  *See W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed. Cir. 1983).  Moreover, the breadth of a claim is not to be equated with indefiniteness.  *In re Miller*, 441 F.2d 689, 169 USPQ 597 (CCPA 1971).

Even though Defendants are submitted to have fallen short of their burden to show that the disputed claim phrase is indefinite, LoganTree urges the Court to engage in the indefiniteness inquiry at a later more appropriate stage of the litigation.  "A determination that a patent claim is invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112 is a legal conclusion

that is drawn from the court's performance of its duty as the construer of patent claims." *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 949 (Fed. Cir. 2007); *accord Amgen Inc. v. F. Hoffman–LA Roche Ltd.*, 580 F.3d 1340, 1371 (Fed. Cir. 2009) ("Indefiniteness is a question of law."). Yet district courts throughout the country have generally been reluctant to consider whether a patent is indefinite at the claim construction phase, rather than at the summary judgment phase. *See*, *e.g.*, *Junker v. Med. Components, Inc.*, No. CV 13-4606, 2017 WL 4922291, at *2 (E.D. Pa. Oct. 31, 2017). "Several well-settled principles . . . tend to discourage rulings on indefiniteness at the Markman stage," including the high burden of proof a defendant must satisfy—clear and convincing evidence—as well as an indefiniteness ruling's dispositive effect. *CSB-Sys. Int'l Inc.*, 2011 WL 3240838, at *17; *see also Int'l Dev. LLC v. Richmond*, No. CIV.A. 09-2495, 2010 WL 4703779, at *7 (D.N.J. Nov. 12, 2010) ("[R]ather than giving meaning to a claim, as a Markman hearing is meant to do, indefiniteness invalidates the patent claims entirely. *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001). This dispositive effect is more appropriately tackled at summary judgment. Thus, this Court finds persuasive the determinations of several other courts to defer indefiniteness until summary judgment."); *Capital Sec. Sys., Inc. v. NCR Corp.*, No. 1:14-CV-1516, 2016 WL 3517595, at *4 (N.D. Ga. June 28, 2016) ("The Federal Circuit has made clear that it has 'certainly not endorsed a regime in which validity analysis is a regular component of claim construction.'" (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005))).

In the present case, given the aforementioned jurisprudence, the current alleged issue of indefiniteness are premature at such an early stage of the litigation.

# IV.    CONCLUSION

For at least the foregoing reasons, LoganTree respectfully requests this Court to deny the attempts of Defendants to invalidate the asserted Patent claims as "indefinite" or impermissibly narrow the claim terms.

DATED: May 15, 2020                                     Respectfully submitted,

                                                        FOULSTON SIEFKIN LLP

                                                        By:  /s/ *Clayton J. Kaiser*
                                                        Clayton J. Kaiser, #24066
                                                        Foulston Siefkin LLP
                                                        1551 N. Waterfront Pkwy, Suite 100
                                                        Wichita, Kansas 67206
                                                        (316) 291-9539
                                                        (866) 280-2532 FAX
                                                        Email: ckaiser@foulston.com

                                                        *and*

                                                        /s/ *Christopher M. Barkley*
                                                        Arnold Shokouhi, TX (*pro hac vice*)
                                                        Christopher Barkley (*pro hac vice*)
                                                        James E. Sherry, TX (*pro hac vice*)
                                                        McCathern, PLLC
                                                        3710 Rawlins Street, Suite 1600
                                                        Dallas, TX 75219
                                                        (214) 443-4478
                                                        (214) 741-4717 FAX
                                                        Email: arnolds@mccathernlaw.com
                                                        Email: cbarkley@mccathernlaw.com
                                                        Email:  jsherry@mccathernlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2020, Plaintiff's Responsive Claim Construction Brief was filed with the Clerk of the Court using CM/ECF and that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document.

/s/ Clayton J. Kaiser
Clayton J. Kaiser
