**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| LOGANTREE LP,<br><br>                              Plaintiff,<br><br>vs.<br><br>GARMIN INTERNATIONAL, INC. and<br>GARMIN USA, INC.,<br><br>                              Defendants. | Case No. 6:17-cv-01217 |

## DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF

As set forth under District of Kansas Local Patent Rule 4.5, Defendants Garmin International, Inc. and Garmin USA, Inc. ("Garmin") submits this Reply Claim Construction Brief.

**Table of Contents**

I.   *ARGUMENT* ............................................................................................................ *1*

  A.  **LoganTree Concedes the Need for this Court's Aid** ...................................... **2**

  B.  **First Time Stamp Information** ........................................................................ **3**

  C.  **"Angle" and "Velocity"** ................................................................................. **8**

II.  *CONCLUSION* ..................................................................................................... *14*

## Table of Authorities

**Cases**

*Conagra Foods Food Ingredients Co., Inc. v. Archer-Daniels-Midland Co.*, No. 12-cv-2171-EFM-KGS, 2013 WL 2455932 (D. Kan. June 5, 2013) ......................................................... 10

*Eon Corp. IP Holdings LLC v. Silver Spring Networks*, *Inc.*, 815 F.3d 1314 (Fed. Cir. 2016) ..... 3

*Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323 (Fed. Cir. 2001) ........................... 8

## I.     ARGUMENT

LoganTree's responsive brief focuses almost exclusively on two specific disputes: (1) "first time stamp information," and (2) whether "unrestrained movement" is indefinite. The dispute on the first time stamp originally centered around the question of whether the time stamp must reflect a time "at which" the movement occurred (as Garmin contends) or some amorphous time "associated with" the movement (as LoganTree contends). That dispute is now moot because LoganTree concedes the intrinsic record supports Garmin's construction. In LoganTree's own words: "the intrinsic evidence is incredibly clear in supporting the scope of the phrase 'first time stamp information reflecting a time ***at which*** the movement data … occurred." ECF No. 91, at 8 (emphasis added). Instead, LoganTree now argues that the time stamp cannot be the "system time." But this argument ignores the plain meaning and understanding of a time stamp. Both the intrinsic record and the testimony of both parties' experts during the Patent Office proceedings confirm that a time stamp is a record from the computer system's internal clock (e.g., its *system clock*) that reflects the precise time at which an event occurs within the computer system (e.g., a *system time*). Akin to a time clock for an employee, the time stamp allows someone to see the precise time at which an event occurs. Because the time stamp comes from the computer system itself, Garmin proposes (and LoganTree previously proposed) that the time stamp be construed to indicate it is the "system time" to help clarify what the time is, and from where it comes. LoganTree's opposition brief does not cite a shred of evidence that shows the '576 Patent using time stamp in a manner contrary to its plain and easily understood meaning. For this reason, Garmin requests that "time stamp information reflecting a time at which the movement data … occurred" be construed as "time stamp information reflecting a *system time* at which the movement data … occurred."

On the question of "unrestrained movement," the parties are in agreement that the '576 Patent contemplates "unrestrained" as the opposite of a "restraining device used to immobilize … human limbs." However, Garmin's argument on indefiniteness rests on LoganTree's shifting positions before this Court and the Patent Office that have made it impossible for anyone—the court, the parties, the jury, or an expert—to determine how, why, and when LoganTree finds a measuring device to be unrestrained versus restrained (sensors noted in red):

| '576 Patent<br>Unrestrained | '576 Patent<br>Unrestrained | '576 Patent<br>Unrestrained | Accused Products<br>Unrestrained | Stewart's HAT System<br>*Restrained and Immobilized* |
|---|---|---|---|---|
|  |  |  |  |  |
| Sensor on shoulder | Sensor on hip | Sensor on chest | Sensor on wrist | Sensor on head |

The head worn system does not immobilize the head any more than Garmin's watch immobilizes the arm or LoganTree's sensor immobilizes the hips or torso. Yet only LoganTree can determine the true scope of its claims. And by removing the clarity required by the law, LoganTree has made it impossible to determine the scope of the claims and has thus rendered the claims indefinite.

## A. LoganTree Concedes the Need for this Court's Aid

LoganTree asserts each disputed term's "plain and ordinary" meaning should apply but it fails to explain any legal or factual basis for this vague assertion. Notably, LoganTree provides very little explanation of this position. Instead, LoganTree spends much of its time arguing against

2

its own claim constructions and offering completely new constructions. It is clear from LoganTree's own briefing that the parties' dispute centers on *what* those plain and ordinary meanings are. And as LoganTree conceded throughout its brief, Federal Circuit precedent is clear that it would be legal error to "determin[e] only that the terms should be given their plain and ordinary meaning" in a case such as this where "the parties actively dispute[] the scope" of the claim terms at issue. *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1320 (Fed. Cir. 2016); *see also* ECF No. 91, at 4, 9. As such, Garmin respectfully requests this Court apply constructions (or find the claim indefinite) rather than simply saying "plain and ordinary" and deferring this dispute for either summary judgment or pre-trial where they will have to be resolved prior to being sent to the jury.

### B.  First Time Stamp Information

| Claim Term | Garmin's Proposal | LoganTree's Proposal |
|---|---|---|
| First time stamp information reflecting a time at which the movement data causing the first user-defined event occurred | First time stamp information reflecting a system time at which the movement data causing the first user-defined event occurred. | LoganTree believes that no construction of this language is needed. To the extent the Court chooses to construe it, LoganTree believes that the following construction is appropriate:<br><br>First time stamp information reflecting a system time associated with the movement data occurrence causing the first user-defined event. |

At the time of Garmin's opening brief, there was only a single dispute between the parties—whether the claim required the time stamp to be a time "at which" the movement occurred or simply a time that was "associated with" the movement. That dispute shifted in LoganTree's responsive brief where LoganTree focused the dispute on the question of what the time stamp is and from where it comes, arguing that the time stamp cannot be the "system time." ECF No. 91, at 7-8. This issue was not addressed in Garmin's original brief because the parties previously had

3

agreed that the time created by the time stamp is the "system time" and Garmin adopted this language from LoganTree's own proposal. **Ex. A** *Correspondence between LoganTree's and Garmin's counsel regarding JCCS and LoganTree's draft Ex. A to JCCS*; ECF No. 82, Ex. A, at 4. Regardless of why LoganTree is now running from its own construction, the evidence overwhelmingly shows that the time from the time stamp is the "system time at which" the event occurred.[1]

The question of what a time stamp is and from where it comes cannot reasonably be disputed. Time stamps are well known to persons of ordinary skill in the art (and to a lay jury)—they create a record (i.e., a "stamp") that reflects the precise time at which an event occurs within a computer system (i.e., a *system time*). In operation, a computer system uses time stamps as follows. Within each computer is an internal, real-time clock. *See, e.g.,* '576 Patent, at 5:33-39. When a particular event occurs, the system obtains a readout from its internal clock reflecting the precise time at the moment the event in question occurred. *Id.*, at 5:44-47. The system then creates a record of that event along with the time stamp indicating the precise time of the event. *Id.*

A simple example is the Court's email inbox, which includes a list of received emails, each with a time stamp indicating the system time at which the email was received. Another example of a time stamp would be a time clock used for an employee clocking in for a shift. There, the employee inserts her timecard into the employer's time clock. The time clock then "stamps" the employee's timecard with the precise time the employee clocked in for work, which is obtained from the time clock's (e.g., the system's) internal clock. Notably, the time stamp records the time at which the employee clocked in, not merely some amorphous time "associated with" when she

---

[1] Curiously, LoganTree's brief at page 7 in the chart noting "LoganTree's Position" still indicates the "appropriate" construction encompasses "system time."

arrived at work. If the time stamp merely indicated the employee clocked in "before 12:00 pm" (a time "associated with" when she arrived), it would be worthless to both her and her employer for keeping an accurate record of her hours. Instead, by utilizing the precise time obtained from the system clock at which she arrived and clocked in, a full and complete record of the employee's work hours is retained.[2]

The invention of the '576 Patent utilizes its time stamp in exactly the same way—it is the system time at which an event occurred. Both the intrinsic record and the expert declarations submitted by both parties to the Patent Office during the IPR proceeding support this construction.

First, the intrinsic record. The computerized system of the '576 Patent is designed to be worn on an individual and, when some specific event is recognized, the device "records the time and date of the occurrence." '576 Patent, Preamble. The time and date come from "a real-time clock connected to the microprocessor," which is the clock utilized by the system. *Id*, Fig. 4 (noting "clock 46"); Fig. 5A (block 98 noting "Rec[ord] D[ate]/T[ime]"); 5:35-37 ("The clock 46 also serves as a real time clock to provide date and time information to the microprocessor 32"); 5:44-47 ("If a recordable event occurs, the microprocessor 32 retrieves the date/time stamp from the clock 46 and records the event information along with the date/time stamp in memory 50."); 9:48-51 ("If the first angle limit has been exceeded, the microprocessor … records the event along with the date and time 98."). Precision also is important to the invention of the '576 Patent. Indeed, the the '576 Patent emphasizes that one of its "significant feature[s]" is that it "gives instant

---

[2] The same time stamp is utilized in the Court's ECF filing system, which creates a time stamp and allows the Court to see the precise time at which a filing was submitted. The importance of the precision of the time stamp is further highlighted in this scenario where the time at which a filing is submitted is crucial for determining whether a filing was late or on time, something that cannot be accomplished if the time stamp is simply an amorphous time associated with the filing (e.g., a filing around midnight as opposed to a filing at 12:01 a.m.).

information to the wearer **at the moment of incorrect movement** and also records the information for future reference and analysis." *Id.*, at 6:16-19. Recording the exact moment of incorrect movement is done through "a date/time stamp." *Id.* at 6:20-21. Thus, the time stamp must record the system time with enough precision to identify "the moment" it occurred. This is precisely what the claims mean by requiring the time stamp to reflect "the time at which" the event occurred as determined by the system time from the computer system itself.

Turning to the Patent Office proceedings, Garmin's and LoganTree's experts both provided declarations indicating their understanding that the claimed time stamp information was a recording of date and time information obtained from the system's real-time clock, i.e., a system time. *See* **Ex. B**, *Excerpts from IPR Declaration of Garmin Expert Andrew Singer*, at ¶ 33 ("Further, Holder's device stored real-time clock data alongside the sensed physical data for analysis, thus 'time stamping' the data"); *see also id.* at ¶ 65 ("a first timestamp, including the time and date the spearing event was detected…"); ¶ 64-68; **Ex. C**, *Excerpts from IPR Declaration of LoganTree Expert Vijay Madisetti*, at ¶ 96 ("Petitioner also argues that [the time stamp] limitation is satisfied because Richardson calculates the time of a step's footfall, and that when a cruise control alarm condition is triggered the footfall is recorded. Although, every footfall is recorded, ***it is unclear that the timestamp would 'reflect' the time at which the movement data causing the event occurred***, as recited."). And the Patent Office itself also agreed with this meaning of time stamp. **Ex. D**, *Excerpt from IPR Institution Decision*, at 13-14. In its decision instituting the proceeding, the Patent Office noted "[Garmin] has made an adequate showing [of the timestamping function]. In particular, Rush discloses a recording means that may record ***the time and date*** of each instance in which potentially injurious activity occurs." *Id.*

Garmin's proposal (and LoganTree's prior proposal) for time stamp reflects the usage of the term from the specification, the parties' experts, and the Patent Office, all of which agree the time stamp comes from the "system time" and reflects the precise time "at which" the movement data causing the first user-defined event occurred.

LoganTree's proposal, which rewrites the claim language to remove "at which" and replace it with an amorphous phrase where the time is merely "associated with" the movement data lacks all such intrinsic and extrinsic support.[3]  LoganTree's re-written claim is shown below:

| Claim Term | LoganTree's Changes to the Claim |
|---|---|
| First time stamp information reflecting a time at which the movement data causing the first user-defined event occurred | First time stamp information reflecting a system time ~~at which~~ associated with the movement data occurrence causing the first user-defined event ~~occurred~~. |

Garmin's opening brief detailed, at length, the problems with changing "at which" to "associated with," but LoganTree provides no substantive response. Moreover, LoganTree did not cite a shred of intrinsic or extrinsic evidence supporting its alternative "associated with" language. ECF No. 91, at 7-9. In fact, LoganTree concedes that the intrinsic record is "incredibly clear" in support of Garmin's "at which" proposal:

> In doing so, however, Defendants reveal that the intrinsic evidence is **incredibly clear in supporting the scope of the phrase** 'first time stamp information reflecting a time **at which** the movement data causing the first user-defined event occurred.

*Id*. at 8. Thus, it appears that LoganTree has now abandoned its suggestion to rewrite "at which" to "associated with" and to change "movement data" to "movement data occurrence."

---

[3] Curiously, LoganTree also rewrites "movement data" to be "movement data occurrence" without any explanation of why it has done so, or what this alternative language even means. Because Garmin's proposal mirrors the claim language and because LoganTree has failed to explain the rationale for this modification, this Court should reject LoganTree's alternative language.

Accordingly, Garmin asks the Court to adopt its proposed construction, which is centered on the claim language itself and LoganTree's own proposal. *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) ("In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point out and distinctly claim the subject matter which the patentee regards as his invention.'").

### C. "Angle" and "Velocity"

| Claim Term | Garmin's Proposal | LoganTree's Proposal | LoganTree's Responsive Brief Proposal |
|---|---|---|---|
| Angle | The space between two intersecting planes at the point where they meet. | LoganTree believes that no construction of this language is needed. To the extent the Court chooses to construe it, LoganTree believes that the following construction is appropriate:<br><br>A measure of the amount of movement. | A measure of the amount of turning necessary to bring one line or plane into coincidence with or parallel to another. |
| Velocity | Speed of something in a given direction. | LoganTree believes that no construction of this language is needed. To the extent the Court chooses to construe it, LoganTree believes that the following construction is appropriate:<br><br>Rate of change of angular position. | Includes both the speed of something in a given direction and the time rate change of angular position that has direction and sense such that the motion appears clock-wise to one looking in the direction of the vector. |

### 1. Angle

LoganTree's responsive brief advances a definition for angle that actually ***differs*** from its actual proposed construction. ECF No. 91, at 11-12. LoganTree contends that a definition for "angle" reciting "a measure of the amount of turning necessary to bring one line or plane into coincidence with or parallel to another" should be included ***along with Garmin's own provided***

*definition*. *Id.* ("It is LoganTree's position that the term 'angle' includes ***both*** definitions.") (emphasis added). But LoganTree's own alternative construction does not reflect that assertion. LoganTree's proposed alternative construction more broadly encompasses "a measure of the amount of movement," which would grossly broaden the definition of angle to include simple measures of distance (e.g., feet, meters, or miles). Obviously, no person of ordinary skill in the art would understand the term "angle" to encompass measures of distance let alone explain how a protractor could even be used to measure a distance. And LoganTree's brief appears to abandon its prior proposal because it provides no support for its prior construction. Turning to the definition advocated for by LoganTree, it simply adds more confusion and stretches the interpretation of angle far beyond what is described in the '576 Patent. Garmin respectfully requests the Court adopt its proposed construction and avoid introducing the confusion of measuring distance through angles as suggested by LoganTree.

    2.  <u>Velocity</u>

It is telling that regardless of whether Garmin's proposal or LoganTree's proposal for velocity is adopted, the measuring of pace by Garmin's Accused Products—what LoganTree has mapped as reading on the velocity limitation—would not read on either parties' construction. Thus, to streamline resolution of this motion for the Court, Garmin is willing to agree to LoganTree's alternative construction for velocity: "rate of change of angular position."

**D.**    **"Unrestrained movement in any direction"**

| Claim Term | Garmin's Proposal | LoganTree's Proposal |
|---|---|---|
| Unrestrained movement in any direction | This claim term is indefinite under § 112, ¶ 2 due to LoganTree's inconsistent and opposite application of the phrase "unrestrained movement in any direction" before the U.S. Patent | Movement along multiple axes without restraint to the movement. |

9

| Claim Term | Garmin's Proposal | LoganTree's Proposal |
|------------|-------------------|----------------------|
|            | Trial and Appeal Board and this Court. Given LoganTree's inconsistent positions, the claimed phrase is indefinite because it fails to provide a PHOSITA with reasonable certainty regarding the invention's scope. |                      |

There is no need for this Court to postpone resolving the indefiniteness of the '576 Patent until the summary judgment stage. *Conagra Foods Food Ingredients Co., Inc. v. Archer-Daniels-Midland Co.*, No. 12-cv-2171-EFM-KGS, 2013 WL 2455932, *9-*12 (D. Kan. June 5, 2013) (resolving the alleged indefiniteness of several claim terms during *Markman*). LoganTree's own arguments (as shown in the figures below) make this issue ripe for determination now. Either the '576 Patent would be found invalid, ending the litigation entirely or, at a minimum, LoganTree would be forced to stop talking out of both sides of its mouth when discussing infringement and validity.[4] This would focus the case and allow the parties to focus only on those issues truly in dispute. Garmin respectfully requests this Court resolve the indefiniteness of this claim term through *Markman*.

Turning to the substance of LoganTree's Responsive brief, LoganTree spends the bulk of its argument on indefiniteness focusing on the intrinsic record of the '576 Patent in an attempt to demonstrate the alleged clear scope of the phrase "unrestrained movement in any direction." ECF No. 91, at 14-17. But there is no dispute between the parties on what the original applicant intended to mean when it used the phrase "unrestrained movement." Indeed, LoganTree's citation to the

---

[4] Notably, crystallizing infringement theories is one of the major goals of the patent local rules and LoganTree should not be permitted to continue injecting confusion into the case. *Neonatal Prd. Grp., Inc.v. Shields*, 276 F. Supp. 3d 1120, 1126 (D. Kan. 2017).

prosecution history makes this clear—unrestrained does not involve a "restraining device used to immobilize … human limbs." *Id*. at 17. It appears LoganTree misapprehends that the indefiniteness does not arrive from the plain language itself but from LoganTree's inconsistent applications of this phrase that leaves the parties, the Court, the jury, and the experts unable to ascertain the true scope of this phrase.

This point is driven home by the Figures cited by LoganTree and those cited by Garmin in its original brief. As shown below, a sensor on the torso or the waist (as depicted in the '576 Patent) does not restrain or immobilize the appendage and, thus, "unrestrained" under the claims. Similarly, Garmin's accused watch does not restrain or immobilize the wearer's arm making it "unrestrained under the claims." But, for reasons known only to LoganTree, the head gear in the HAT system restrains or immobilizes the wearer's head making it "restrained."

[INTENTIONALL LEFT BLANK]

**Figs. 2A-2C of the '576 Patent**



LoganTree contends the above identified
sensors measure ***unrestrained*** movement.

| **Garmin's Accused Product** | **Stewart's HAT System** |
|---|---|



LoganTree contends Garmin's wrist-mounted
Accused Products measure ***unrestrained*** movement.

LoganTree contends Stewart's head-mounted
sensors measure ***restrained*** movement; e.g., it
restrains or immobilizes the head.

On this point, LoganTree offers little to rebut Garmin's argument.[5] While LoganTree contends that its IPR position on why a measuring device connected to a head is restrained while one connected to an arm is unrestrained, LoganTree provides no explanation as to **how** or **why**. Instead, LoganTree provides nearly a page of citations to Stewart demonstrating that the HAT system is able to monitor impact forces to the wearer's head without any explanation how this disclosure suggests the movement in Stewart is restrained. ECF. No. 91, at 19. Nor did LoganTree rebut, or even acknowledge, the disclosure of Stewart Garmin cited in its Opening Brief detailing the extensive translational, angular, and normal components of accelerations of the head the HAT system is able to measure through the use of between three and nine accelerometers—similar to how the single accelerometer is utilized by Garmin's Accused Products. ECF No. 85, at 15-16. What remains impossible is determining what makes an accelerometer system restrained versus unrestrained. As shown above, only LoganTree and its expert are able to ascertain what makes a particular accelerometer's measurement of a body part restrained or unrestrained. This is particularly troubling when none of those devices restrain or immobilize the body part in any manner. Yet LoganTree takes whatever position it needs to satisfy arguments in front of different courts, which has made it impossible for a person of ordinary skill in the art to determine the proper

---

[5] LoganTree makes a passing argument about how its infringement contentions may be supplemented or amended to avoid an inconsistency. This seems to be an implicit acknowledgment that its positions before this Court and the Patent Office are inconsistent. But, setting this aside, it is unlikely LoganTree will amend its contentions to claim that Garmin's devices restrain movement. The inconsistency arises from LoganTree's claim that Garmin's devices measure unrestrained movement while a similar prior art device measures restrained movement. If LoganTree wanted to remove this inconsistency, it would need to admit that Garmin's devices restrain movement and, thus, do not infringe. While Garmin would welcome such an amendment or supplementation, it is unlikely that LoganTree would do so making its offer to "fix" the inconsistency hollow and nothing more than a distraction.

scope of this claim limitation. Accordingly, Garmin respectfully requests this Court find the '576 Patent indefinite.

## II.    CONCLUSION

For at least the foregoing reasons, Garmin respectfully requests this Court find the asserted claims of the '576 Patent invalid under § 112, ¶ 2 or, in the alternative, adopt Garmin's proposed claim constructions.

DATED: May 29, 2020                    Respectfully submitted,


                                       */s/ Adam P. Seitz*
                                       Adam P. Seitz, KS Bar #21059
                                       Megan J. Redmond, KS Bar #21999
                                       Carrie A. Bader, KS Bar #24436
                                       Clifford T. Brazen, KS Bar #27408
                                       ERISE IP, P.A.
                                       7015 College Blvd., Suite. 700
                                       Overland Park, KS 66211
                                       Phone: 913.777.5600
                                       Facsimile: 913.777.5601
                                       adam.seitz@eriseip.com
                                       megan.redmond@eriseip.com
                                       carrie.bader@eriseip.com
                                       cliff.brazen@eriseip.com

                                       *Counsel for Defendants Garmin International, Inc.*
                                       *and Garmin USA, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2020, Defendants' Reply Claim Construction Brief was filed with the Clerk of the Court using CM/ECF and that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document.

*/s/ Adam P. Seitz*
Adam P. Seitz