IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LOGANTREE LP,<br><br>        Plaintiff,<br><br>        v.<br><br>GARMIN INTERNATIONAL, INC. and<br>GARMIN USA, INC.,<br><br>        Defendants. | Case No. 17-1217-EFM-ADM |

## MEMORANDUM AND ORDER

This is a patent infringement case in which plaintiff LoganTree LP ("LoganTree") accuses defendants Garmin International, Inc. and Garmin USA, Inc.'s ("Garmin") activity and fitness tracking devices of infringement. This matter is now before the court on the parties' dispute over the extent to which Garmin must produce source code printouts in addition to the 207 pages Garmin already produced relating to the accused step-counting functionality. LoganTree has filed a Motion for Leave to File Its Motion to Compel Out of Time (ECF 120), which is denied because the court would summarily deny the proposed motion to compel for failing to adequately meet and confer, and also because LoganTree has not demonstrated excusable neglect for filing the motion late. Conversely, Garmin has filed a Motion for a Protective Order Preventing the Unnecessary Printing of Complete Blocks of Source Code. (ECF 129.) That motion is granted because the additional source code printouts are not relevant to the accused functionality, and also because LoganTree's request violates the applicable protective order provision that prohibits requesting source code printouts for purposes of review. However, the court denies LoganTree's motion

without prejudice to renewing its motion to compel orally at an in-person hearing as set forth below—this time, after LoganTree complies with its meet-and-confer obligations.

LoganTree also filed a Motion to Modify, in Part, the Amended Scheduling Order to allow it additional time to serve its infringement expert disclosures once Garmin produces additional source code printouts. (ECF 123.) LoganTree has not shown good cause for the requested extension. But denying LoganTree the opportunity to serve an infringement expert disclosure would, as a practical matter, effectively resolve the case on the merits by depriving LoganTree of the opportunity to present expert testimony on the key issue of infringement. This court is required to avoid imposing such a harsh sanction if the court can alleviate the prejudice to Garmin from any belated expert disclosure, which the court can and will. Accordingly, the court holds all further scheduling order deadlines in abeyance pending resolution of the source code issues. Once those issues are fully resolved, the court will reset those scheduling order deadlines, including the deadline for LoganTree to serve its infringement expert disclosures.

## I.     BACKGROUND

On August 23, 2017, LoganTree filed its complaint in which it alleges that it is the owner by assignment of all right, title, and interest in U.S. Patent No. 6,059,576, entitled "Training and Safety Device, System and Method to Aid in Proper Movement During Physical Activity," as reexamined ("the '576 Patent"). The '576 Patent generally relates to an electronic device, system, and method that measures, analyzes, and records data about the wearer's body movements using an accelerometer, programmable microprocessor, internal clock, and memory. (ECF 1 ¶ 16.) LoganTree alleges that dozens of Garmin's wearable accelerometer-based activity trackers infringe the asserted claims of the '576 Patent. (*Id.* ¶¶ 31-38.)

The case was stayed for most of 2019 pending *inter partes* review of the '576 Patent.  (ECF 37, 41.)  Once those proceedings were complete, discovery opened on October 1, 2019.  *See* FED. R. CIV. P. 26(d)(1) (parties may seek discovery after the Rule 26(f) conference).  (ECF 42 (setting October 1, 2019, as the deadline for the Rule 26(f) conference).)  On October 28, 2019, the court entered the parties' agreed protective order.  (ECF 51.)  It contained a number of provisions that are fairly standard in a patent infringement case to protect the highly proprietary and often trade secret nature of source code.  (*Id.* ¶ 7(c).)  Among other things, it requires the producing party to make source code available for inspection on a standalone computer with visual monitoring by the producing party.  (*Id.* ¶ 7(c)(1).)  On November 4, 2019, Garmin notified LoganTree that it would make its source code available for inspection.  (ECF 130-5, at 7-9 (Garmin's Response to RFP No. 3).)  LoganTree did not come inspect the source then, or at any time in the next eighteen months.

Meanwhile, the parties completed claim construction proceedings.  The court issued a *Markman* order on January 19, 2021.  (ECF 106.)  One of the disputed claim limitations was "first time stamp information *reflecting a time* at which the movement data causing the first user-defined event occurred," which the court construed to mean "first time stamp information *recorded or noted by the system* at which the movement data causing the first user-defined event occurred." (*Id.* at 9 (emphasis added).)  On February 4, Garmin wrote to LoganTree to request that it dismiss the case in light of the court's claim construction.  LoganTree's infringement theory is based on the accused products' step-counting functionality and, according to Garmin, its system never records a timestamp based on a user meeting a step goal.

On February 12, the court reconvened a scheduling conference to discuss remaining case-management deadlines.  The amended scheduling order required the parties to serve their final contentions by March 15 (infringement) and April 15 (invalidity), complete fact discovery by May

18, serve initial expert disclosures by July 5 and rebuttal expert disclosures by August 20, and complete expert discovery by September 13.  (ECF 110, at 2.)  Further, it set the pretrial conference on September 24 and a dispositive motions deadline of October 13.  (*Id.*)

LoganTree served its final infringement contentions on March 15 and (for reasons not apparent to the court) revised infringement contentions on March 31.  (ECF 111, 113.)  Notably, LoganTree served these final infringement contentions without having ever inspected the source code.  The issue of LoganTree inspecting Garmin's source code did not first resurface until April. It was Garmin's counsel who—on April 12 (about five weeks before fact discovery was set to close on May 18)—asked LoganTree if it was going to want to review the source code.  (ECF 130-6, at 2 ("[Y]ou still have not requested depositions of any Garmin witnesses or access to Garmin source code.  Please let us know as soon as possible if you will be requesting either depositions or source code access before the close of discovery.").)  Apparently, this prodded LoganTree into action.  On May 3, LoganTree forwarded Garmin the sign-on to the protective order for its source code expert.  (ECF 130-7, at 2.)  And, on May 4, the parties filed a stipulation temporarily modifying the source code review procedures in light of the COVID-19 pandemic to allow remote review via Citrix, with the review monitored by Zoom.  (ECF 114.)  LoganTree's source code expert reviewed the source code on May 6 (a half day) and the entire week of May 10-14.  (ECF 130-3, at 10.)  In the midst of that review, on May 11, LoganTree deposed Robert Blair, the Garmin engineer who wrote the code that is relevant to the accused step-counting functionality and Garmin's Rule 30(b)(6) corporate designee on the source code.  (ECF 128-1; ECF 130-3, at 10.) Blair reviewed the source code to prepare for his deposition.  (ECF 128-1, at 6:19-11:8.)  However, LoganTree's counsel did not ask him a single question about how the code operates.  Fact discovery closed just days later, on May 18.

4

After the source code review, LoganTree requested printouts of 75 files of complete source code modules totaling more than 2,600 pages of printed source code. Garmin objected to this request on the grounds that it was too broad and violated the protective order provision regarding source code printouts. That provision allows the receiving party to request "paper copies of *limited portions* of source code." (ECF 51 ¶ 7(c)(8) (emphasis added).) It explains what is meant by "limited portions"—those "reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial" but a party is not allowed to "request paper copies for the purpose of reviewing blocks of the Source Code." (*Id.* ¶ (7)(c)(8).) Garmin contended that many of the files LoganTree requested were irrelevant and included functionalities within Garmin's watches that are not accused of infringement, such as heart rate tracking, distance calculations, calorie tracking, sleep tracking, and simulation code, as well as code relating to unaccused products. It therefore appeared to Garmin that LoganTree was requesting exactly what the protective order prohibits—seeking printouts "for the purpose of reviewing blocks of the Source Code." Despite Garmin's objection, LoganTree maintained that its source code expert insisted that he needed all 2,600+ pages.

On June 8, the court convened a pre-motion discovery conference to see if it could help the parties resolve the dispute, or at least narrow the areas of disagreement for motion practice. (ECF 130-3.) Garmin explained its concerns about producing code for non-accused functionalities and non-accused products, the risks associated with producing complete code modules, and that Garmin was not opposed to producing some amount of code reasonably necessary for the expert to support his opinions, but that it was clear from the breadth of LoganTree's request that its expert was seeking printouts to conduct review in the first instance, which the protective order expressly prohibits. (*Id.* at 9-15.) Garmin also offered to allow LoganTree's expert further electronic review

to figure out what he really needed, and Garmin pointed out that he is allowed to take notes. (*Id.*) LoganTree stated that it was relying on its expert's representation that he needed all of the code requested, but that LoganTree appreciated the offer to have more time to work with its expert to see if he could narrow the request. (*Id.* at 15-16.)

The court explained that it had reviewed the applicable protective order provisions, the *Markman* order, LoganTree's final infringement contentions served on March 15, and Garmin's noninfringement contentions served on May 10. (*Id.* at 9.) The court observed that LoganTree seemed to have most of what it needed without having to go to the source code (*see, e.g.*, ECF 130-1 (claim charts citing product manuals and other publicly available information for most claim limitations)), but could certainly understand that LoganTree would need the source code focused on the disputed functionality about whether the system records a timestamp when the user meets its step goal (ECF 130-3, at 17-18). The court explained that LoganTree is entitled to the source code necessary to make its case, but that its expert "doesn't get to have copies of entire modules just to . . . figure out which portions he wants. He really is going to have to come back and identify more targeted lines of code that he really believes are necessary. . . . [Y]ou're really going to have an uphill battle with that without putting a lot of detail on why he needs 2600 pages, 75 complete files." (*Id.* at 19-20.)

Ultimately, in order to try to narrow the areas of disagreement for motion practice, the parties agreed that Garmin would produce source code printouts relating to the accused step-counting functionality and "whether a time stamp is written in association, or frankly not in association, with a step goal being met." (*Id.* at 22-24.) The parties would then meet and confer to see if they still wanted to proceed with motion practice on the remainder of the request. The court ordered LoganTree, after reviewing these printed pages, to notify Garmin by June 18 as to

what additional pages, if any, LoganTree still wanted Garmin to produce so that the parties would know the scope of their remaining areas of disagreement for motion practice.  (ECF 116, at 1.)  In consultation with the parties, the court set deadlines for the parties to file cross-motions that would be fully briefed by July 2, with LoganTree filing a motion to compel and Garmin filing a motion for protective order.  (*Id.* at 1-2.)

The following week, Garmin produced 207 pages of source code relating to the accused functionality.  Unbeknownst to the court, the June 18 deadline came and went and LoganTree did not notify Garmin that it still wanted additional printed pages.  On June 23 (the day the parties' cross-motions were due), LoganTree emailed the court to request additional time to file a motion to compel because, according to LoganTree, it was unable to meet the June 18 deadline to notify Garmin as to what additional pages of source code it still wanted or the June 23 deadline to file a motion to compel.  (ECF 119-1.)  Garmin had delivered the printed copies of source code on June 16, but, according to LoganTree, "[t]he two days from the 16th to the 18th was far from enough time for LoganTree's expert to make any evaluation."  (ECF 119-1, at 1.)  Because the deadlines had passed and Garmin did not consent to an extension, the court denied LoganTree's request for additional time but "without prejudice to being renewed if and when LoganTree is prepared to file a motion to compel seeking additional pages of source code."  (ECF 119, at 1.)  At the time, it was not apparent that motion practice was imminent because LoganTree represented that it was working with its expert "to try to get him to identify a narrower subset of code" so that LoganTree could hopefully ultimately request something short of "all of the code."  (ECF 119-1.)

The next day, on June 24, LoganTree filed its motion for leave to file a motion to compel out of time, attaching its proposed motion to compel as an exhibit.  (ECF 120 & 120-2.)  The motion to compel seeks production of the entire 2,600+ pages of source code printouts that

LoganTree initially requested.  (ECF 120-2, at 6.)  Alternatively, LoganTree requests "additional time to electronically review the source code and submit narrower requests for additional printouts, if possible."  (*Id.*)

## II.  LOGANTREE'S MOTION IS DENIED

As explained below, LoganTree's Motion for Leave to File Out of Time Its Motion to Compel (ECF 120) is denied.  LoganTree's motion to compel would be futile.  Theoretically, the court would deny the motion to compel for essentially the same reasons the court is granting Garmin's motion for protective order, as discussed below.  But, before even getting to that point, the court would summarily deny LoganTree's motion to compel for failing to comply with its meet-and-confer obligations in a genuine attempt to resolve this dispute without court intervention.  Furthermore, LoganTree's motion is denied because it has not demonstrated excusable neglect for not meeting the court-ordered deadline for filing the motion to compel.

### A.  LoganTree's Proposed Motion to Compel Would Be Futile

The court denies LoganTree's motion primarily because its proposed motion to compel would be futile.  The protective order requires the parties to meet and confer in good faith if disputes arise concerning the scope of printed source code.  (ECF 51 ¶ 7(c)(14).)  But even aside from this requirement, any motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer" with the opposing party.  FED. R. CIV. P. 37(a)(1).  This court "will not entertain any motion to resolve a discovery dispute" that does not comply with this requirement.  D. KAN. RULE 37.2.  Furthermore, any such certification "must describe with particularity the steps taken by all attorneys to resolve the issues in dispute."  *Id.*  A "reasonable effort to confer" requires that the parties "in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so."  *Id.*

In determining whether a party has complied with its meet-and-confer obligations, the court "looks to all surrounding circumstances to determine whether the movant's efforts were reasonable." *Ross v. Pentair Flow Techs., LLC*, No. 18-2631-HLT-JPO, 2020 WL 4039062, at *1 (D. Kan. July 17, 2020). "That includes looking beyond the sheer quantity of contacts and examining their quality, as well." *Id.*; *see also Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999) ("The quality of the contacts is far more important than the quantity."). The parties

> must deliberate, confer, converse, compare views, or consult with a view to resolve the dispute without judicial intervention. They must make genuine efforts to resolve the dispute by determining precisely what the requesting party is actually seeking; what responsive documents or information the discovering party is reasonably capable of producing; and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention.

*Id.*

Here, LoganTree did not make a reasonable effort to confer with Garmin to resolve the parties' dispute without court intervention. LoganTree had ample time and numerous opportunities to narrow its request and/or to articulate a more specific explanation as to why its expert needs source code for more than the accused functionality. To begin with, LoganTree could have used Blair's deposition on May 11 in the midst of the expert's source code review to figure out how to more carefully tailor what printouts it needed. But LoganTree instead adjourned the deposition after only approximately four hours without asking Blair a single question about the source code's operation. (ECF 130-3, at 11.) Then, LoganTree's counsel was unable to meaningfully discuss the issues at the pre-motion discovery conference on June 8, relying instead on its expert's conclusory demand:

> MR. BARKLEY: So obviously I'm relying a lot on my expert. . . . a lot of my reliance is on him and him telling me . . .
> . . . .

> THE COURT: . . . I was hoping to get into a little more detail with you, Mr. Barkley, but it sounds like without your expert here, you're . . . relying on the fact that he's told you he needs a lot of this printout, and perhaps I'm not going to be able to get into that level of detail with you.
>
> Does that sound accurate, Mr. Barkley?
>
> MR. BARKLEY: That's accurate. . . .

(*Id.* at 15-20.)  At that conference, the court put LoganTree on notice that it would need to narrow its request or provide a more robust explanation of relevance if the matter came to motion practice. (*Id.* at 19-20.)  And the court encouraged the parties to try to use the additional time as an opportunity to further meet and confer.  (*Id.* at 29.)

After that, Garmin produced printouts of the source code for the accused step-counting functionality and offered to allow LoganTree's expert to go back into the code review environment "if he needs more time to figure out what he really needs," and pointed out that he could even take notes.  (*Id.* at 14.)  LoganTree's expert did none of this.  Instead, LoganTree missed the June 18 deadline to notify Garmin what additional pages it still needed, if any.  Garmin did not hear from LoganTree until the day LoganTree's motion to compel was due.  At that time, LoganTree "simply reiterated that its expert needed all the original code it requested."  (ECF 119-1, at 2.)  This effectively wasted the additional time the court had given the parties to further meet and confer. But, even then, it still was not clear that motion practice was imminent because LoganTree's counsel reported that he was still "working with our expert to try to get him to identify a narrower subset of code."  (*Id.* at 1.)  The court therefore denied LoganTree's request for an extension of time to file a motion to compel, but without prejudice to being renewed if and when LoganTree was prepared to file a motion to compel.  (ECF 119.)  The outcome of the current motion might be different if LoganTree had used this additional time—whatever additional time it needed, within reason—to engage in meaningful substantive discussions with Garmin.  But it didn't.  Instead, it

filed the current underdeveloped motion the next day, advancing essentially the same generalized arguments from the June 8 pre-motion conference—that LoganTree requires the complete production because its expert requires "context" to understand what Garmin has produced thus far.

In other words, LoganTree never budged from its original position despite numerous opportunities to do so and the fact that LoganTree itself repeatedly suggested that it would try to narrow the request. LoganTree merely stated—over and over—that its expert says he needs the entire 2,600+ pages. "Merely repeating a position and requesting or demanding compliance with a discovery request does not satisfy a party's requirement to 'converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so.'" *American Power Chassis, Inc. v. Jones*, No. 13-4134-KHV-KGS, 2018 WL 4863623, at *2 (D. Kan. Jan. 19, 2018); *accord Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL-TJJ, 2016 WL 3212459, at *2 (D. Kan. June 10, 2016). A party cannot avoid this obligation by relying on its expert's conclusory demands.

The most conclusive evidence of LoganTree's failure to comply with its meet-and-confer obligations before filing the current motion is its alternative request for "additional time to electronically review the source code and submit narrower requests for additional printouts, if possible." LoganTree makes an identical request in its July 12 response to Garmin's motion for a protective order. (ECF 32, at 7.) But LoganTree has suggested all along a willingness to press its expert to try to narrow the scope of the request, to no avail. The fact that LoganTree still continues to suggest that there is room for movement off its current position confirms that it failed to comply with its meet-and-confer obligations. The time for LoganTree to have proposed a concrete alternative was in discussions with Garmin before filing the current motion, not in briefs after LoganTree forced the matter to motion practice. Seeking a do-over after the court has expended time and resources ruling on a discovery dispute that is not truly ripe does nothing to further the

"just, speedy, and inexpensive" determination of this action. FED. R. CIV. P. 1. For these reasons, the court would deny LoganTree's motion for leave to file a motion to compel out of time because LoganTree did not comply with its meet-and-confer obligations before filing the motion.

###### B.  LoganTree Has Not Demonstrated Excusable Neglect

The court also denies LoganTree's motion because it has not demonstrated excusable neglect for not filing its motion to compel on time. "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); *see also* D. KAN. RULE 6.1(a)(4) (accord). In determining whether the moving party has shown excusable neglect, the court considers (1) the danger of prejudice to the opposing party; (2) the length of delay and its impact on the case; (3) the reasons for the delay, "including whether it was within the reasonable control of the movant"; and (4) whether the movant acted in good faith. *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017). The reason for the delay is the most important factor, and "an inadequate explanation for delay may, by itself, be sufficient to reject a finding of excusable neglect." *Id.*

The court begins with the reason for the delay. The real reason for the delay is not entirely clear, but it is clear that the delay was within LoganTree's control. LoganTree explains that counsel reviewed the motion the day LoganTree's motion to compel was due to check for any special filing requirements and realized at that time that LoganTree was to notify Garmin by June 18 if LoganTree required additional printed copies of source code. (ECF 120 ¶ 6.) But LoganTree's June 23 email to the court stated a different reason. In that email, LoganTree stated that its expert had "far from enough time" to make any evaluation, suggesting that it was incapable of meeting the deadlines. (ECF 119-1, at 1.) But LoganTree repeatedly represented both at the

discovery conference and in subsequent communications that it was trying to narrow the scope of the request.  Yet, LoganTree then sought leave to file a motion to compel where its position did not budge and, worse yet, was premature for failing to adequately meet and confer with Garmin.

The court turns next to the length of the delay and the impact on the case.  Although LoganTree's motion was just a day late, even this minimal delay caused a domino effect that has derailed the case schedule.  LoganTree waited more than 18 months to review the source code— after claim construction, after service of its final infringement contentions, and after Garmin's counsel prodded LoganTree to come review the source code.  LoganTree waited until less than two weeks before the close of fact discovery to begin reviewing the source code and then did not ask Garmin's Rule 30(b)(6) source code witness any questions about the source code.  LoganTree then launched an eleventh-hour dispute over production of printouts by making a meritless demand for 2,600+ pages of source code and failed to engage in the required meet-and-confer process with Garmin, as discussed above.  All of this has not only delayed briefing on and resolution of the parties' dispute over source code printouts, but LoganTree also used this unresolved issue to justify not serving its infringement expert disclosures by the July 5 deadline, which the court must now reset along with the other scheduling order deadlines as explained below.

Turning to the issue of prejudice, Garmin would be unduly prejudiced by allowing the untimely motion to compel.  The motion is deniable on its face for the reasons explained above.  Therefore, Garmin should not be put to the time and expense of responding to it.  Furthermore, LoganTree's position put Garmin to the time and expense of motion practice by placing the onus on Garmin to file a motion under the terms of the protective order.  Allowing LoganTree's untimely motion would only prolong briefing, run up costs, and delay final resolution of this

dispute—particularly when Garmin has complied with deadlines in this case.[1]  Although the court does not deny the motion for this reason, the delay has also prejudiced Garmin in that LoganTree used this pending dispute as a justification to not timely serve its expert report, requiring the court to mitigate prejudice to Garmin resulting from the delay.

The court cannot find that LoganTree acted in good faith.  During the discovery conference, the court put LoganTree on notice that it would require a more robust explanation of why its expert required the sheer amount of printed copies that he did.  And LoganTree continued to represent a willingness to narrow the request if Garmin's supplemental production was not sufficient.  But it never did these things.  Instead, LoganTree filed a cursory motion to compel requesting just as much as it did initially and with only slightly more explanation.  This whole exercise appears to be either a stall tactic or a late-in-the-game attempt at broad discovery to fashion a new infringement theory.

On balance, the factors weigh against finding excusable neglect.  If LoganTree had used the additional time to meaningfully meet and confer with Garmin, the court might find excusable neglect.  But, on this record, LoganTree appears to be using motion practice to buy more time for its infringement expert disclosure.  For these reasons, the court denies LoganTree's motion for leave to file its motion to compel out of time.

---

[1] LoganTree argues Garmin would not be prejudiced because Garmin's June 8 email requesting a discovery conference stated that Garmin was already prepared to file a motion for a protective order.  The court rejects this argument.  For one, a party stating that it is prepared to file a motion is not tantamount to saying that it has drafted the motion.  The whole purpose of the deadline for LoganTree to notify Garmin that it was still requesting additional printouts was so that Garmin would not waste time preparing a motion that might have been unnecessary.  Even if Garmin had prepared a motion at the time it requested a discovery conference, the landscape of this discovery dispute has changed with Garmin agreeing to produce printed copies of source code related to its step-count functionality.  The reason for the meet-and-confer requirement and the magistrate judge's practice of holding discovery conferences: to narrow discovery disputes as much as possible so that the parties do not spend unnecessary resources briefing resolvable issues.

### III.   GARMIN'S MOTION FOR A PROTECTIVE ORDER IS GRANTED

Under the terms of the protective order, LoganTree's continued request for additional printed pages of source code triggered Garmin's right to object "to the extent or relevance" of the additional printouts and placed the onus on Garmin to "file a motion for relief from the Court for production of the printouts that are the subject of the objection."  (ECF 51 ¶ 7(c)(14).)  Garmin brings its motion pursuant to this provision.  As explained below, the court grants Garmin's motion for a protective order because LoganTree's request for additional printed copies of source code encompasses information that does not appear relevant.  In addition, LoganTree's request does not comply with the protective order provision limiting source code printouts because LoganTree is requesting the printouts for the prohibited purpose of reviewing blocks of source code.

#### A.  Relevance

The scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Although the scope of discovery is broad, it "is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant."  *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995).  In other words, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

Production of source code in printed format requires more than boilerplate claims of relevance, especially considering the highly proprietary nature of the material and the risk of inadvertent disclosure because of the less secure form of production.  Courts generally afford source code a high level of protection, acknowledging that it is often one of a company's most

valuable assets.  *See Opternative, Inc. v. Jand, Inc.*, No. 17-CV-6936, 2019 WL 3050891, at *1 (S.D.N.Y. July 12, 2019) (collecting cases); *see also Valencell Inc. v. Apple, Inc.*, No. 5:16-CV-1-D, 2016 WL 7217635 (E.D.N.C. Dec. 12, 2016) ("Technical information exchanged in patent cases is entitled to a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." (internal quotations omitted)).  Requests for printed copies of source code are subject to careful scrutiny because it is a less secure method of production that poses an increased risk of inadvertent disclosure.  *See Definitive Holdings, LLC v. Powerteq LLC*, No. 18-00844, 2020 WL 6263041, at *2 (D. Utah Oct. 23, 2020*)* (collecting cases considering production in hard copy).

The court agrees with Garmin that LoganTree's request for additional printed source code does not appear relevant or proportional to the needs of the case.  According to Garmin, the request encompasses functionalities in Garmin devices that are not accused of infringement such as heart rate tracking, distance calculations, calorie tracking, sleep tracking, and simulation code for testing.  These functionalities are not accused, and they are not relevant.  Furthermore, in considering whether to order production, the court does not consider relevance in a vacuum.  The Federal Rules also require that discovery be proportional to the needs of the case, considering multiple factors including whether the burden of the proposed discovery outweighs its benefit.  FED. R. CIV. P. 26(b); *see also* FED R. CIV. P. 26(c)(1)(G) (allowing the court to limit or disallow discovery of trade secrets, confidential research, development, or commercial information); *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007) (the court balances the need for discovery against the claim of potential injury from disclosure).  This is the crux of Garmin's position—namely, that LoganTree has requested a broad scope of printouts that are not relevant and also put Garmin at an increased risk of disclosure because producing printed copies provides

a greater opportunity for the printouts to be mishandled.  And, here, the entire source code modules provide all the necessary information for a competitor to plug-and-play Garmin's proprietary technology.  Balancing the potential harm to Garmin against a thin showing of relevance also weighs in favor of limiting production.

To that end, Garmin has already produced 207 pages of printouts for the accused step-counting functionality.  Garmin worked with its Rule 30(b)(6) code designee, Robert Blair (who wrote the relevant code), to identify and produce the relevant pages.  And Garmin has at all times remained open to producing additional printed copies if LoganTree can articulate their relevance.  For example, at the June 8 discovery conference, Garmin offered to allow LoganTree's expert to conduct another electronic review of the source code and take notes to determine what printed copies he truly required.  So Garmin has made reasonable attempts to provide LoganTree with the information necessary to allow LoganTree to narrow its broad request for production of printouts.  But, to date, LoganTree has declined to do so.

LoganTree continues to rely on its expert's generalized representation, even though the court explained at the discovery conference that it would expect LoganTree to provide detail as to why its expert says he needs 2,600+ printed pages that include 75 files of complete source code modules—the remainder of which appear to bear no connection to the accused functionality.  But LoganTree still did not submit a more detailed affidavit or declaration from its expert explaining with specificity why he still requires more.  Instead, LoganTree argues its request for printed copies encompasses less than 0.035% of the entire source code files produced by Garmin.  But this does not show that the 0.035% encompasses any relevant information.  LoganTree never contends that any source code for the accused functionality is missing.  LoganTree also makes general arguments concerning "context," likening the review of Garmin's production to a Lego building in which

analyzing a block by itself removes the essential understanding of the overall position of the greater picture. But LoganTree also does not explain why its expert cannot obtain the information he seeks "for context" by re-reviewing the source code electronically, as Garmin offered, and taking notes. Production of source code in hard copy is not a substitute for electronic review that would potentially provide the information sought or, at the very least, enable LoganTree to narrow its request. *See Imageware Sys., Inc. v. Fulcrum Biometrics, LLC*, No. 13CV936-DMS(JMA), 2014 WL 12489939, at *1 (S.D. Cal. Nov. 26, 2014) (denying a request for additional hard copies based on conclusory assertions from an expert who did not explain why a second electronic review of source code would not yield the information the expert requires or at least allow the expert to narrow his request).

In sum, Garmin has shown that LoganTree's request for additional printed copies of source code encompasses information that is not relevant, and it is not proportional to the needs of the case. LoganTree has not shown otherwise.

## B.  Compliance with the Protective Order

Garmin has also shown that it is entitled to relief under the applicable protective order provision. It provides that the discovering party may request paper copies "of limited portions of Source Code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers" but it prohibits requesting paper copies "for the purpose of reviewing blocks of the Source Code." (ECF 51 ¶ 7(c)(8).) Garmin contends that LoganTree's request goes beyond printed copies "reasonably necessary" to prepare its expert's report and constitutes printouts for the purpose of reviewing blocks of source code. The court agrees.

Most of the case law addressing page limits on source code printouts arises in the context of setting presumptive limits in the protective order itself. Although those cases are not binding

on this court, particularly in the context of an actual dispute, they are informative to illustrate the breadth of LoganTree's request.  LoganTree's request for 2,600+ pages exceeds the limits set in most protective orders that have presumptive page limits.  *See, e,g.*, *Blue Spike, LLC v. VIZIO, Inc.*, No 8:17-cv-1172-DOC-KES, 2018 WL 1889037, at *9 (C.D. Cal. Apr. 18, 2018) (entering stipulated protective order with presumptive limit of 500 pages total and no more than 35 contiguous pages); *Inventor Holdings, LLC v. Wal-Mart Stores Inc.*, No. 1:13-CV-00096 (GMS), 2014 WL 4370320, at *4 (D. Del. Aug. 27, 2014) (adopting an initial limit of 250 pages); *Unwired Planet LLC v. Apple Inc.*, No. No. 3:12-CV-00505-RCJ, 2013 WL 1501489, at *7 (D. Nev. Apr. 11, 2013) (imposing limit of 250 pages total and 30 continuous pages).  This is consistent with Garmin's representation that it typically does not produce more than 200 to 250 printed pages of source code in most cases.  (ECF 130-3, at 22.)  Even discovery disputes regarding production of printed copies generally involve far fewer pages.  *See, e.g., Definitive Holdings*, 2020 WL 6263041, at *2 (ordering production of 268 pages of source code); *Manchester v. Sivantos GmbH*, No. 17-5309, 2019 WL 1598754, at *4 (C.D. Cal. Jan. 30, 2019) (granting motion to compel production of 85 source code-related documents); *Opternative, Inc. v. Jand, Inc.*, No. 17-6936, 2019 WL 3050891, at *3 (S.D.N.Y. July 12, 2019) (ordering defendant to produce 305 lines of code on six pages).

Two other district court cases have decided issues like the one presented here, where a party requested arguably unnecessary source code printouts "for context."  Garmin relies on *Digital Reg of Texas, LLC v. Adobe Systems Inc.*, where the court denied the motion to compel and ordered the parties to further meet and confer to determine which limited portions of source code would be produced and to have Digital Reg's experts conduct a review of the complete files to narrow down the request, if necessary.  No. CV 12-01971-CW KAW, 2013 WL 633406, at *7

(N.D. Cal. Feb. 20, 2013).  In contrast, LoganTree relies on *MobileMedia Idaes LLC v. HTC Corp.* to support its argument that its request encompasses a "limited portion" because it constitutes less than 0.035% of the entire source code files produced by Garmin.  LoganTree argues the court in *Mobile Media* compelled production of 7,700 pages of printed source code based on a similar argument.  No. 2:10-CV-112-JRG, 2012 WL 7783403, at *2 (E.D. Tex. Oct. 19, 2012).  As between the two cases, the court's reasoning in *Digital Reg* is far more persuasive.

The court's analysis in *MobileMedia* was cursory, spanning only approximately three short paragraphs.  The court began by citing its local rules, "which specifically require that an accused infringer '***produce*** or make available for inspection ***and copying*** . . . source code,'" *id.* at *1 (emphasis in original)—presumably without imposing any further limit.  The court compelled production "[g]iven the enormous size of the source code reviewed" and the fact that the 7,700-page print request represented approximately 1,000 out of 4,000,000 source code files and Mobile Media had represented that the request was narrowly tailored.  *Id.* at *2.  The court reasoned that "the scope of relevant discovery is broader (often much broader) than the evidence that is ultimately admitted at trial."  *Id.*  This reasoning is wholly unpersuasive.  For one, this court has no analogous local rule.  In this case, source code printouts are not governed by a broad local rule, but rather are limited by the plain language of the protective order.  Second, as explained previously, relying on the percentage-of-printed-copies-to-total-source-code-files-reviewed does not demonstrate that the additional requested printouts are relevant, much less "reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers"—the crucial showing required by the protective order.  Here, the sheer volume of LoganTree's request contradicts its position.  Given the nature of the issues in this case, LoganTree will never need to cite 2,600+ pages of source code (or anywhere close to that amount) relating to non-accused

products and non-accused functionalities in any court filing, pleading, or expert report.  And, third, the court in *Mobile Media* simply took the discovering party's word that it needed 7,700 pages of source code printouts.  This is inconsistent with this court's obligation to ensure that discovery is both relevant and proportional to the needs of the case.  This requires more than simply taking the requesting party's word for it when that party is in the better position to explain with specificity why it is "reasonably necessary" for its own expert's report and yet fails to do so despite the producing party's offer for further electronic review to narrow the request.

The court's reasoning in *Digital Reg* is more persuasive and on point.  There, Digital Reg had requested printouts of 14 complete files spanning more than 200 pages and encompassing 500 functions, almost all of which had nothing to do with Digital Reg's infringement contentions.  *Id.* Defendant Zynga Game Network, Inc. ("Zynga") objected that the request did not comply with the protective order's limitation to "limited portions of source code that are reasonably necessary." *Id.*  Like this case, Zynga had also offered electronic inspection of the complete files so that Digital Reg could then request limited portions of the source code, but Digital Reg refused.  *Id.* Ultimately, in the absence of a more detailed explanation from Digital Reg, the court agreed with Zynga that the request violated the protective order.  *Id.* at *7.  For similar reasons, the court finds that LoganTree's request violates the protective order.  Garmin has already produced 207 pages relating to the accused step-counting functionality.  LoganTree states that it is unable to match the exact source code to the accused product, but, as Garmin notes, the header files identify both the module and the product.  (*See* ECF 128-2.)  Garmin also provided LoganTree with a cheat sheet that links the source code to each Accused Product.  (ECF 133-1.)[2]  At this point, the only reason

---

[2] LoganTree misstates the number of pages in Garmin's supplemental production, stating that Garmin produced 100 pages.  (ECF 132, at ¶ 2.)  But LoganTree's counsel later emailed the

LoganTree's expert would need another approximately 2,400 pages of source code printouts relating to non-accused products and non-accused functionalities "for context" is "for the purpose of reviewing blocks of the Source Code," which the protective order prohibits.

In sum, Garmin is entitled to the relief requested because LoganTree's request does not comply with the applicable provision of the parties' stipulated protective order.  Garmin's motion is therefore granted.  Garmin need not produce any further source code printouts unless and until the court grants a motion to compel by LoganTree.

## C.      Reasonable Expenses

Because the court grants Garmin's motion for a protective order in full, it must consider whether to award Garmin its reasonable expenses, including attorneys' fees, incurred in filing this motion.  *See* FED. R. CIV. P. 26(c)(3) (stating that on a motion for a protective order, Rule 37(a)(5) applies to an award of expenses); FED. R. CIV. P. 37(a)(5)(A)-(B) (providing for reasonable expenses when a discovery motion is granted or denied in full).  The Federal Rules require the court to impose fees unless the non-prevailing party's position was substantially justified or other circumstances make an award of expenses unjust.  FED. R. CIV. P. 37(a)(5)(A).

Here, an award of expenses may be appropriate.  At the discovery conference, the court put LoganTree on notice that it would need to support with specificity how its request for printed copies were reasonably necessary to prepare its expert report.  It further put LoganTree on notice that the court was disinclined to compel Garmin to produce the entirety of the requested source code printouts.  Despite this, LoganTree forced the matter to motion practice prematurely before it adequately met and conferred with Garmin, and then LoganTree offered little support for its

---

magistrate judge's chambers to correct this statement.  Garmin actually produced 207 pages.  This further discredits LoganTree's suggestion that it carefully reviewed Garmin's supplemental production before determining that it was unworkable.

position.  LoganTree makes conclusory arguments about requiring printouts for context and stating that source code printouts that Garmin has produced so far do not allow LoganTree to glean all of the information it requires.  But this is, at best, a case for a narrowly tailored supplemental production and in no way supports LoganTree's request that Garmin be required to produce all 2,600+ pages.

That said, the court will provide the parties with an opportunity to be heard before deciding whether to assess any award.  The court recognizes that litigating whether fees and expenses are warranted and, if so, the appropriate amount, often results in the parties spending as much time and resources as they did litigating the underlying discovery motion.  For this reason, the court orders Garmin to file a notice by **August 20, 2021**, informing LoganTree and the court whether Garmin intends to seek fees.  If Garmin does, the notice must state the dollar amount requested, including whatever fees Garmin estimates it will incur in further briefing on any motion for expenses.  Thereafter, the parties must confer to attempt to reach an agreement regarding the issue of fees on or before **August 27, 2021**.  If the parties have not reached agreement by that date, Garmin may file a motion seeking fees by **September 3, 2021,** with the memorandum in support limited to five pages.  LoganTree's response brief is due by **September 10, 2021,** and is limited to five pages.  Garmin's reply brief is due by **September 14, 2021,** and is limited to three pages.

## IV.    LOGANTREE MAY RENEW ITS MOTION TO COMPEL

The court is granting Garmin a protective order against further production.  So, at this point, no further production will be required unless and until the court grants a motion to compel by LoganTree.  To that end, the court in its discretion will deny LoganTree's motion for leave to file a motion to compel out of time without prejudice and allow LoganTree one last opportunity to pursue its proposed alternative approach to narrow its request.  In doing so, the court wishes to

emphasize that LoganTree has delayed resolution of this issue for many months—first by waiting to begin reviewing the source code less than two weeks before the close of fact discovery and then prolonging the dispute over source code printouts so that it has now derailed expert discovery. These serial delays must come to an end. The court will give LoganTree one last opportunity to meaningfully meet and confer with Garmin, and then the court intends to bring this matter to a swift and final resolution.

To the extent that LoganTree wishes to bring a renewed motion to compel, it must first meet and confer with Garmin to narrow the scope of requested source code printouts to that reasonably necessary to prepare LoganTree's expert report. Specifically, LoganTree and/or its expert must identify the specific additional lines/blocks of source code (not entire modules or files) that LoganTree contends it needs and explain how those blocks correlate to specific claim limitations. To do this, the court expects LoganTree to take Garmin up on its offer for LoganTree's expert to go back into the source code environment and take notes, if necessary, so that he can identify the additional source code printouts he thinks he needs. In return, Garmin should be prepared to distinguish the claim limitations for which Garmin contends that LoganTree must identify pinpoint citations to source code in order to prove the claim limitation is met versus those claim limitations for which Garmin would concede that the other materials cited in LoganTree's final infringement contentions (*e.g.*, product manuals, marketing and promotional materials, etc.) sufficiently demonstrate that the claim limitation is met.

If the parties are unable to resolve any remaining areas of disagreement concerning source code printouts, LoganTree may make a renewed motion to compel orally at an in-person hearing on **September 14, 2021, at 9:00 a.m.**, in Courtroom 404, Frank Carlson Federal Building in Topeka, Kansas. To ensure that LoganTree complies with its meet-and-confer obligations this

time and is prepared to go beyond broad generalities and speak to the issues at hand, LoganTree must bring its source code expert and its final infringement contentions to the hearing. Garmin must bring its source code computer and its non-infringement contentions. The court will expect the parties to be prepared to address the extent to which LoganTree's expert needs printouts of specific source code to show that specific claim limitations are met for any anticipated expert report. The hearing will continue from day-to-day until complete.

## V.   LOGANTREE'S MOTION TO MODIFY THE SCHEDULING ORDER IS GRANTED

Under the amended scheduling order, the parties were required to serve initial expert disclosures by the party bearing the burden of proof on an issue by July 5. (ECF 110, at 3.) Because of the dispute over source code printouts, LoganTree moved for a three-week extension of time to serve its infringement expert's report. (ECF 123.) Garmin opposes the motion.

### A.  LoganTree Has Not Shown Good Cause

A scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). This good-cause standard "requires the movant to show that existing scheduling order deadlines cannot be met despite the movant's diligent efforts." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988–89 (10th Cir. 2019) (quotation omitted) (affirming the district court's denial of an extension of time to designate an expert witness); *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014) (applying the standard to a motion to amend filed after the scheduling order deadline); *see also* FED. R. CIV. P. 16(b)(4) advisory committee's note to the 1983 amendment (stating good cause exists when a schedule cannot be reasonably met despite the diligence of the party seeking the extension). The moving party must provide an adequate explanation for the delay. *Testone*, 942 F.3d at 988. The court is "afforded

broad discretion in managing the pretrial schedule." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011).

LoganTree has not shown good cause for the extension because it cannot show that it could not have met the July 5 deadline if it had acted with diligence. LoganTree argues that it requires additional time to serve its infringement expert's report because the motions relating to source code production would not be decided by the July 5 deadline and the outcome of the motions could impact LoganTree's expert's preparation of his report. This explanation fails to demonstrate good cause for essentially three reasons.

First, and most obviously, LoganTree has not demonstrated that it is entitled to any additional source code printouts. So there is no justification for any extension.

Second, this does not explain why LoganTree could not have served *any* expert disclosure on infringement by the July 5 deadline—even one that could be supplemented if LoganTree were to ultimately prevail in obtaining additional printed pages of source code. The court specifically cautioned LoganTree in advance of the July 5 deadline that it should not assume that the court would grant a motion to extend its expert disclosure deadline. (*See* ECF 135, at 1.) LoganTree therefore could have and should have served an expert disclosure that could later be supplemented with pinpoint citations to source code. After all, LoganTree's expert report cannot properly go beyond the scope of LoganTree's final infringement contentions, which LoganTree served in March of 2021 before reviewing Garmin's source code. So LoganTree could have met the deadline but apparently decided not to do so based on the speculative proposition that the court might grant a portion of the relief it requested.

Third, even if the additional source code printouts were crucial to preparing LoganTree's expert report and even if LoganTree had prevailed in obtaining them, the fact that LoganTree

lacked these documents at the time it was to serve its expert disclosures was attributable to LoganTree's own delay.  Garmin made its source code available to LoganTree in November 2019, but LoganTree's expert did not review the code until May 2021, less than two weeks before the close of fact discovery on May 18.[3]  After LoganTree's eleventh-hour electronic review of source code, it requested an unreasonable amount of printouts.  The court then set a schedule to resolve the dispute, but LoganTree missed both the deadline to notify Garmin that it requested additional printouts and the deadline for filing its motion to compel, causing further delays in briefing.  This is not compatible with a finding that LoganTree acted diligently in obtaining the printed copies that it now contends are crucial for preparing its expert report.

LoganTree attributes its delay to a second mediation because it says it wanted to avoid costly source code review if the case could be settled.  While it is certainly LoganTree's prerogative to juggle its litigation strategies to defray costs, the court did not stay deadlines pending mediation, nor did the parties request that the court do so.  Even if they had, mediation would not be a reason for further delay given the posture of this case.  The case has been pending for nearly four years, during which ample key developments should have informed settlement discussions. The patent emerged from *inter partes* review in late 2019.  In January 2021, the court issued a *Markman* order, shortly after which Garmin notified LoganTree of Garmin's position that LoganTree has no viable infringement case based on the key claim limitation the court construed. And the parties already engaged in a prior unsuccessful mediation.  LoganTree has had ample time

---

[3] In reply, LoganTree explains that it was unable to conduct the source code review at Garmin's outside counsel's office because of circumstances related to the COIVD-19 pandemic, but the parties entered into a stipulation on May 14, 2021, allowing for review via a secured laptop during certain dates and times.  If LoganTree's expert was unable to travel during the height of the pandemic, it is not apparent why LoganTree did not request that Garmin execute this type of stipulation far sooner to facilitate review.

and opportunity to settle the case such that ongoing "settlement discussion" can no longer excuse failing to meet case deadlines.

For all of these reasons, LoganTree has not demonstrated good cause to extend its infringement expert disclosure deadline.

### B.  Disallowing an Infringement Expert Report Would Be Too Harsh of a Sanction

Nevertheless, not allowing LoganTree to serve an infringement expert report would mean that LoganTree would not be able "to use that information or witness to supply evidence" unless the failure to disclose is substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).  As a practical matter, this would effectively be dispositive of the case because LoganTree could not meet its burden to prove infringement—an issue on which it must present expert testimony.

If the exclusion of evidence would be dispositive, it is subject to more careful scrutiny. *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1203 (10th Cir. 2017). In those instances, the court must consider the efficacy of lesser sanctions or other measures to remediate prejudice to the opposing party.  *Id.* at 1205; *see also Gillum v. United States*, 309 F. App'x 267, 270 (10th Cir. 2009) (reversing district court's exclusion of a medical malpractice expert's testimony after service of a deficient expert report that ultimately resulted in the district court granting defendant's summary judgment motion).  Determining whether the failure was substantially justified or harmless requires the court to consider: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *HCG Platinum, LLC*, 873 F.3d at 1200.

Under the circumstances here, these factors weigh against exclusion.  Trial is not imminent, and, although the court does not condone LoganTree's delays in connection with source code,

those delays do not rise to the level of bad faith.  Procrastination and last-minute scrambling perhaps, but not bad faith.  Moreover, the court can and will ameliorate any prejudice to Garmin resulting from LoganTree's belated service of its infringement expert disclosures.

For these reasons, the court grants LoganTree's motion to the extent that the court will grant some extension of the deadline to serve its infringement expert disclosures once the source code printout issues are fully resolved.  The court is inclined to reset the deadline about 7-10 days thereafter.  However, those issues remain pending and therefore the court cannot at this time determine an appropriate deadline for service of those disclosures or determine the extent to which other deadlines may need to be adjusted without input from Garmin.  Accordingly, the court holds all further scheduling order deadlines in abeyance until further order of the court.  The court will take up the matter of resetting these deadlines at an in-person hearing on **September 14, 2021, at 9:00 a.m.**, in conjunction with LoganTree's opportunity to renew its motion to compel additional source code printouts.  At that time, the court will consult with the parties and reset LoganTree's expert infringement deadline and all remaining scheduling order deadlines.  If the parties resolve their dispute over source code printouts so that an in-person hearing is no longer required, they can motion the court to convert the hearing to reset deadlines via a conference call or Zoom.

**IT IS THEREFORE ORDERED** that LoganTree's Motion for Leave to File its Motion to Compel Out of Time (ECF 120) is denied without prejudice to LoganTree renewing its motion to compel under the terms set forth above.

**IT IS FURTHER ORDERED** that Garmin's Motion for a Protective Order Preventing the Unnecessary Printing of Complete Blocks of Source Code (ECF 129) is granted.

**IT IS FURTHER ORDERED** that LoganTree's Motion to Modify, in Part, the Amended Scheduling Order (ECF 123) is granted to the extent that the court will grant LoganTree some

extension of the deadline to serve its infringement expert disclosures and will reset other case management deadlines once the source code printout issues are fully resolved.

 Dated August 5, 2021, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
