## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LOGANTREE LP,

     Plaintiff,

     v.

GARMIN INTERNATIONAL, INC.,

     Defendant.

Case No. 17-1217-EFM-ADM

## MEMORANDUM AND ORDER

In this patent infringement case, plaintiff LoganTree LP ("LoganTree") accuses dozens of models of defendant Garmin International, Inc.'s ("Garmin") activity trackers of infringement. This matter is now before the court on the parties' dispute over the scope of LoganTree's infringement expert report, which Garmin contends advances new theories that LoganTree did not disclose in its infringement contentions. Garmin moves to strike these infringement theories. (ECF 157.) LoganTree disagrees and says the expert report does not disclose new infringement theories, but instead merely cites additional evidence to support LoganTree's existing infringement theories. To the extent the court disagrees, LoganTree seeks to amend its infringement contentions so that its expert report is commensurate in scope. (ECF 162.) For the reasons explained below, the court finds that LoganTree's expert relies on new infringement theories that LoganTree did not disclose in its infringement contentions, LoganTree has not shown good cause to amend its infringement contentions, and other considerations weigh against allowing LoganTree to belatedly add these new infringement theories. Accordingly, LoganTree's motion to amend is denied, and Garmin's motion to strike is granted.

## I.      BACKGROUND

### A.      The '576 Patent

LoganTree's complaint alleges that it is the owner by assignment of all right, title, and interest in U.S. Patent No. 6,059,576, entitled "Training and Safety Device, System and Method to Aid in Proper Movement During Physical Activity." (ECF 1 ¶¶ 12-15, at 4.)  LoganTree alleges the patent generally relates to a device invented by Theodore Brann to measure, analyze, and record data about the wearer's body movements using an accelerometer, programmable microprocessor, internal clock, and memory. (*Id.* ¶ 16, at 4.)  Before LoganTree filed suit against Garmin, it initiated a reexamination of the patent.  On March 17, 2015, the United States Patent & Trademark Office ("PTO") issued a reexamination certificate with amended claims.  (ECF 1-3.)  The court will refer to the reexamined patent as "the '576 Patent."

LoganTree asserts that Garmin infringes two independent claims—Claim 1, a device claim, and Claim 20, a method claim—and other claims that are dependent on Claims 1 and 20.  Independent device Claim 1 is as follows:

> 1.  A portable, self-contained device for monitoring movement of body parts during physical activity, said device comprising:
>
> a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement;
>
> a power source;
>
> a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, storing and responding to said movement data based on user-defined operational parameters, *detecting a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data, and storing first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred*;
>
> at least one user input connected to said microprocessor for controlling operation of the device;

> a real-time clock connected to said microprocessor; memory for storing said movement data; and
>
> an output indicator connected to said microprocessor for signaling the occurrence of user-defined events;
>
> wherein said movement sensor measures the angle and velocity of said movement.

(*Id.* at 3.)  Independent method Claim 20 is as follows:

> 20. A method to monitor physical movement of a body part comprising the steps of:
>
> attaching a portable, self-contained movement measuring device to said body part for measuring unrestrained movement in any direction;
>
> measuring data associated with said physical movement; interpreting, *using a microprocessor included in the portable, self-contained movement measuring device,* said physical movement data based on user-defined operational parameters and a real-time clock;
>
> storing said data in memory;
>
> *detecting, using the microprocessor, a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data; and*
>
> *storing, in said memory, first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred.*

(*Id.* (emphasis added).)  LoganTree added the italicized language during reexamination.

## B.    The Parties' Infringement & Non-Infringement Contentions

LoganTree's complaint accuses dozens of models of Garmin's wearable accelerometer-based activity trackers (the "Accused Products") of infringement.  From the outset, one of Garmin's main non-infringement positions has focused on the claim language italicized above, which Garmin says LoganTree added during reexamination of the '576 Patent to narrow the claims to overcome the prior art.  (ECF 11.)  Specifically, LoganTree added the following language to both asserted independent claims:

- "detecting[, using the microprocessor,] a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data," and

- "storing[, in said memory,] first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred."

(ECF 11, at 4-5 (bracketed language in Claim 20 but not in Claim 1).)

Garmin initially moved to dismiss LoganTree's complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that LoganTree had not adequately pleaded that the Accused Products plausibly meet the so-called "storing" limitation—*i.e.*, that the microprocessor in the portable, self-contained device (the Accused Products) records a time stamp when the first user-defined event occurs.  (ECF 10.)  Garmin pointed out that the claim chart attached to LoganTree's complaint referred to Garmin Connect as a program that allows a user to review time data but did not identify any way in which the Accused Products store a time stamp when a particular activity (*i.e.*, "movement data causing the first user-defined event") occurs.  (*Id.* at 10-11.)  The court ultimately denied Garmin's Rule 12(b)(6) motion on the grounds that LoganTree's allegations were sufficient to meet *Iqbal/Twombly* pleading standards.  (ECF 22.)

Meanwhile, Garmin filed a petition for inter partes review ("IPR") of the '576 Patent, which the Patent Trial and Appeal Board ("PTAB") granted on August 30, 2018.  (ECF 33-1.) The court then stayed this case pending IPR through most of 2019.  (ECF 37.)

After the IPR proceedings were complete, discovery opened on October 1, 2019.  *See* Fed. R. Civ. P. 26(d)(1) (parties may seek discovery after the Rule 26(f) conference).  (ECF 42 (setting October 1 as the deadline for the Rule 26(f) conference).)   The scheduling order required LoganTree to serve its infringement contentions on November 1, 2019.  (ECF 48, at 3.)  When LoganTree did so, it omitted any reference to Garmin Connect for the "storing" limitation.  (ECF 158-6.)   The contentions referred to Garmin Connect to set the "user-defined operational

parameters" by pointing out that a user who did not want to use the automatic daily-step-goal feature could instead set a personalized goal via the user's Garmin Connect account.



(*Id.* at 18.)  But LoganTree's contentions no longer referred to Garmin Connect for the "detecting" and "storing" limitations.  (*Id.* at 19-26.)  Instead, LoganTree claimed that the "detecting a first user-defined event" limitation was met by showing an Accused Product display monitor showing the user had met his or her daily step-count goal:



(*Id.* at 19.)  And LoganTree contended that the "storing first event information" limitation was met by storing certain information on a .FIT file on the Garmin device:



Comment: Monitor data is stored in a .FIT file in the MONITOR folder in the Garmin Fenix 5.  These files are accessible when connected to a USB port of a computer.

(*Id.* at 20-26.)

The parties proceeded with initial discovery and claim construction proceedings.  The court issued a *Markman* order on January 19, 2021.  (ECF 106.)  The main disputed claim limitation was the portion of the "storing" limitation requiring "first time stamp information ***reflecting a time*** at which the movement data causing the first user-defined event occurred."  (*Id.* at 7-9 (emphasis added).)  The court largely agreed with Garmin's proposed construction and construed this

limitation to mean "first time stamp information ***recorded or noted by the system*** at which the movement data causing the first user-defined event occurred." (*Id.* at 9 (emphasis added).)

Shortly after the court's claim construction order, Garmin asked LoganTree to dismiss the case in light of the court's claim construction. (ECF 158-2, at 2.) Garmin pointed out that LoganTree's infringement contentions identify the "first user-defined event" as a step-goal set by the user, but that the Accused Products never record the time (a timestamp) at which the user reaches its step goal. (*Id.* at 3-4.) Specifically, LoganTree's infringement contentions show that .FIT monitoring messages are logged at intervals (*e.g.*, every 60 seconds) rather than being tied to the user reaching a step goal. (*Id.* at 4-7.) Garmin pointed out that the "stored event information" in LoganTree's infringement contentions identify a time "**prior** to the user meeting the step goal, not the time **at which** the user met the step goal," which is at odds with the court's claim construction. (*Id.* at 3-4 (emphasis in original).) According to Garmin, "given the operation of the Garmin system—which never records a timestamp based on a user meeting a step goal—LoganTree will never be able to meet the Court's claim language and maintain its infringement allegations." (*Id.*) Garmin therefore asked LoganTree to dismiss its case or Garmin would "seek fees, costs, and all other appropriate remedies for an exceptional case that lacks any good faith basis to proceed." (*Id.*)

On February 12, the court reconvened a scheduling conference to discuss remaining case-management deadlines. The amended scheduling order required the parties to serve their final contentions by March 15 (infringement) and April 15 (invalidity), complete fact discovery by May 18, serve initial expert disclosures by July 5 and rebuttal expert disclosures by August 20, and complete expert discovery by September 13. (ECF 110, at 2.) Further, it set the pretrial conference on September 24 and a dispositive motions deadline of October 13. (*Id.*)

Despite Garmin's position that LoganTree lacked any good faith basis to proceed in view of the court's claim construction, LoganTree doubled down on its existing infringement theories. It served its final infringement contentions on March 15 and (for reasons not apparent to the court) revised infringement contentions on March 31.[1]  (ECF 111, 113.)  Those contentions were materially identical (for purposes of the current motion) to the ones LoganTree had previously served in November of 2019.  LoganTree continued to advance the same infringement theories— that the "first user-defined event" is a step goal set by the user, that the "detecting" limitation is met by the device detecting the user meeting the step goal, and that the "storing" limitation is met by storing the time that the user meets the step goal on the .FIT file on the device itself.  (ECF 158-5, at 18-26.)

### C.      **LoganTree's Dispute Over Source Code Printouts Derailed the Case Schedule, Including Delaying Infringement Expert Disclosures**

As the deadline for fact discovery approached, discovery became mired in delays because of disputes regarding the extent to which Garmin was required to produce printout copies of its source code, as detailed in the court's prior order on the issue.  *See generally LoganTree LP v. Garmin Int'l, Inc.*, 339 F.R.D. 171 (D. Kan. 2021) (setting out the history giving rise to the dispute and ruling on competing discovery motions).  That order summarized LoganTree's lack of diligence in pursuing discovery regarding Garmin's source code, leading to a belated discovery dispute that ultimately derailed the case schedule.  Garmin had made its source code available for inspection in November 2019.  *Id.* at 176.  Seventeen months later, the month before fact discovery was set to close, LoganTree still had not inspected the source code in April 2021.  *Id.*  Garmin's

---

[1] All references to LoganTree's final infringement contentions are to the March 15 version that Garmin attached as an exhibit to its motion.  (ECF 158-5.)

counsel began prodding LoganTree about this, and LoganTree's expert finally inspected the source code on May 6 and May 10-14, just days before fact discovery closed on May 18. *Id.*

At this point, the parties' dispute over source code printouts began. LoganTree requested printouts of 75 files of complete source code modules totaling more than 2,600 pages of printed source code. *Id.* Garmin objected on the grounds that this request was too broad and violated the protective order provision regarding source code printouts. *Id.* at 176-77. At a pre-motion discovery conference on June 8, the parties agreed to try to narrow the areas of disagreement for motion practice by Garmin first producing source code printouts relating to the accused step-counting functionality, then the parties would meet and confer to see if they still wanted to proceed with motion practice. *Id.* at 177. The court ordered LoganTree, after reviewing these printed pages, to notify Garmin as to what additional pages, if any, LoganTree still wanted Garmin to produce so the parties would know the scope of their remaining areas of disagreement for motion practice. *Id.* The court also set deadlines for the parties to file cross motions, with LoganTree filing a motion to compel and Garmin filing a motion for protective order. *Id.* The court expressed concerns that LoganTree's request was too broad and said it would expect LoganTree to provide a more robust explanation if the dispute came to motion practice. *Id.*

The following week, Garmin produced 207 pages of source code relating to the accused step-counting functionality. *Id.* at 177-78. LoganTree missed several subsequent deadlines (*id.*), and eventually filed a motion for leave to file a motion to compel out of time, attaching a proposed motion to compel as an exhibit (ECF 120 & 120-2). The motion to compel still sought production of the entire 2,600+ pages of source code printouts that LoganTree initially requested. (ECF 120-2, at 6.) This filing placed the burden on Garmin (under the protective order) to seek a protective order shielding it from this discovery request, so Garmin filed that motion. (ECF 129.) LoganTree

then moved to extend the July 5 deadline to serve initial expert disclosures pending an order on its motion to compel.  (ECF 123.)  The court cautioned LoganTree that it should not assume the motion would be granted (ECF 135, at 1), but LoganTree did just that.  It did not serve any infringement expert disclosure—even one that could be supplemented if the court granted the motion to compel.  *See LoganTree*, 339 F.R.D. at 187 ("After all, LoganTree's expert report cannot properly go beyond the scope of LoganTree's final infringement contentions, which LoganTree served in March of 2021 before reviewing Garmin's source code.  So LoganTree could have met the deadline but apparently decided not to do so[.]").

Ultimately, the court denied LoganTree's motion to compel and granted Garmin's motion for a protective order.  The court found that LoganTree did not meet and confer in good faith with Garmin before forcing motion practice and continued to rely on boilerplate claims of need without going beyond broad generalities.  *Id.* at 179-80.  The court noted that "LoganTree had ample time and numerous opportunities to narrow its request and/or to articulate a more specific explanation as to why its expert needs source code for more than the accused functionality" but that it had not done so.  *Id.* at 179.  Moreover, LoganTree's inaction and delay set off a domino effect of delays that stalled progression of the case:

> LoganTree waited more than 18 months to review the source code—after claim construction, after service of its final infringement contentions, and after Garmin's counsel prodded LoganTree to come review the source code.  LoganTree waited until less than two weeks before the close of fact discovery to begin reviewing the source code and then did not ask Garmin's Rule 30(b)(6) source code witness any questions about the source code.  LoganTree then launched an eleventh-hour dispute over production of printouts by making a meritless demand for 2,600+ pages of source code and failed to engage in the required meet-and-confer process with Garmin, as discussed above.  All of this has not only delayed briefing on and resolution of the parties' dispute over source code printouts, but LoganTree also used this unresolved issue to justify not serving its infringement expert disclosures by the July 5

deadline, which the court must now reset along with the other scheduling order deadlines as explained below.

*Id.* at 180-81.  In ruling on the parties' motions, the court set forth a procedure to resolve lingering disputes about source code production and, in doing so, granted LoganTree additional time to serve its infringement expert report.  *Id.* at 186-87.  The court did so not because LoganTree had shown good cause for the extension, but rather because not allowing LoganTree to serve the report would amount to a dispositive sanction in that LoganTree would not be able to meet its burden to prove infringement—an issue on which it must present expert testimony.  *Id.* at 188.  The court gave the parties additional time to further meet and confer and set a hearing to take up any remaining source code printout disputes and to reset case management deadlines.  *Id.*

On September 2, Garmin moved to vacate these deadlines because of the then-recent death of LoganTree's principal and the inventor of the '576 Patent, Brann, and because the parties claimed they were making progress on meet-and-confer efforts.  (ECF 140.)  LoganTree joined in requesting the same relief.  (ECF 142.)  But the court denied the motion without prejudice because the parties had not demonstrated good cause by showing that they could not have met the existing deadlines if they had acted with diligence.  (ECF 143, at 5.)  The court also reimposed case-management deadlines, including requiring the parties to substantially complete expert discovery by October 29, setting a final pretrial conference on November 16, requiring the parties to submit a proposed pretrial order by November 9, and setting a December 7 deadline for dispositive motions.  (*Id.* at 7.)  And the court directed the parties to submit a proposed schedule to complete expert discovery.  (*Id.*)  When the parties did so, the court adopted their proposed deadlines and agreed-upon dates for remaining depositions.  (ECF 145, at 2; ECF 149.)

### C.      **LoganTree's Infringement Expert Disclosure**

On October 8, LoganTree served the report of its infringement expert, Monty Myers—more than three months late. Myers continues to identify a "first user-defined event" as the daily step-count goal set by the user, either via the Garmin Connect app or the connect.garmin.com website. (ECF 160, at 7-10, 37-40.) Myers explains that the user device (*e.g.*, the Fenix 5) regularly and systematically checks whether the accumulated steps during the current day exceed the user-defined daily step count goal. (*Id.* at 10, 40.) And, once that daily step goal is met, the user is visually notified on the face of the watch that the goal was met. (*Id.* at 10-11, 40-41.) Furthermore, the device logs information in the .FIT file relating to when the step goal is reached. (*Id.* at 16.) The parties do not dispute that these opinions are consistent with LoganTree's infringement contentions.

But Garmin contends that Myers' report expands these allegations and raises new infringement theories that were not in LoganTree's infringement contentions. Specifically, Myers relies on a feature called "Goal Streak" that keeps track of (*i.e.*, updates and stores) the number of consecutive days the user achieves his or her daily step goal. (ECF 160, at 7, 14, 37, 44.) Myers also relies on the Garmin Connect app and website to meet the "detecting" and "storing" limitations. He says the .FIT file data recorded by the device is transferred to Garmin Connect. (*Id.* at 11, 13, 16-18, 41-43, 47-48.) He then points to and relies on several screenshots from the Garmin Connect app and website showing: (1) the user met the step goal; (2) a check mark placed along a timeline showing the 15-minute interval when the user achieved his or her step goal; and (3) the user met the step goal multiple times in a given day. (*Id.* at 12-14, 40-44, 48-50.) Garmin asks the court to strike these new infringement theories from Myers' report.

In response, LoganTree contends that it has consistently alleged that the microprocessor in the Accused Products detect and store a timestamp associated with a user-defined event and that Myers does not offer new infringement theories. LoganTree characterizes Myers as offering "additional evidence proving the infringement theories LoganTree has consistently asserted throughout this case." (ECF 167, at 1-2.) LoganTree therefore maintains, first and foremost, that Myers does not assert new infringement theories and thus LoganTree does not need to amend its infringement contentions. During the pre-motion discovery conference on October 19, the court expressed skepticism about this position. (ECF 158-4, at 4:12-15, 7:6-8:12.) As a result, and in order to avoid delays associated with unnecessarily protracted briefing at this late stage of the case,[2] the court imposed a deadline for LoganTree to file any motion to amend its infringement contentions that it may wish to file. (ECF 153.) Given the court's comments, LoganTree filed that motion to amend "out of an abundance of caution," so that LoganTree's infringement contentions are commensurate with Myers' report. (ECF 163, at 3-4.)

## II.     THE PATENT LOCAL RULES AND FEDERAL CIRCUIT LAW GOVERN

This district's Patent Local Rules require parties to provide early identification of their infringement and invalidity theories. *See* D. KAN. PAT. RULE 3.1 (setting out the requirements for infringement contentions), 3.3 (same, for invalidity contentions). As pertinent here, a party claiming patent infringement must serve a disclosure of asserted claims and infringement

---

[2] The court aimed to avoid unnecessarily protracting resolution of this issue by, for example, avoiding the possibility of LoganTree including a request to amend its infringement contentions as a fallback position in response to Garmin's anticipated motion to strike (similar to the fallback position LoganTree adopted in its prior motion to compel source code printouts that, if the court denied the motion, LoganTree wanted more time to narrow its request). In recent conferences with the court, Garmin has consistently maintained that it is eager to bring this case to a resolution by pressing forward with summary judgment as soon as possible. Given this, and LoganTree's delays in the past few months, the court set a briefing schedule on the current motions that aimed to avoid extending the dispositive motion deadline because of this dispute. (ECF 153.)

contentions that identify, for each asserted claim, "each accused apparatus, product, device, process, method, act, or other instrumentality ('Accused Instrumentality') of each opposing party of which the party is aware."  D. KAN. PAT. RULE 3.1(b).  This rule further clarifies the level of specificity required:

> This identification must be as specific as possible.  Each product, device, and apparatus must be identified by name or model number, if known.  Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process.

*Id.*  These disclosures must also include a "chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality."  RULE 3.1(c).  Once served, the contentions constitute the universe of the parties' respective theories, and they may be amended as a matter of right only under certain circumstances or by court order upon a showing of good cause.  *Id.* RULE 3.5.

These rules are similar to those adopted by many other district courts.  Issues concerning the validity and interpretation of such local patent rules are "unique to patent cases and have a close relationship to enforcement of substantive patent law," so they are governed by the law of the Federal Circuit rather than the regional circuit.  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (affirming district court order denying patentee's motion to amend infringement contentions under the Northern District of California's local patent rules); *see, e.g.*, *Neonatal Product Group, Inc. v. Shields*, 276 F. Supp. 3d 1120, 1125-28 & n.2 (D. Kan. 2017) (applying Federal Circuit law and striking new infringement theory asserted on summary judgment that was not disclosed in infringement contentions); *Digital Ally, Inc. v. Taser Int'l, Inc.*, No. 16-cv-2032-CM-TJJ, 2018 WL 1138283, at *3-*7 (D. Kan. Mar. 2, 2018) (same, in denying leave to amend invalidity contentions to assert an additional prior art reference); *see*

*also Vivint, Inc. v. Alarm.com Inc.*, No. 2:15-cv-392, 2020 WL 3871346, at *5-* (D. Utah. July 9, 2020) (holding magistrate judge erred by applying Tenth Circuit law, rather than Federal Circuit law, in compelling production of source code for instrumentality that was not identified in infringement contentions).  A district court has wide discretion in enforcing local patent rules.  *O2 Micro Int'l Ltd.*, 467 F.3d at 1366-67 ("Decisions enforcing local rules in patent cases will be affirmed unless clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by any evidence.").

## III.   LOGANTREE'S INFRINGEMENT CONTENTIONS DID NOT PROPERLY DISCLOSE MYERS' NEW INFRINGEMENT THEORIES

The court turns first to the threshold issue of whether Myers' expert report discloses new infringement theories, as Garmin contends, or whether it cites to supporting evidence to bolster existing infringement theories, as LoganTree argues.  LoganTree relies on *Finjan, Inc. v. Symantec Corp.* for the principle that "[t]he dispositive inquiry in a motion to strike is . . . whether the allegedly undisclosed 'theory' is in fact a new theory or new element of the accused product alleged to practice a particular claim that was not previously identified in the plaintiff's contentions, or whether the 'theory' is instead the identification of additional evidentiary proof showing that the accused element did in fact practice the limitation."  No. 14-cv-02998-HSG(JSC), 2018 WL 620169, at *2 (N.D. Cal. Jan. 30, 2018).  LoganTree contends that Myers' report did not add previously unaccused functionalities, but instead "used Garmin Connect and daily step goal streak as additional evidentiary proof of the Accused Products' infringement."  In support, LoganTree further cites *Apple Inc. v. Samsung Electronics Co.* to point out that the inquiry is whether an expert has "permissibly specified the application of a disclosed theory" or has "impermissibly substituted a new theory altogether."  No. 5:12-CV-0630-LHK-PSG, 2014 WL 12917334, at *1 (N.D. Cal. Jan. 9, 2014).  LoganTree relies on legal principles that are correct in

the abstract, but its arguments as to how those legal principles apply to the facts of this case are thin on substance.

The issue of whether these theories were properly encompassed within the scope of LoganTree's infringement contentions is properly framed by beginning with the purpose of the disclosures required in D. KAN. PAT. RULE 3.1—specifically, the level of detail and specificity required in subsections (b) and (c).   Infringement and invalidity contentions are "designed specifically to require parties to crystallize their theories of the case early in litigation so as to prevent the 'shifting sands' approach to claim construction" and to "adhere to those theories once they have been disclosed." *O2 Micro Int'l Ltd.*, 467 F.3d at 1366 n.12 (quotations omitted); *see also, e.g.*, *Celgene Corp. v. Hetero Labs Ltd.*, No. 17-3387, 2021 WL 3701700, at *2 (D.N.J. June 15, 2021) (making the same observation about the District of New Jersey's local patent rules); *INAG, Inc. v. Richar, LLC*, No. 16-cv-00722-RFB-EJY, 2021 WL 1582766, at *3 (D. Nev. Apr. 22, 2021) (same, about the District of Nevada's local patent rules and "similar patent rules throughout the country").   These contentions "further the goal of full, timely discovery and provide all parties with adequate notice of and information with which to litigate their cases." *Genentech, Inc. v. Trustees of Univ. of Penn.*, Case No. 10-cv-2037, 2012 WL 424985, at *1 (N.D. Cal. Feb. 9, 2012) (quotation omitted).   "The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro Int'l Ltd.*, 467 F.3d at 1366.   The goal is to "respect a party's legitimate need to refine its case and develop its positions while preventing litigation by ambush." *Genentech*, 2012 WL 424985, at *2  (quotation omitted).

Given these goals, "all courts agree that the degree of specificity required [in infringement contentions] must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics LLC v.*

*Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)).   A patentee is not required to disclose specific evidence or prove its infringement case, but a patentee must "disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it."   *DCG Sys. v. Checkpoint Techs., LLC*, No. 11-cv-03792-PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012).   This requires mapping "specific elements of Defendants' alleged infringing products onto the Plaintiff's claim construction."   *Shared Memory Graphics LLC*, 812 F. Supp. 2d at 1025.

In this case, LoganTree's infringement contentions mapped the daily step-count goal set by the user via Garmin Connect as the "first user-defined event," and mapped the microprocessor and the .FIT file in the Accused Products as meeting the "detecting" and "storing" limitations when the user achieves that daily step-count goal.   Now, LoganTree has broadened that to an unwieldy "step-counting functionality" theory that jumbles together multiple step-counting features and processors and displays that are external to the Accused Products, including (1) the Goal Streak feature showing the number of consecutive days the user has met the user's step-count goal; (2) a check mark for a 15-minute timeframe when a step-count goal is reached on the connect.garmin.com website; and (3) the Garmin Connect app displaying the user met the step-count goal multiple times in a given day.

LoganTree's infringement contentions did not provide Garmin with reasonable notice that LoganTree was relying on any user-defined functionality other than the user's daily step-count goal.   Those contentions identified the user's daily step-count goal set via the user's Garmin Connect account—and only this daily step-count goal—as the "first user-defined event."   If LoganTree was going to rely on any other user-defined functionality, LoganTree was required to

identify all Accused Instrumentalities (*e.g.*, Garmin Connect) with specificity and identify "specifically where each limitation of each asserted claim is found within each Accused Instrumentality." D. KAN. PAT. RULE 3.1(b), (c). LoganTree did not do this. LoganTree's contentions did not identify the number of consecutive days a user meets the daily step-count goal (Goal Streak) or the number of times the user meets the daily step count goal in a given day as "user-defined events." These features are not even user defined. They are built-in automatic counting features. (ECF 160, at 15 (source code for Goal Streak); ECF 169-2, at 51:9-18 (Myers acknowledging that there is no mechanism to set a goal streak goal).) These features are therefore not "demonstrative" of the user meeting the daily step-count goal, nor are they user-defined functionality, as LoganTree contends.

Similarly, for the "detecting" and "storing" limitations, LoganTree's infringement contentions relied only on the microprocessor and the information stored in the .FIT file on the Accused Products (*i.e.*, in the "portable, self-contained movement measuring device"), including the display on the device itself showing the user met his or her daily step-count goal. Now, Myers maps Garmin Connect to those limitations, but it is external to the Accused Products. LoganTree contends the screenshot that shows a checkmark for the 15-minute interval when the user meets the user's daily step-count goal is merely "demonstrative of the information contained and stored in the FIT file" because that information is transferred from the Accused Products and displayed by the Garmin Connect app, and Myers "used the *displays* of information as additional evidentiary proof that the Accused Products infringe." (ECF 167, at 4-5 (emphasis in original).) This argument is unpersuasive. The Garmin device itself records (*i.e.*, detects and stores) timestamps and step counts at certain intervals in .FIT files. Myers does not point to anything in the Garmin device itself that somehow translates that data from the .FIT file so as to identify (*i.e.*, "detect")

the 15-minute interval when the user meets the daily step-count goal, let alone record (*i.e.*, "store") that interval in the .FIT file. Instead, he says the .FIT file data is transferred to Garmin Connect. He is therefore relying on the functionality of the separate Garmin Connect servers to process the .FIT file data in a way that identifies the pertinent 15-minute interval and generates the display with a checkmark next to that interval. (*See* ECF 161-2, at 21:19-22:13 (explaining how the Garmin Connect system calculates the "approximate time" the step goal was reached).) Likewise, Garmin says Goal Streak does not appear in the .FIT file and it requires a second processor on the Garmin Connect servers that is no longer part of the claimed "self-contained movement measuring device." (ECF 158, at 3.) These theories are therefore not "demonstrative" of LoganTree's prior infringement theories, which relied entirely on the Accused Products' microprocessor and the information stored in the .FIT file on the Accused Products (*i.e.*, the "self-contained, movement measuring device") to meet the "detecting" and "storing" limitations.

In addition, the history of LoganTree's infringement contentions refutes any suggestion that Garmin was on notice that LoganTree would be pursuing these infringement theories. As explained previously, LoganTree initially attached a claim chart to its complaint that mapped Garmin Connect to the "storing" limitation. (ECF 1-4.) But Garmin's Rule 12(b)(6) motion challenged this claim mapping, contending it is not a viable infringement theory. And, when LoganTree later served its infringement contentions, it expressly abandoned this theory by conspicuously omitting it from the contentions. The only conclusion that can reasonably be drawn from this is that, early in this litigation, LoganTree elected to abandon any external processor theory (presumably for reasons explained below) and instead focus solely on the internal microprocessor and .FIT files in the Accused Products themselves to meet the "detecting" and "storing" limitations.

For all of these reasons, the court finds that LoganTree's infringement contentions did not properly disclose Myers' new infringement theories as required by this court's Patent Local Rules. Plaintiffs must "proffer all of the theories of infringement that they in good faith believe they can assert." *Apple Inc. v. Samsung Elecs. Co.*, No. 12-cv-0630-LHK (PSG), 2013 WL 3246094, at *3 (N.D. Cal. June 26, 2013). LoganTree's infringement contentions did not do this. They did not give Garmin reasonable notice that LoganTree would be relying on these various features, each of which deviates in distinct and material ways from the claim mappings in the contentions.

## IV.  LOGANTREE HAS NOT ESTABLISHED GOOD CAUSE TO AMEND ITS INFRINGEMENT CONTENTIONS

Next, the court turns to the issue of whether LoganTree should be allowed to amend its infringement contentions so that they are commensurate in scope with Myers' new infringement theories. Infringement contentions may be amended once as a matter of right under circumstances that are not present here. *See* D. KAN. PAT. RULE 3.5(a). After that, they may be amended "only by order of the court upon a timely showing of good cause." D. KAN. PAT. RULE 3.5(b). To establish good cause, the moving party must demonstrate its diligence. *O2 Micro Int'l Ltd.,* 467 F.3d at 1366–68. "If the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation." *Id.* at 1366.

LoganTree contends that it was diligent in seeking leave to amend because, prior to the court's comments at the October 19 pre-motion discovery conference, it "reasonably believed in good faith that it had provided reasonable notice of its infringement theories to Garmin, and thus had no reason to seek leave for amendment." (ECF 163, at 4.) This argument is insufficient to establish diligence for at least two reasons. For one, it is not credible. LoganTree's infringement contentions plainly did not disclose Myers' new infringement theories. Accordingly, the court

questions LoganTree's representation that it believed its contentions disclosed these new theories and its characterization that any such belief was "reasonable" or "in good faith."

But even setting aside the veracity of LoganTree's argument, the rationale has no bearing on the pertinent good-cause standard.  In deciding whether a party was diligent in seeking leave to amend contentions, the court considers (1) whether the movant was diligent in discovering the basis for the proposed amendment and (2) how quickly the party moved to amend after the new theory came to light.  *See Acer, Inc. v. Tech. Properties Ltd.*, No. 5:08-CV-00877 JF/HRL, 2010 WL 3618687, at *3 (N.D. Cal. Sept. 10, 2010) (explaining the two-part inquiry); *see also Digital Ally*, 2018 WL 1138283, at *4 (applying the same framework for a motion to amend invalidity contentions).  The "basis for the proposed amendment" is the discovery of new information that impacts the plaintiff's substantive infringement theories—for example, a significant adverse claim construction ruling or the "[r]ecent discovery of nonpublic information *about the Accused Instrumentality* that was not discovered, despite diligent efforts," earlier.  D. KAN. PAT. RULE 3.5(a), (b)(2) (emphasis added); *accord Phigenix, Inc. v. Genentech, Inc.*, 783 F. App'x 1014, 1017 (Fed. Cir. 2019) ("Infringement contentions may only be amended by order of the district court upon a timely showing of good cause—such as an adverse claim construction . . . or a recent discovery of non-public information *about the accused instrumentalities*." (emphasis added)).

Under this standard, LoganTree's reliance on the court's observations at the October 19 pre-motion discovery conference to the effect that LoganTree's infringement contentions did not appear to adequately disclose Myer's new infringement theories misses the mark.  This argument does not identify any new information LoganTree discovered about the Accused Products that prompted Myers' new infringement theories.  To the contrary, Myers' new infringement theories pre-dated the court's comments.  LoganTree could have and should have discovered the pertinent

Garmin Connect and Goal Streak features long ago.  Garmin Connect is a publicly available website and app.  Indeed, LoganTree relied on Garmin Connect for the "detecting" and "storing" limitations when it originally filed this case in 2017.  LoganTree could have linked an Accused Product to a Garmin Connect account to see those features in operation anytime—just like Myers presumably did to generate the screenshots in his expert report.  Likewise, information about the step Goal Streak feature is publicly available.  Myers discussed it with LoganTree's attorneys early in his involvement in the case.  (ECF 169-2, 58:11-59:5.)  So the substantive information now disclosed in Myers' expert report was either known or reasonably ascertainable long before LoganTree moved to amend its infringement contentions.  The court's statements about the sufficiency of LoganTree's infringement contentions do not demonstrate LoganTree's diligence in discovering any substantive basis for the proposed amendment or moving to amend quickly when this information came to light.

Accordingly, the record provides no basis upon which the court can find that LoganTree was diligent in seeking leave to amend its infringement contentions.  A party's misunderstanding of its own obligations under local patent rules is the opposite of diligence.  Finding otherwise would reward parties for nondisclosure and frustrate the purpose of the local patent rules' requirements—to prevent a shifting sands approach to patent litigation.  For that reason, the court finds that LoganTree has not established good cause to amend its infringement contentions.  On that basis alone, the court denies LoganTree's motion to amend.  *See, e.g.*, *O2 Micro Int'l, Inc.*, 467 F.3d at 1367-68 (finding no abuse of discretion in denying leave to amend infringement contentions upon finding the moving party was not diligent).

## V.    THE COURT WILL NOT EXERCISE ITS DISCRETION TO ALLOW BELATED AMENDMENT THAT WOULD PREJUDICE GARMIN

Because LoganTree has not shown diligence, there is "no need to consider the question of prejudice." *Id.*   However, in the interest of thoroughness, the court will consider the parties' other arguments that could theoretically bear on whether amendment should be allowed.  Even where a party does not demonstrate diligence in seeking leave to amend, the court may nevertheless exercise its discretion and grant leave to amend where there would be no prejudice to the non-moving party.  *See Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-0876-RS (JSC), 2016 WL 7386136, at *3 (N.D. Cal. Dec. 21, 2016); *Apple Inc. v. Samsung Elecs. Co.*, No. CV 12-00630 LHK, 2012 WL 5632618, at *5 (N.D. Cal. Nov. 15, 2012).  For example, courts have allowed amendments in the absence of diligence where "the movant made an honest mistake, the request to amend did not appear to be motivated by gamesmanship, or where there was still ample time left in discovery."  *Advanced Micro Devices, Inc. v. LG Electronics, Inc.*, Case No. 14-cv-01012, 2017 WL 732896, at *2 (N.D. Cal. Feb. 24, 2017) (quoting *Karl Storz Endoscopy-Am.*, 2016 WL 7386136, at *3).

None of those circumstances apply here.

### A.    LoganTree's Omission of the New Theories from Its Infringement Contentions Does Not Qualify as an Honest Mistake

LoganTree's argument that it thought its new infringement theories were fairly encompassed in its contentions can most charitably be characterized as having misunderstood its obligations under the Patent Local Rules, resulting in noncompliance with the rules' disclosure requirements.  Although LoganTree does not expressly contend that an honest mistake precluded it from fully disclosing its theories, the court addresses it here because it provides the most applicable framework for LoganTree's contention that, if amendment is required, it is only because LoganTree was mistaken about its obligations.

23

A party cannot establish an honest mistake without explaining "why the 'errors' were made in the first place, and, in particular, how they could have 'mistakenly' omitted any contentions[.]" *Berger v. Rossignol Ski Co.*, No. 05-cv-02523-CRB, 2006 WL 1095914, at *4 (N.D. Cal. Apr. 25, 2006), *aff'd*, 214 F. App'x 981, 1 (Fed. Cir. 2007).  But LoganTree takes the position that it did not make any mistake by not including these theories in its infringement contentions and only sought leave to amend when it feared it might be faced with an adverse ruling on Garmin's motion to strike.  This is not the type of situation in which courts have found that an honest mistake justified allowing amendment.  Rather, courts have found an honest mistake when a party intends to disclose a theory but simply fails to do so because of genuine human error.  *See, e,g.*, *WhatsApp Inc. v. Intercarrier Commc'ns, LLC*, No. 13-cv-04272-JST, 2014 WL 12703766, at *3-*4 (N.D. Cal. Sept. 3, 2014); *Apple Inc.*, 2012 WL 5632618, at *5.  For example, one court found an honest mistake when a plaintiff mistakenly failed to upload several claim charts where the claim themselves were listed in the table of contents and duplicates of other charts were served in place of the omitted charts, all of which evidenced the plaintiff intended to timely disclose the claims. *See Apple*, 2012 WL 5632618, at *5; *see also, e.g.*, *WhatsApp*, at *2 (finding an honest mistake when the moving party "intended all along to include dependent claim 3 of the '748 patent in its original infringement contentions and simply failed to do so due to human error"); *OpenDNS, Inc. v. Select Notifications Media, LLC*, No. 11-cv-05101-EJD HRL, 2013 WL 2422623, at *3 (N.D. Cal. June 3, 2013) (finding an honest mistake where the moving party included incorrect screenshots in its preliminary infringement contentions because common sense suggested that the party originally intended to include the correct screenshots because "otherwise its infringement theory makes no sense").

In contrast, when a party never intended to include infringement theories in its contentions, its failure to do so was not an honest mistake. *See Tigo Energy Inc. v. Altenergy Power Sys. Inc.*, No. 20-CV-03622-NC, 2021 WL 4027371, at *4 (N.D. Cal. Mar. 25, 2021) (finding that the moving party's misunderstanding of the underlying technology was not a circumstance that constituted an honest mistake because the party never intended to include the claim in its initial contentions or subsequent amendments). This is the case here. LoganTree takes the position that it made no mistake, honest or otherwise, and it did not need to include Myers' new infringement theories in its contentions because its existing contentions are sufficient. LoganTree now seeks to amend only "out of an abundance of caution" if the court accepts Garmin's position that the contentions were insufficient to disclose these new theories. In other words, LoganTree's own strategic decisions have landed LoganTree in the position it now finds itself in. Because LoganTree never intended to timely disclose these new theories, LoganTree's error does not qualify as an "honest mistake" that would provide a basis to allow amendment.

## B.    LoganTree's Tactics Appear to Have Been Motivated by Gamesmanship

Garmin contends that LoganTree's tactics were motivated by gamesmanship. According to Garmin, "LoganTree abandoned its early accusations against Garmin Connect in order to make arguments necessary to save the validity of its patent in multiple forums." (ECF 166, at 3.) Garmin says LoganTree successfully fended off challenges to the validity of the '576 patent—both in the IPR proceedings before the Patent Office, on appeal to the Federal Circuit, and in litigation with another defendant in the District of Delaware—by focusing on the uniqueness of the internal processor and sensor contained within the portable, self-contained unit. And, only now that LoganTree has survived these validity challenges does it seek to reintroduce the external Garmin Connect microprocessor for the "detecting" and "storing" limitations.

To recap the pertinent timeline in this litigation, LoganTree originally mapped Garmin Connect to these limitations in August 2017, then conspicuously omitted this from its infringement contentions served in November 2019 and again from its post-claim-construction contentions served in March 2021.  As fact discovery closed in May 2021, LoganTree pressed forward with a generic request for voluminous source code printouts even though the court told LoganTree that it would require a far more specific statement of relevance to compel production.  *LoganTree*, 339 F.R.D. at 179.  All of this resulted in prolonged motion practice that was ultimately unnecessary because the parties resolved the issue themselves once the court ordered LoganTree to adequately meet and confer before filing a renewed motion.  But, in the meantime, LoganTree used this protracted dispute over source code printouts as a justification to disregard the July 5 deadline to serve any infringement expert report—even one that could later be supplemented with additional source code printouts.  (ECF 135, at 1.)  LoganTree then essentially handed itself a three-month extension of the expert-disclosure deadline.  *LoganTree*, 339 F.R.D. at 188 (granting LoganTree an extension to serve the expert report only because not doing so would effectively amount to a dispositive sanction).  When LoganTree finally served its expert report on October 8, it reintroduced Garmin Connect and added Goal Streak—a feature that LoganTree's counsel admitted was not in its infringement contentions.  (ECF 158-4, at 7:1-8:12 ("the words 'goal streak' are not going to show up in our infringement contentions" and "[y]ou're not going to find the words 'daily' and 'streak' as set forth in the infringement contentions").)  And LoganTree now offers no credible explanation as to why it belatedly added these new theories.

Garmin is the only party that offers an explanation for LoganTree's shifting positions by placing them in context with other positions LoganTree has taken in parallel legal proceedings involving the '576 Patent.  In papers filed in the IPR proceedings on December 14, 2018,

LoganTree emphasized that the claims focus on a single, internal microprocessor—both to detect the user-defined event and to store first event information related to that user-defined event along with a time stamp:



(ECF 158-8, at 7-8, 10.) After LoganTree prevailed in the IPR at the PTAB, it filed an appeal brief with the Federal Circuit on April 15, 2020, that continued to distinguish the prior art by emphasizing the claimed microprocessor "must be included in a portable, self-contained device" (claim 1) and "in a portable, self-contained movement measuring device" (claim 20). *Garmin Int'l, Inc. v. LoganTree, L.P.*, Appeal No. 2020-1108 (ECF 23, at 22-23).

Within months after that appeal concluded, LoganTree filed another patent infringement lawsuit in the District of Delaware, to which defendant Fossil Group, Inc. ("Fossil") responded by filing a motion to dismiss on May 10, 2021, challenging the '576 Patent as directed to patent-ineligible subject matter and therefore invalid under 35 U.S.C. § 101. In the midst of LoganTree's

protracted dispute over Garmin's source code printouts in this case, LoganTree filed a response to Fossil's motion in the Delaware case on June 2.  (ECF 158-9.)  LoganTree once again focused on the importance of the internal microprocessor to the claimed invention.  LoganTree argued that, at the time of the '576 Patent, conventional technology used movement sensors to detect when specific events occurred, and that the '576 Patent "improved upon this process significantly by reconfiguring the unconventional combination of components by requiring a microprocessor to detect when the specific events occurred."  (*Id.* at 13-14.)  LoganTree emphasized that the claims require a "microprocessor configured to detect a first user-defined event," "[t]he microprocessor is further configured to store" information related to that event along with a time stamp, and "the detailed limitations . . . provide algorithms to the microprocessor instructing it on how to perform the detection, and how to store the information."  (*Id.* at 18.)  The District of Delaware announced a bench ruling on that motion on June 25 that was memorialized in a written order dated July 2 (ECF 158-10)—the business day before LoganTree's expert infringement disclosure was due in this case.  In that order from the District of Delaware, the court found that the claimed invention "is directed to a device having both a motion sensor and a microprocessor" and that "the microprocessor stores time-stamped information about the occurrences of specific user-defined events."  (*Id.* at 11.)

Only after LoganTree prevailed in maintaining the validity of the '576 Patent at the PTAB, the Federal Circuit, and the District of Delaware by focusing on the internal microprocessor performing the detecting and storing limitations, and only after LoganTree effectively handed itself an extension of the deadline to serve its infringement expert disclosures in this case, did LoganTree serve a belated expert report reintroducing the external Garmin Connect servers for the "detecting" and "storing" limitations.  This explains why LoganTree abandoned some of its early accusations

against Garmin Connect to make the arguments necessary in other forums to have the validity of its patent upheld only to then reintroduce the separate Garmin Connect servers back into this case. It also explains LoganTree's bizarre procedural history in this case in perpetuating an arguably frivolous dispute over source code printouts to buy more time to prepare its infringement expert disclosures. (ECF 169, at 3 n.2 ("This is precisely why LoganTree ignored expert report deadlines in this case and sought an extension that would take it past the Delaware Court's ruling on the invalidity issues.").) This explanation stands in stark contrast to the lack of any argument from LoganTree as to why it originally asserted Garmin Connect, then withdrew, then reasserted not only Garmin Connect but more expansive infringement theories. Garmin contends that "LoganTree's motives are clear—it needed to maintain its arguments on where the processor was located to sustain validity but, now that it has, LoganTree changed its argument in an attempt to save its infringement case here." (ECF 166, at 7.) LoganTree's lack of any direct response to these serious allegations leaves the court to conclude that there is no explanation for LoganTree's new infringement theories other than that they appear to have been motivated by gamesmanship.

## C. Given the Late Stage of the Case, LoganTree's Belated Amendment Would Prejudice Garmin

The last discretionary factor the court may consider in granting leave to amend is whether there is still ample time left in discovery—an issue that ties into prejudice to the party opposing amendment. Here, there is not ample time left in discovery. Courts typically find that amending infringement or invalidity contentions would be prejudicial when doing so would disrupt the case schedule or other court orders, as is the case here. *Karl Storz Endoscopy-Am.*, 2016 WL 7386136, at *3. Moreover, courts have recognized inherent prejudice when a party attempts to amend to assert a new theory after discovery has closed. *See Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 3640694, at *2 (N.D. Cal. June 11, 2015) ("If the theory is *new*,

prejudice is inherent in the assertion of a new theory after discovery has closed." (internal quotations omitted)); *see also Philips N. Am. LLC v. Fitbit LLC*, No. CV 19-11586-FDS, 2021 WL 5417103, at *5 (D. Mass. Nov. 19, 2021) (denying a motion to amend infringement contentions to cover new products and finding prejudice given the late stage of the case); *see also KlausTech, Inc. v. Google LLC*, No. 10CV05899JSWDMR, 2018 WL 5109383, at *8 (N.D. Cal. Sept. 14, 2018) (Google need not show prejudice because prejudice is inherent and "to impose such a burden would create an incentive for late disclosure"), *aff'd*, 792 F. App'x 954 (Fed. Cir. 2020).  For example, in another case from this district, U.S. Magistrate Judge Teresa J. James found prejudice in amending invalidity contentions when fact discovery was closed, the court already entered a claim construction order, and allowing the amendment would require an extension of the discovery deadline, triggering extensions to the other remaining case-management deadlines. *Digital Ally*, 2018 WL 5620654, at *2.

The same is true here.  The late timing of LoganTree's new infringement theories would significantly prejudice Garmin.  As explained above, LoganTree has maintained one position in this case and other forums, successfully defending the validity of its claims by repeatedly emphasizing that a single microprocessor within the portable, self-contained unit executes the "detecting" and "storing" limitations.  Because LoganTree took this position, Garmin based its prior art search, its invalidity contentions, and its invalidity expert disclosures on LoganTree's position that the microprocessor must be part of the claimed self-contained unit.  Allowing LoganTree to amend its infringement contentions at this late stage to rely on a multi-processor infringement theory represents a significant change to LoganTree's existing infringement theories when this case is now at the summary-judgment stage.  Even if the court were to allow Garmin to reframe its invalidity case, the court cannot reopen IPR proceedings, and the IPR estoppel statute

would bar a complete do-over in this litigation.  35 U.S.C. § 315.  Furthermore, Garmin says it made strategic decisions at the claim construction stage to avoid construing certain terms based on LoganTree's existing allegations focusing on a microprocessor contained within the accused watches and not within a distributed system.  And, the court issued a *Markman* order ten months ago.  Furthermore, Garmin contends that it relied on the scope of LoganTree's infringement theories to make decisions in discovery, including questioning witnesses during depositions (including LoganTree's founder, who is now deceased and can no longer be examined) and deciding not to issue third party prior-art subpoenas.

 The prejudice to Garmin is exacerbated because LoganTree's disclosure of new infringement theories is not just late, it is extraordinarily late.  LoganTree delayed serving the expert report articulating these theories, and it delayed doing so because it needlessly protracted a discovery dispute regarding source code printouts.  LoganTree even delayed in seeking the discovery that was the subject of the dispute by waiting until May 2021 to review Garmin's source code after Garmin notified LoganTree on November 4, 2019, that it would make its source code available for inspection.  *LoganTree*, 339 F.R.D. at 175-76 (recounting LoganTree's belated review of source code).  In other words, LoganTree's delay is a pattern in the case.  Claim construction is complete, fact discovery is closed, expert discovery is complete, and Garmin is eager to file a summary judgment motion.

LoganTree nevertheless contends that Garmin would not be prejudiced because it had sufficient notice of these theories.  The court disagrees.  LoganTree relies on the Rule 30(b)(6) designation of Garmin's Nathan Henderson, the director of the division responsible for Gamin Connect.  According to LoganTree, this is evidence that Garmin somehow intuited that LoganTree's infringement theories implicated Garmin Connect.  LoganTree also deposed

Garmin's Robert Blair, who provided testimony about Goal Streak (among other things).  But the fact that Garmin has witnesses who understand its own technology and products in no way provided Garmin with full and fair notice that LoganTree would shift its infringement theories to rely on previously unaccused functionality.  LoganTree also suggests that Garmin will not be prejudiced because it already developed new defenses to these theories, as set forth in Garmin's supplemental interrogatory responses.  But Garmin's responses state that Garmin would object to the belated assertion of any such theories and that Garmin was serving the responses only as a precautionary matter after becoming concerned during these depositions that LoganTree might attempt to belatedly rely on Garmin Connect as part of its infringement theories.  (ECF 167-3, at 3.)  The fact that Garmin took precautions to try to guard against the full range of prejudice that might result if LoganTree were allowed to lodge new infringement theories does not equal a lack of prejudice.  And, lastly, LoganTree argues that Garmin had an opportunity to depose Myers after he issued his expert report to suggest that ameliorates the prejudice to Garmin.  But this in no way alleviates the full range of prejudice to Garmin, for all of the reasons already explained.

The court wishes to emphasize one last point on the issue of prejudice.  By LoganTree's own admission, it should not be prejudiced by the court not allowing the new infringement theories.  LoganTree's main position at this procedural juncture is that the disputed portions of Myers' expert report are merely "demonstrative" of LoganTree's existing infringement theories and therefore amendment is not required.  LoganTree is still free to pursue its original infringement theories—based on the user-defined daily step-count goal, and the microprocessor and the .FIT file in the Accused Products meeting the "detecting" and "storing" limitations.  LoganTree contends these infringement theories are sufficient to meet its burden to prove infringement.  (*See* Pretrial Order ¶ 3(a)(i), at 7-9.)  Consequently, there should be nothing prejudicial to LoganTree

about allowing it to pursue the infringement theories it has pursued in this case as set forth in its infringement contentions, and only those theories.

## V.    STRIKING MYERS' NEW INFRINGEMENT THEORIES IS THE APPROPRIATE REMEDY

Garmin asks the court to strike Myers' new infringement theories pursuant to Rules 16(f) and 37(b)(2)(A)(ii).  Local patent rules "are essentially a series of case management orders" and the court "may impose any 'just' sanction for the failure to obey a scheduling order."  *O2 Micro Int'l Ltd.*, 467 F.3d at 1363.  This includes the court's authority under Federal Rules of Civil Procedure 16(f) and 37(b)(1)(A)(ii) to prohibit a disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence.  *Id.*  Indeed, the exclusion of evidence is often an appropriate sanction for failing to disclose patent infringement theories.  *Id.* at 1369 (affirming the exclusion of evidence for failing to comply with the disclosure deadlines required by the local patent rules and the case management order); *Howmedica Osteonics Corp. v. Zimmer*, 822 F.3d 1312, 1324-25 (Fed. Cir. 2016) (concluding district court did not abuse its discretion in applying its local patent rules to preclude a theory that was not disclosed in infringement contentions); *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005) (giving "broad deference to the trial court's application of local procedural rules in view of the trial court's need to control the parties and flow of litigation before it," and finding no abuse of discretion in excluding evidence pertaining to claim construction and infringement theories that were not properly disclosed).

"Given the purpose behind these disclosure requirements, a party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions."  *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934,

946 (N.D. Cal. 2018) (collecting cases).  Indeed, the most common remedy when a party violates the scheduling order by articulating new theories in an expert report that were not timely disclosed in infringement contentions is to strike those portions of an expert report.  *See, e.g.*, *Phigenix*, 783 F. App'x at 1017 (holding it was within the district court's discretion to exclude expert's opinion on infringement where patent owner failed to timely disclose its narrowed infringement theory); *Eli Lilly & Co. v. Dr. Reddy's Lab'ys, Ltd.*, No. 1:16-CV-0308-TWP-DKL, 2017 WL 1531834, at *3 (S.D. Ind. Apr. 28, 2017) (striking portions of expert reports and prohibiting plaintiff from introducing evidence regarding the stricken portions); *see Finjan*, 2018 WL 620169, at *5 (striking certain technologies from an expert report that were not disclosed in infringement contentions); *Baltimore Aircoil Co., Inc. v. SPX Cooling Techs. Inc.*, No. CV CCB-13-2053, 2016 WL 4426681, at *14 (D. Md. Aug. 22, 2016) (striking portions of an expert report regarding infringement under the doctrine of equivalents because the party had not timely or adequately disclosed the theory in compliance with the local patent rules), *aff'd*, 721 F. App'x 983 (Fed. Cir. 2018); *Trading Techs. Int'l, Inc. v. CQG, Inc.*, No. 05-CV-4811, 2014 WL 4477932, at *5 (N.D. Ill. Sept. 10, 2014) (same); *ASUS Computer Int'l v. Round Rock Rsch., LLC*, No. 12-CV-02099 JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014) (collecting cases striking portions of expert reports constituting matters that should have been disclosed in infringement or invalidity contentions); *see also Neonatal*, 276 F. Supp. 3d at 1128 (striking portions of a product designer's declaration and summary judgment response that constituted a new theory that was not timely disclosed in infringement contentions).  In determining whether to strike portions of an expert report based on the failure to properly disclose an infringement theory, courts have asked the simple question: "will striking the report result in not just a trial, but an overall litigation, that is more fair, or less?" *Apple Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK PSG, 2012 WL 2499929, at *1 (N.D. Cal.

June 27, 2012); *see also Celgene*, 2021 WL 3701700, at \*2 (same); *Charleston Med. Therapeutics, Inc. v. AstraZeneca Pharms. LP*, No. 2: 13-CV-2078-RMG, 2015 WL 10913613, at \*1 (D.S.C. Apr. 16, 2015) (same).

Here, striking the portions of Myers' expert report setting forth matters that LoganTree should have disclosed in its final infringement contentions results in an overall litigation that is more fair, for all of the reasons explained above. Myers' expert report articulates new infringement theories that expand its allegations of recording on self-contained devices across multiple devices, which represents a significant shift in infringement theories given the scope of the claims. Moreover, although the court is not required to consider prejudice to Garmin on a motion to strike, it easily finds prejudice for the reasons explained above. Allowing these belated infringement theories in a case pending for more than four years on the eve of summary judgment briefing would result in a massive and entirely avoidable delay—yet another reason why excluding the new infringement theories results in a more fair litigation. Finally, as Garmin notes, excluding these new theories does not unfairly prejudice LoganTree because it is free to continue to litigate its timely disclosed infringement theories. For these reasons, Garmin's motion to strike is granted.

## VI.    CONCLUSION

For the reasons explained above, LoganTree's motion to amend its infringement contentions is denied, and Garmin's motion to strike the new theories advanced by Myers in his October 8 report is granted. The court strikes all theories relying on Goal Streak and all theories relying on Garmin Connect as they relate to the "detecting" and "storing" limitations.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Strike LoganTree's New Infringement Theories (ECF 157) is granted.

**IT IS FURTHER ORDERED** that LoganTree's Motion for Leave to Amend Infringement Contentions (ECF 162) is denied.

Dated December 20, 2021, at Topeka, Kansas.

<u>s/ Angel D. Mitchell</u>
Angel D. Mitchell
U.S. Magistrate Judge