UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LOGANTREE LP,

                    Plaintiff,

v.                                                          Case No.  17-1217-EFM-ADM

GARMIN INTERNATIONAL, INC.,

                    Defendant.

**MEMORANDUM IN SUPPORT OF
<u>GARMIN'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

I.     Procedural History .................................................................................................4

II.    Statement of Facts ..................................................................................................6

   A.   The '576 Patent's Time Stamp Requirement. ...................................................6

   B.   Garmin's Accused Products ..............................................................................6

   C.   LoganTree's Conflicting Statements Relating to "Unrestrained Movement."....................8

III.   Legal Standard ......................................................................................................10

IV.    Argument ...............................................................................................................11

   A.   Garmin's Accused Products do not (and cannot) infringe where they never record a time stamp based on a user reaching a step goal. ..............................................11

      1.   The Accused Products Do Not Record Time Stamps When the User Defined Step Goal is Achieved .................................................................................................14

      2.   The Accused Products Intentionally Delay Writing Time Stamps and Do Not Record "The Time" the Goal is Met from the System Clock ..........................................18

      3.   The Accused Products do not Store "First Event Information Related to the Detected First User-Defined Event Along with First Time Stamp Information"................................20

      4.   Garmin does not perform the method of Claim 20 .......................................21

   B.   The asserted claims are indefinite where LoganTree has made conflicting statements as to the scope of "unrestrained movement in any direction."..........................................23

V.     Conclusion ............................................................................................................29

# TABLE OF AUTHORITIES

## CASES

*Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, 2020 WL 1333131 (D. Del. Mar. 23, 2020).................................................................................................................................22

*Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180 (Fed. Cir. 2014) ....................................21

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343 (Fed. Cir. 2001).......................24

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348 (Fed. Cir. 2013) ..........20

*Berkheimer v. HP, Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) .............................................................28

*Bones v. Honeywell Intern., Inc.*, 366 F.3d 869 (10th Cir.2004) .................................................11

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)........................10

*CommScope Techs. LLC v. Dali Wireless Inc.,* 10 F.4th 1289 (Fed. Cir. 2021)...................passim

*Garrison v. Gambro, Inc.*, 428 F.3d 933 (10th Cir.2005) ............................................................10

*Haynes v. Level 3 Commc'ns, LLC,* 456 F.3d 1215 (10th Cir. 2006)...........................................10

*Infinity Computer Prods., Inc. v. Oki Data Americas, Inc.*, 987 F.3d 1053 (Fed. Cir. 2021) .24, 27

*Infinity Computer Prods., Inc. v. Oki Data Americas, Inc.*, 2019 WL 2422597 (D. Del. Jun. 10, 2019)...........................................................................................................................................26

*KCJ Corp. v. Kinetic Concepts, Inc.*, 39 F. Supp. 2d 1286 (D. Kan. 1999).................................11

*KMMentor, LLC v. Knowledge Mgmt. Pro. Soc., Inc.*, 712 F. Supp. 2d 1222 (D. Kan. 2010).....11

*LifeWise Master Funding v. Telebank*, 374 F.3d 917 (10th Cir. 2004)........................................10

*Mitchell v. City of Moore, Okla*., 218 F.3d 1190 (10th Cir.2000)................................................11

*Nautilus, Inc. v. Biosig Instruments, Inc.,* 134 S. Ct. 2120 (2014)........................................24, 27

*Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299 (Fed. Cir. 2020).........................20

*Peters v. Active Mfg. Co*., 129 U.S. 530, 9 S.Ct. 389, 32 L.Ed. 738 (1889) ...............................23

*Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325 (Fed. Cir. 2008)..................................22

*Smith v. Garlock Equip. Co*., 658 F. App'x 1017 (Fed. Cir. 2016)...............................................17

*Sprint Commc'ns Co. L.P. v. Cable One, Inc.*, 2014 WL 3661081 (D. Kan. July 23, 2014)........20

*Thom v. Bristol–Myers Squibb Co.*, 353 F.3d 848 (10th Cir. 2003) ............................................10

*TNS Media Research, LLC v. Tivo Research & Analytics, Inc.*, 629 F. App'x 916 (Fed. Cir. 2015)...........................................................................................................................................22

*White v. York Int'l Corp*., 45 F.3d 357 (10th Cir.1995)................................................................11

LoganTree's allegations of infringement revolve around the ability of certain Garmin fitness watches to accumulate and track a user's steps throughout the day. According to LoganTree, Garmin's products allegedly infringe because they store a time stamp in memory that records the time at which the user reached a user-defined step goal. This is demonstrably incorrect. As Garmin explained many times to LoganTree, the evidence relied upon by LoganTree for the time stamp showed an entry that was recorded ***before*** the step goal of 2,500 steps was reached:



(ECF 158-2, at 2).

LoganTree, however, contends that the time stamp does not need to reflect the time at which the user actually met their step goal, as long as it was merely "associated" with the steps. This was the key issue Garmin asked the Court to resolve during claim construction—what level of precision is required for the time stamp. As this Court recently noted, "[t]he Court largely agreed with Garmin's proposed construction" and found the time stamp must record information "***reflecting the time recorded or noted by the system at which***" the user-defined step goal is met. Shortly after this order, Garmin again pointed out the flaws in LoganTree's case and asked it to dismiss the case in light of the court's claim construction. ECF 186, at 7. LoganTree refused.

Despite Garmin's explanation for how LoganTree lacked a good faith basis to proceed in view of the Court's claim construction, "LoganTree doubled down on its existing infringement theories" and served final infringement contentions that were materially identical. *Id.*, at 8. LoganTree's final contentions continued to advance the same infringement theories, relying on the same time stamp that appears ***before*** the user met their step goal. *Id.*

LoganTree then had its expert conduct hundreds of tests on Garmin's Accused Products trying to find a single time stamp that recorded the time ***"at which"*** the user met the step goal and not before. After hundreds of tests and countless hours, LoganTree's expert's own testing revealed the Accused Products ***never*** record a time stamp when the user achieves their user-defined step goal—precisely what Garmin has been telling LoganTree for well over two years. After all this testing, the closest LoganTree could get to a time stamp "reflecting a time ***at which*** the movement data causing the first user-defined event (*i.e.* step goal) ***occurred***" was always ***before*** the user defined step goal, and in some cases still hundreds of steps away from the purported test step goal of 750:

| Tested Accused Product | Step Goal | Step number LoganTree Contends is Infringing | Total Steps away from the user-defined goal |
|---|---|---|---|
| Forerunner 235 | 750 | 208 | 542 |
| Forerunner 25 | 750 | 238 | 512 |
| Vivofit 3 | 750 | 290 | 460 |
| Fenix 5 | 750 | 687 | 63 |
| Vivosport | 750 | 704 | 46 |

SOF ¶ 9. Despite these results, LoganTree has inexplicably maintained its position that a time stamp that appears, for example, 542 steps ***before*** the step goal is reached is a time stamp reflecting "the time at which" the step goal was met. This isn't surprising. This is how Garmin's products were designed to work.

2

LoganTree's own testing results are consistent with every letter Garmin has sent to LoganTree questioning its good faith basis for infringement. They are consistent with the testimony of every Garmin engineer that provided a deposition. They are consistent with Garmin's expert's analysis of the products. And they align with how Garmin programmed the software (e.g., the "source code") that operates on each Accused Product. Every piece of evidence in this case confirms the Accused Products do not store a time stamp when a user-defined step goal is met. Garmin simply designed its products a different way than what is described in the '576 Patent because Garmin's customers do not care about the precise time at which a step goal was met. Other than its expert's rampant speculation, LoganTree has no evidence that the Accused Products ever record a time stamp **when** a user hits their user-defined step goal. No jury should be empaneled to waste a week's worth of time to reach the simply conclusion that that 208 does not equal 750. Summary judgment of noninfringement is warranted.

As described in other briefing in this case, LoganTree has engaged in significant gamesmanship by taking a shifting sands approach to the meaning of its patent before this Court, the District of Delaware, the U.S. Patent Office, and the Federal Circuit. (ECF 186, at 25–29). The result of this shifting sands approach to its patent is that LoganTree has twisted the meaning of terms one way for validity and another for infringement, thus rendering the term "unrestrained movement in any direction" (as used in Claims 1 and 20) indefinite. Specifically, during prosecution, reexamination, and the IPR, LoganTree argued that references teaching movement measurement in six and nine directions do **not** teach unrestrained movement in any direction. But here, it is undisputed that Garmin's Accused Products measure movement in only three directions yet, somehow, LoganTree contends they **do** measure unrestrained movement in any direction. Even LoganTree's own expert cannot explain this inconsistency in light of LoganTree's prior

statements. SOF ¶¶ 18, 20. LoganTree's conflicting positions fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention, rendering its asserted claims indefinite. Summary judgment is therefore proper.

## I.      Procedural History[1]

When LoganTree served its initial infringement contentions, it alleged that Garmin's Accused Products met the "time stamp" limitation by storing certain information in a .FIT file[2] on the Garmin devices. ECF 186, at 6. LoganTree's contentions showed that monitoring messages are stored in the .FIT file at intervals rather than being tied to the user reaching a step goal. *Id.*, at 7. To date, all of LoganTree's contentions identified a time ***prior*** to the user meeting the step goal, not the time ***at which*** the user met the goal. *Id.*

The precision of the time stamp was a central focus of this Court's claim construction hearing and order. There, the parties disputed the portion of the "storing" limitation requiring "first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred." *Id.*, at 6. Garmin proposed the construction "first time stamp information reflecting a system time ***at which*** the movement data causing the first user-defined event occurred.". ECF 99-1. LoganTree proposed the construction "first time stamp information reflecting a system time ***associated*** with the movement data occurrence causing the first user-defined event." *Id.* The dispute centered around the question of whether the time stamp must be

---

[1] The procedural history of this case was recited in Magistrate Judge Mitchell's December 20 Memorandum and Order, ECF 186, and Garmin highlights the most pertinent aspects of the history of this case that are relevant to the current motion.

[2] The ".FIT File" is the name of the file within the memory of the Garmin devices where the data captured by the watches that will be reviewed by the user is stored. For example, the FIT files store raw data relating to the user's total steps, calories, run distances, heart rate, sleep data, GPS data, etc., that the user may transfer to Garmin's servers where it is then analyzed and further processed for display and review of the "Garmin Connect" app on a user's smartphone and computer.

precise enough to reflect a time "at which" the movement occurred (as Garmin contended) or some amorphous time merely "associated with" the movement (as LoganTree proposed). The Court largely agreed with Garmin, construing the limitation to mean "first time stamp information reflecting *the time* recorded or noted by the system *at which* the movement data causing the first user-defined event *occurred."* ECF 106, at 9. Thus, the dispute now presented on summary judgment has largely been resolved—LoganTree must identify a time stamp recording or noting "the time … at which [the user-defined step goal] occurred."

In light of this Court's ruling, Garmin sought dismissal of LoganTree's claims because, as reflected in LoganTree's infringement contentions, Garmin's Accused Products do not record the time (a time stamp) at which the user reaches its step goal. ECF 186, at 7. Instead of dismissing, LoganTree "doubled down" on its infringement theory, serving final contentions in March 2021, which included the same theory that Garmin's Accused Products met the "storing" limitation by noting a time stamp that reflects a time and step count *before* the step goal is met. As noted above, LoganTree's expert report is identical—in every single instance LoganTree relies on time stamps that reflect a time and step count *before* the step goal is met. During the Final Pretrial Hearing, LoganTree admitted that its case relies on a different interpretation of the Court's claim construction. **Ex. M**, *12-17-21 Hrg. Trans.*, at 6:19–23.[3] Thus, LoganTree is seeking to relitigate an issue the Court already has decided.

Separately during claim construction, the parties disputed whether the term "unrestrained movement in any direction" was rendered indefinite based on LoganTree's conflicting and ever-shifting positions during prosecution, reexam, the IPR, and now litigation. At the *Markman*

---

[3] "COURT: And, Mr. Barkley, as I understand it, LoganTree's position is that this isn't a DOE theory, this is just a different read of the court's claim construction order; is that correct Mr. Barkley?

MR. BARKLEY: That's correct, Your Honor."

hearing, this Court noted that LoganTree's "inconsistency of arguments and positions . . . might present a problem to them," but it decided to forego ruling on indefiniteness until summary judgment. ECF 106, at 29. Thus, as a second basis for its motion for summary judgment, Garmin seeks a judgment that "unrestrained movement in any direction" is indefinite and claims 1, 20, and their dependent claim are, therefore, invalid.

## II.   Statement of Facts

### A.   The '576 Patent's Time Stamp Requirement.

1.   The time stamp element in independent claims 1 and 20 of the '576 Patent requires: ". . . first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred." ECF 187, at 3.

2.   The Court construed the "first time stamp" limitation as "first time stamp information reflecting the time recorded or noted by the system at which the movement data causing the first user-defined event occurred. ECF 106, at 9 (emphasis added). The Court's claim construction order also noted "the time stamp information is a recording of the time obtained from the system's real time clock," and "is going to be measured based on the unit of measurement that the real-time clock is programmed to obtain, whether that be nanoseconds, seconds, minutes, or some other unit of measurement." *Id.* at 8.

3.   LoganTree contends the claimed "user-defined event" is achieving a user-defined step goal (e.g., a manually entered step goal of 750 steps) and that when the user-defined goal is reached a time stamp is recorded in a .FIT file saved on the Accused Products. ECF 187, at 7.

### B.   Garmin's Accused Products

4.   LoganTree accuses forty-one Garmin products of literally and directly infringing the '576 Patent (the "Accused Products"). *Id.*, at 4–5.

5.     The system's real-time clock within Garmin's Accused Products measures and records information on a "per second" basis. *Id*. at 8, 11; **Ex. A**, *Michalson Report*, at 132, ¶ 237; **Ex. B**, *Myers' Depo. Trans.*, 101:3–7.

6.     Garmin's Accused Products store time stamps at certain time intervals (e.g. 15 minutes) or at the nearest minute boundary after the device detects a change in activity (i.e., storing a time stamp at 6m00s after the system detects that the user stops moving and becomes stationary at 5m18s). ECF 187, at 8; **Ex. C**, *Blair Depo. Trans.*, at 25:23–26:10; 33:7–34:4; 35:1–16; **Ex. A**, *Michalson Report*, at 143–44, ¶ 261.

7.     LoganTree admits that Garmin made a different "design choice of precision" by saving step information to the .FIT file on the minute boundary. ECF 187, at 8.

8.     LoganTree's expert, Myers, "did dozens and likely hundreds of tests" on the Accused Products, but LoganTree admits that "750 steps is never recorded with a time stamp" in the Accused Products. **Ex. B**, *Myers' Depo Trans.*, at 90:23–91:4; 99:9–12; 102:6–7; 133:18–19; ECF 187, at 8.

9.     Myers relies on and alleges the following reflect the time at which the user has achieved the user defined step goal of 750 steps and saved the time stamp and user defined goal to the .FIT file:

- Forerunner 235 .FIT file – time stamp where the user only achieved 208 steps;

- Forerunner 25 .FIT file – time stamp where the user only achieved 238 steps;

- Vivofit 3 .FIT file – time stamp where the user only achieved 290 steps;

- Fenix 5 .FIT file – time stamp where the user only achieved 687 steps; and

- Vivosport .FIT file – time stamp where the user only achieved 704 steps.

**Ex. D**, *Myers' Created .FIT Files*; **Ex. A**, *Michalson Report*, at 22–23, ¶ 52; 25–26, ¶ 57.

10.     LoganTree provided no citation to the source code, technical evidence, or deposition testimony to show the Accused Products record a time stamp when the user-defined step goal is achieved. ECF 187, at 8; **Ex. E**, *Myers' Report*, at 72–77, 102–07, 185–90, 215–20, 296–302, 326–31, 411–16, 443–48, 490–93, 516–18. **Ex. B**, *Myers' Depo Trans.*, at 99:9–12; 102:6–7; 133:18–19; **Ex. A**, *Michalson Report*, at 133, ¶ 239; 134, ¶ 242; 135, ¶ 243; 136, ¶ 246 – 142, ¶ 258.

11.     The Accused Products do not save a time stamp and the associated user step goal to the .FIT file when a user achieves the manual step goal. **Ex. A**, *Michalson Report*, at 133, ¶ 240 – 134, ¶ 241; **Ex. C**, *Blair Depo Trans.*, at 32:10–16; 38:8–15; 38:22–23; **Ex. F,** *Henderson Depo Trans.*, at 21:19–23.

12.     LoganTree has no evidence of Garmin testing the Accused Products during the relevant time period from March 2015–November 2017, no evidence that the testing infringed Asserted Claims 20, 25, and 134, and no evidence any alleged testing occurred in the United States. ECF 187, at 14; **Ex. B**, *Myers' Depo Trans.*, at 116:7–117:15, 134:1–12, 145:10–18, 153:1–7, 161:25–162:10.

13.     Garmin witness Jay Dee Krull was designated as a corporate representative under 30(b)(6) on a single topic to offer testimony about Garmin's prior art products and offered testimony limited to Garmin's GPS II/II Plus prior art device. **Ex. G**, *Krull Depo Trans*., at 11:10– 18; 64:17–66:4.

**C.     LoganTree's Conflicting Statements Relating to "Unrestrained Movement."**

14.     To obtain its patent, LoganTree amended the claims by adding the following underlined language: "a movement sensor capable of measuring data associated with <u>unrestrained</u> movement <u>in any direction</u> and generating signals indicative of said movement." **Ex. H**, *Excerpts of File History,* at GARMIN_0280135–37; **Ex. I**, *Ferrese Report*, at 19–20, ¶ 60.

15.     In the reexamination proceeding, while discussing the claimed invention, LoganTree stated "[f]or instance, upon detection of the event, such as when a user's measured movement passes a given angle (or some other type of movement threshold), time stamp information is recorded. This recorded time stamp information reflects a time at which the user's movement (e.g. passing the given angle) caused the event to occur (patent specification, column 6, lines 15-40 also see col. 7, lines 32-43)." **Ex. J**, *Reexam File History*, at GARMIN_0280699–700.

16.     Also during reexamination, LoganTree stated the Vock/Flentov patents,[4] which teach measuring movement in six directions, did not teach unrestrained movement "in any direction". Instead "the 'unrestrained movement' being measured in Flentov is restricted to the 'forward axis' (parallel to vehicle movement along surface) and the 'height axis' (perpendicular to vehicle movement along surface)" and "the 'unrestrained movement' being measured in Vock is restricted to 'upwards' or 'downwards.'" **Ex. J**, *Reexam File History*, at GARMIN_0280345–56, GARMIN_0280379–93; **Ex. E**, *Myers Report*, at 10, ¶ 32; **Ex. I**, *Ferrese Report*, at 21, ¶ 64; **Ex. K**, *Ferrese Depo Trans.*, 21:24–22:17.

17.     During the IPR, LoganTree stated that Stewart, "merely provides for a helmet that includes three sets of three orthogonally-placed accelerometers that can be used to measure uniquely the translational, angular and normal components of acceleration of the head," also did not measure unrestrained movement in any direction and "is believed to be restrained." ECF 85-8, at 4:57–59, 6:32–36, 6:42–45, 7:21–23; ECF 85-9, 85-10.

18.     During this litigation, LoganTree's validity expert, Ferrese, contended that to measure unrestrained movement in any direction (*i.e.* "complete measure of all directions")

---

[4] The Vock and Flentov prior art references are related and share a specification.

Vock/Flentov would need to measure movement in nine directions (*i.e.* "nine accelerometers"). **Ex. K**, *Ferrese Depo Trans.*, at 22:21–23:19. Yet Ferrese never referred to any disclosure of the '576 Patent to support his indefiniteness opinions. *Id*. at 126:25–127:11. Nor did he discuss any reference in the '576 Patent to impact forces restraining movement. *Id*. at 129:20–130:2.

19.     LoganTree accused Garmin's Accused Products, which measure movement in three directions, of measuring unrestrained movement. ECF 187, at 12.

20.     Ferrese opined that it was a "reasonable position" to contend that Flentov/Vock "does not teach the measurement of unrestrained movement in any direction because [Flentov/Vock] only teaches the measurement of loft (time) and speed." **Ex. I**, *Ferrese Report*, at 55–57, ¶ 31. However, when confronted with Vock/Flentov's disclosure that its movement sensors could measure ***distance*** (including distance in six directions) in addition to loft time and speed, Ferrese admitted "Vock/Flentov only teaches the measurement of loft (time) and speed." **Ex. K**, *Ferrese Depo Trans.*, at 62:10–12.

### III.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Commc'ns, LLC,* 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id.* The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Thom v. Bristol–Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim. *Id.* If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir.2005). The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir.2000) (citation omitted). Conclusory allegations alone cannot defeat a properly supported motion for summary judgment. *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir.1995). The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir.2004); *see also KMMentor, LLC v. Knowledge Mgmt. Pro. Soc., Inc.*, 712 F. Supp. 2d 1222, 1236 (D. Kan. 2010).

## IV.     Argument

### A.     Garmin's Accused Products do not (and cannot) infringe where they never record a time stamp based on a user reaching a step goal.

LoganTree alleges Garmin infringes the Asserted Claims by literal, direct infringement. SOF ¶ 4. The burden is on LoganTree to show that "the properly construed claim reads on the accused device exactly." *CommScope Techs. LLC v. Dali Wireless Inc.,* 10 F.4th 1289, 1298 (Fed. Cir. 2021); *KCJ Corp. v. Kinetic Concepts, Inc.*, 39 F. Supp. 2d 1286, 1289 (D. Kan. 1999). Because LoganTree has only pled literal infringement, this means LoganTree cannot argue a time stamp that is before the user-defined goal is "similar" or "close enough." It must be exact. *Id.* LoganTree cannot meet its burden.

The key claim limitation in all the asserted claims warranting summary judgment of no infringement is the "time stamp" limitation, which requires storing "first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred." SOF ¶ 1. The Court construed the time stamp limitation as "first time stamp information reflecting ***the time*** recorded or noted by the system ***at which*** the movement data causing ***the first user-defined event occurred***." (emphasis added). SOF ¶ 2. Supporting that construction, the Court explained that "the time stamp information is a recording of the time obtained from the system's real time clock," and "is going to be measured based on the unit of measurement that the real-time clock is programmed to obtain, whether that be nanoseconds, seconds, minutes, or some other unit of measurement." *Id*. Thus, to satisfy the time stamp limitation under the Court's claim construction, Garmin's Accused Products must detect a first user-defined event and record a time stamp (with the specificity of the system clock) indicating the time at which the user-defined event occurred. Because LoganTree accuses Garmin's user-defined daily step goal as the first user-defined event, LoganTree must show that Garmin's Accused Products record a time stamp indicating the time (accurate to the second because that is the unit of measurement utilized by the Accused Products) at which the user met the daily step goal. LoganTree cannot make this showing.

The focal point of LoganTree's infringement theory for the time stamp limitation are the time stamps relating to step counts stored in a .FIT file on the Accused Products. SOF ¶ 3. Below is an excerpt of the excel version of the .FIT file from the Forerunner 235, created and relied upon by Myers in his report, showing the .FIT files general format and layout:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 15 | Data | 5 | monitoring | timestamp | 1002290280 | s | current_activity_type_intensity | 8 | |
| 16 | Definition | 6 | unknown | unknown | 21 | | | | |
| 17 | Data | 6 | unknown | unknown | 224\|188\|189\|59\|1\|0\|99\|2\|0\|0\|0\|0\|0\|0\|0\|0\|0\|0\|0 | | | | |
| 18 | Data | 6 | unknown | unknown | 224\|188\|189\|59\|0\|0\|141\|160\|0\|0\|0\|0\|0\|0\|0\|0\|0\|0\|0 | | | | |
| 19 | Data | 6 | unknown | unknown | 224\|188\|189\|59\|1\|1\|71\|0\|0\|0\|0\|0\|0\|0\|0\|0\|0\|0\|0 | | | | |
| 20 | Definition | 7 | monitoring | timestamp_16 | 1 | | heart_rate | 1 | |
| 21 | Data | 7 | monitoring | timestamp_16 | 48352 | s | heart_rate | 99 | bpm |
| 22 | Definition | 0 | monitoring | cycles | 1 | | active_time | 1 | |
| 23 | Data | 0 | monitoring | steps | 208 | steps | active_time | 120 | s |
| 24 | Data | 7 | monitoring | timestamp_16 | 48412 | s | heart_rate | 109 | bpm |
| 25 | Data | 6 | unknown | unknown | 281\|189\|189\|59\|0\|1\|1\|0\|0\|0\|0\|0\|0\|0\|0\|0\|0\|0\|0 | | | | |

**SOF ¶ 9; Ex. D**. LoganTree's evidence for each category of Accused Products is the same—every

instance relies on time stamps that occur *before* the user-defined step goal has been met:

| Tested Accused Product | Step Goal | Step number LoganTree Contends is Infringing | Total Steps away from the user-defined goal |
|---|---|---|---|
| Forerunner 235 | 750 | 208 | 542 |
| Forerunner 25 | 750 | 238 | 512 |
| Vivofit 3 | 750 | 290 | 460 |
| Fenix 5 | 750 | 687 | 63 |
| Vivosport | 750 | 704 | 46 |

*Id.*

LoganTree's entire infringement theory hinges on its claim that the Garmin Accused

Products literally (i.e., "exactly") infringe by recording time stamps *before* the user-defined step

goal is met when the claim requires a time stamp reflecting ***the time at which*** a user achieved his

or her user-defined step goal. SOF ¶¶ 1, 4, 9. They do not, and no jury should be empaneled to

perform basic math to determine that a time stamp of 208 steps is *before* a goal of 750 steps.

LoganTree performed hundreds of tests on Garmin's Accused Products and each one proved

Garmin's case—there was not a single time stamp stored in any of the .FIT files generated by any

of LoganTree's tests indicating when the step goal was met. SOF ¶ 8. LoganTree admitted as much

in the Pretrial Order. *Id*. In other words, none of the .FIT files offered as evidence by LoganTree

include any stored time stamps that reflect the time at which the user achieved their selected step

goal. As such, summary judgment of non-infringement is appropriate.

1. ***The Accused Products Do Not Record Time Stamps When the User Defined Step Goal is Achieved***

LoganTree provides no evidence that any group of Accused Products stores "first ***time stamp*** information reflecting a time at which the ***movement data causing the first user-defined event occurred***," as construed by the Court. This is for a good reason—the Accused Products are not designed to, and do not in operation, record a time stamp when the user reaches their user-defined step goal. SOF ¶¶ 10–11. While LoganTree contends that a time stamp is recorded to the .FIT file on the Accused Products when a user reaches their user-defined step goal (e.g., 750 steps in Myers' testing), LoganTree's .FIT file "evidence," compiled from hundreds of tests, confirms the opposite—no time stamp is recorded that reflects the time at which the user reached their user-defined step goal (e.g. 750 steps). SOF ¶¶ 8–9. Thus, LoganTree failed to offer any evidence to support its claim that the Accused Products store a time stamp to the .FIT files when a user of the Accused Products reaches their user-defined step goal. This complete failure of proof alone warrants summary judgment of no infringement.

It is undisputed that Garmin's Accused Products record time stamps at regular predetermined intervals (e.g., at 15-minute time intervals) or at the minute boundary of when a user changes activity (e.g., when a user slows down, stops, speeds up, has a change in heart rate, etc). SOF ¶ 6. A "minute boundary" refers to the transition from one minute to another. For example, if a change of activity is detected at 5m03s, the next minute boundary would be 6m00s. ECF 187, at 11. To put it in terms of time of day, if a change of activity occurs at 12:29:21 PM, the next minute boundary would be 12:30:00 PM, while the preceding minute boundary would have been 12:29:00 PM. Thus, when a chance of activity occurs between minute boundaries, for example 12:29:21 PM above, the time stamp stored does not reflect the time at which that activity change occurred down to the second. Instead, the time stamp stored will show either 12:29:00 PM

or 12:30:00 PM. Importantly, LoganTree does not contend the normal operation of the products—saving a time stamp at certain time intervals or at a minute boundary when there is a change of activity—satisfies the claim limitation. SOF ¶¶ 3, 9. This makes sense, as these time stamps have nothing to do with the user achieving the user-defined step goal.

Lacking any evidence, LoganTree is forced to rely on time stamps corresponding to a time and step count that occurred *before* the user's step goal was reached. SOF ¶¶ 8–9. LoganTree then has its expert speculate that these time stamps were actually the result of the user hitting their step goal. SOF ¶¶ 8–10. Specifically, Myers conducted "dozens and likely hundreds of tests" to try to force the Accused Products to record time stamps based on a change in activity at the time the user-defined step goal was anticipated to be achieved. SOF ¶ 8. Yet, despite hundreds of attempts, Myers failed to provide even one example in which he successfully obtained a time stamp reflecting the time at which the user achieved the user-defined step goal. SOF ¶¶ 8–9.

Myers identifies a total of five .FIT files as evidence that Garmin's 41 Accused Products infringe the asserted claims. Not a single one of the files includes a time stamp when a user achieved the user-defined goal of 750 steps. *Id*. Instead, they include time stamps that are often hundreds of steps away from the 750-step goal:

- Forerunner 235 .FIT file – time stamp where the user only achieved 208 steps;

- Forerunner 25 .FIT file – time stamp where the user only achieved 238 steps;

- Vivofit 3 .FIT file – time stamp where the user only achieved 290 steps;

- Fenix 5 .FIT file – time stamp where the user only achieved 687 steps; and

- Vivosport .FIT file – time stamp where the user only achieved 704 steps.

*Id*. In each test, the user-defined step goal was 750 steps. *Id*. And in each test, there was never a time stamp recorded when that goal was achieved. *Id*. Instead, these numbers indicate a time stamp

15

that was written *before* the user-defined step goal of 750 steps was achieved. SOF ¶ 9. Because the 750-step goal has not even been met, this purported evidence does not show "first *time stamp* information *reflecting a time at which* the movement data causing the *first user-defined event occurred*."

This is a significant problem for LoganTree because the precision of the time stamp was the basis upon which it convinced the United States Patent Office to grant its patent. During the Reexamination before the Patent Office, LoganTree argued that the '576 Patent records a time stamp precisely when the event has actually occurred. Specifically, LoganTree explained "[f]or instance, upon detection of the event, such as when a user's measured movement passes a given angle (or some other type of movement threshold), time stamp information is recorded. This recorded time stamp information reflects a time at which the user's movement (e.g. passing the given angle) caused the event to occur (patent specification, column 6, lines 15-40 also see col. 7, lines 32-43)." SOF ¶ 15. This is precisely why the Court's claim construction requires this level of precision. None of the time stamps identified by LoganTree in the Accused Products reflect when the user achieved the user's own step goal of 750 steps. SOF ¶¶ 8–9. As such, Garmin's Accused Products do not infringe claims 1 and 20 or any of the asserted dependent claims.

LoganTree provides no evidentiary support for its argument that the time stamps written *before* the 750-step goal was met were, instead, written when the goal was met. SOF ¶ 10. LoganTree provided no citation to the source code, no deposition testimony, and no technical documents to evidence that the Accused Products record a time stamp when the user-defined step goal occurred. *Id*. If the Accused Products actually recorded a time stamp at the user's 750-step goal, then that time stamp should be reflected in every .FIT file created during the test Myers performed, and the functionality should also be reflected in the source code for the Accused

Products. But there is neither a single instance in the .FIT files created by Myers of a time stamp recorded when the 750-step goal was met, nor any evidence in the source code that would suggest the Accused Products write to the .FIT file when the user's goal is met. SOF ¶¶ 8–10. Thus, LoganTree can only speculate that the Accused Products store a time stamp when the user hits their step goal.

When the above is viewed under the recent *CommScope Techs. LLC v. Dali Wireless Inc.* case, LoganTree's infringement theory plainly fails. 10 F.4th 1289 (Fed. Cir. 2021). In *CommScope*, the claims were directed to a method of operating a power amplifier which required, among other limitations, "switching a controller off to disconnect signal representative of the output of the power amplifier." *Id*. at 1293. The district court construed this to mean that the controller itself had to be turned to a nonoperating state, which the Federal Circuit adopted. *Id*. at 1296. As evidence, plaintiff Dali's expert never testified that the switch/controller itself was ever rendered "nonoperating," as such, there was no evidence of infringement. *Id*. The Federal Circuit held that "[n]ot only was there a lack of evidence to show that the accused product met the proper construction of the claims, there [was] unrebutted evidence showing the opposite." *Id*.

Here, the sole evidence LoganTree advanced to suggest that Garmin's Accused Products read on the "time stamp" limitation are the excel spreadsheets provided by LoganTree's expert reflecting the data stored in the Accused Products' .FIT files. SOF ¶¶ 8–10. By LoganTree's own admission, none of these spreadsheets show a time stamp reflecting the time at which the movement data (e.g., the user's step) causing the user-defined event (e.g., reaching the step goal) occurred. SOF ¶ 8. In every instance, the alleged time stamp identified by Mr. Myers corresponds to a step that occurred ***before*** the goal was reached. SOF ¶ 9. As such, the .FIT files created by Mr.

Myers do not provide evidence of direct infringement. *CommScope*, 10 F.4th at 1297; *see also Smith v. Garlock Equip. Co.*, 658 F. App'x 1017, 1024 (Fed. Cir. 2016).

And like *CommScope*, Garmin has "unrebutted evidence showing the opposite." First, the excel spreadsheets themselves are unrebutted evidence that the Accused Products do not record a time stamp reflecting the system time at which the movement data (e.g., step) causing the user-defined event (e.g., step goal) occurred. SOF ¶¶ 8–9. This was supported by the testimony of two Garmin engineers, including Garmin's corporate designee on the design and operation of the Accused Products, who confirmed in their depositions that the Accused Products do not record any data when a user hits his or her step goal. SOF ¶ 11. LoganTree cannot ignore this evidence and hope to impanel a jury.

### 2. The Accused Products Intentionally Delay Writing Time Stamps and Do Not Record "The Time" the Goal is Met from the System Clock

Under the Court's claim construction, the claimed time stamp "is a recording of the time obtained from the system's real time clock." SOF ¶ 2. The specificity of "the time stamp information is going to be measured based on the unit of measurement that the real-time clock is programmed to obtain, whether that be nanoseconds, seconds, minutes, or some other unit of measurement." *Id.* In the Accused Products, the unit of measurement utilized by the real-time clock for recording information is on a "per second" basis. SOF ¶ 5. Thus, under the Court's claim construction, any time stamps relating to the user-defined step goal must record the time, accurate to the second, at which the user-defined step goal was achieved. SOF ¶ 2; ECF 187, at 8–9. In Garmin's Accused Products, time stamps for step count information are recorded either every 15 minutes or on the minute boundary when the device detects a change in activity. SOF ¶ 6. In other words, Garmin's Accused Products are intentionally designed to wait (anywhere from 1 minute to 15 minutes) to write a time stamp associated with step data in the .FIT file. SOF ¶¶ 6–7. In no

situation do the Accused Products write time stamps for step count information within a minute boundary. *Id.* Even if the Accused Products did store a time stamp when the user hit their user-defined goal—which they absolutely do not—the Accused Products do not infringe the Asserted Claims because the time stamps do not match the "time" of the system. Summary judgement is proper.

LoganTree agrees the Accused Products do not store a time stamp reflecting the time the user meets their user-defined step goal, let alone the time down to the second. In the Pretrial Order, LoganTree admits the time stamp LoganTree speculates is stored when a user hits their step goal does not reflect the time at which the user hit their step goal. SOF ¶¶ 7–8. Instead, LoganTree claims this supposed time stamp stores the nearest minute boundary to when the user hit their step goal. SOF ¶¶ 7, 9. And LoganTree admits that Garmin made a different "design choice of precision" for saving step information to the .FIT file. SOF ¶ 7. By LoganTree's own admission, Garmin designed its products to ***not*** practice the claimed invention. And LoganTree's own evidence belies the minute boundary argument, which relies on 208, 238, and 290 steps for three of the five representative products. SOF ¶ 9. Obviously, the step goal was not achieved during that minute because the user had approximately 500 more steps before the goal and there is no suggestion that LoganTree's expert was covering 500 steps per minute (a pace faster than nearly any Olympic athlete could maintain).

*CommScope* is again instructive. LoganTree appears to be suggesting that Garmin is "hair-splitting" by applying the Court's claim construction as written. ECF 187, at 9 (arguing the parties' dispute over the storing of the step goal is just a disagreement over the scope of the claim construction). Like the Federal Circuit in *CommScope*, this Court should reject LoganTree's argument. This Court's construction plainly requires that the stored time stamp be "measured

based on the unit of measurement that the real-time clock is programed to obtain, whether that be nanoseconds, seconds, minutes, or some other unit of measurement." SOF ¶ 2; ECF 106, at 8–9. It is not in dispute that the Accused Products' real-time clock measures time on a "second" basis and likewise stores time stamps in seconds. SOF ¶ 5. Applying the Court's claim construction as written, the Accused Products must store a time stamp reflecting when the user took the step that caused the user-defined step goal to occur down to the second. Thus, Garmin is not arguing an overly narrow the Court's construction, it is simply applying the Court's construction as written. In other words, "[Garmin's] reliance on the claim terms as construed by [this Court] is not 'hair-splitting,' as [LoganTree] contends, but instead properly shows that [LoganTree] failed to meet its burden[.]" *CommScope*, 10 F.4th at 1298.

### 3. The Accused Products do not Store "First Event Information Related to the Detected First User-Defined Event Along with First Time Stamp Information"

LoganTree's time stamp theory of infringement also must fail as a matter of law because it is not stored along with "first event information related to the detected first user-defined event," as the claims require. ECF 187, at 3–4. LoganTree speculates that the Accused Products store a time stamp when the user meets their daily step goal at the nearest minute boundary to when that goal was met. *See supra* Section IV.A.1; SOF ¶¶ 8–9. And LoganTree admits the Accused Products do not store the fact that the user has met their step goal with that time stamp. *Id.* LoganTree asserts that "[a]fter moving the time stamp to the minute boundary, the Accused Products record the number of steps that correspond with that minute boundary[.]" SOF ¶¶ 7–9; ECF 187, at 8. Even if the Accused Products did store a time stamp when the user met their daily step goal, which they do not, the Accused Products still would not infringe because LoganTree admits the Accused Products do not store the step information corresponding to the user-defined step goal (e.g., does

not store that the user took their 750th step). SOF ¶¶ 8–9. The time stamp is not stored "along with" the required "first event information," as such, the claim limitation is not satisfied.

### 4.    *Garmin does not perform the method of Claim 20*

It is black letter law that "[t]o establish liability for direct infringement of a claimed method or process . . . a patentee must prove that each and every step of the method or process was performed." *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013); *Sprint Commc'ns Co. L.P. v. Cable One, Inc.*, 2014 WL 3661081, at *2 (D. Kan. July 23, 2014) (same). Thus, "[m]ethod claims are 'not directly infringed by the mere sale of an apparatus [allegedly] capable of performing the claimed process.'" *Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1314 (Fed. Cir. 2020).

Here, claim 20 is a method claim and can therefore only be ***directly*** infringed by Garmin itself performing every step of the claimed method by its testing. But LoganTree has no evidence that Garmin has ever performed every limitation of method claim 20. SOF ¶ 12. LoganTree's entire theory of infringement, as a matter of law, must rest on Garmin's use and testing of the Accused Products. The general uses of the products by others, which is what is included in the Myers' report and infringement contentions, would only be relevant to a claim of ***indirect*** infringement,[5] which LoganTree does not allege. Thus, LoganTree must show evidence of actual instances of infringement ***by Garmin***. And even Myers admitted in his deposition that he has no evidence of anyone at Garmin actually performing the claimed steps of method claim 20. *Id*. On this basis alone, summary judgment of no infringement is proper.

In the Pretrial Order, LoganTree contended that Mr. Krull testified that Garmin generally tested its products and argued that Myers' speculation that Garmin likely would have tested the

---

[5] LoganTree stipulated that it is not raising any theory of indirect infringement. ECF 187, at 5.

Accused Products in the normal course of designing, testing, and validating them, was sufficient evidence of infringement of claim 20. ECF 187, at 14. But LoganTree's argument is both factually and legally wrong. Factually, Mr. Krull did not testify that Garmin generally tests its products. Instead, Mr. Krull provided testimony specifically regarding Garmin's GPS II/II Plus prior art products. SOF ¶ 13. He never testified that Garmin tests its products generally, let alone that Garmin ever tested the Accused Products. *Id*. This testimony is not evidence LoganTree can rely on to survive summary judgment. *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1187 (Fed. Cir. 2014) (affirming district court's refusal to consider testing data as evidence of infringement where that data was derived from "meaningfully different" products and affirming district court's finding of no infringement). Furthermore, because Mr. Krull was testifying about the GPS II/II Plus prior art sold some 20 years before the Accused Products, the conclusion of LoganTree's argument would be that Mr. Krull's testimony would establish that the prior art performs every element of the claim, and thus would invalidate Claim 20. SOF ¶ 13.

Legally, LoganTree's speculation that Garmin would have tested the Accused Products is insufficient to survive summary judgment. *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335–36 (Fed. Cir. 2008) (affirming summary judgment of no direct infringement of a method claim based on a testing theory where plaintiff "failed to put forth evidence sufficient to create a material issue of fact as to direct infringement"). Instead, to survive summary judgment, LoganTree must provide evidence that Garmin (1) tested the Accused Products; (2) that Garmin's testing performed every step of method claim 20; (3) that any such testing would have occurred in the United States; and (4) that any such testing would have been performed during the damages period between March 17, 2015, and November 21, 2017, and "that these conditions were all met simultaneously." *Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, 2020 WL

22

1333131, *5–*6 (D. Del. Mar. 23, 2020) (granting summary judgment of no direct infringement of method claim where plaintiff argued that "Defendants' employees probably played the [accused products] at some point," but failed to "produce evidence that Defendants tested the accused products: 1) in the accused online game modes; 2) on an accused platform; 3) in the United States; and 4) during the damages time period."). And LoganTree has no evidence to support any of these conditions, let alone that all four were met simultaneously. SOF ¶ 12.

Because LoganTree failed to come forward with any evidence of Garmin performing the steps of method claim 20, summary judgement should be granted. *TNS Media Research, LLC v. Tivo Research & Analytics, Inc.*, 629 F. App'x 916, 940–41 (Fed. Cir. 2015) ("'Summary judgment of non-infringement … is appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard of infringement, because such failure will render all other facts immaterial.' . . . There is simply no evidence that Experian utilizes [the claimed] double blind matching [step] for Kantar's Auto Products. Accordingly, the district court did not err in granting summary judgment of non-infringement with respect to Kantar's Auto Products." (internal citations omitted)).

### B.     The asserted claims are indefinite where LoganTree has made conflicting statements as to the scope of "unrestrained movement in any direction."

At claim construction Garmin contended that the asserted claim limitations "measuring unrestrained movement in any direction" (claim 20) or "measuring data associated with unrestrained movement in any direction" (claim 1) are indefinite. ECF 85, at 14–17. And the Court even asked LoganTree to explain how these claim terms were definite. Ultimately, as the Court noted, LoganTree was unable to do so, and the Court stated its was confused by LoganTree's explanation, which appeared directed to "jet fighter pilots" and not the products at issue in this case. **Ex. L**, *12-18-20 Hrg. Trans.,* at 39:6–9*.* LoganTree's ever-shifting definition of the term

23

"unrestrained" and "movement in any direction" have rendered them without any identifiable meaning. And this is important because any ambiguity with the meaning of "unrestrained" impacts the jury's ability to determine infringement.[6] Because it applied different constructions before the Patent Office and this Court, LoganTree made the task of understanding these terms impossible, rendering these terms indefinite.

The Patent Act requires that a patent's claims "particularly point[] out and distinctly claim[] the subject matter which the applications regards as [the] invention." 35 U.S.C. § 112, ¶ 2. Specifically, "a patent [will be] invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.,* 134 S. Ct. 2120, 2124 (2014). The claims of a patent must be read consistently for both validity and infringement. "A patent may not, like a nose of wax, be twisted one way to avoid anticipation and another to find infringement." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001). And the "public-notice function of a patent and its prosecution history requires [courts] to hold patentees to what they declare during prosecution." *Infinity Computer Prods., Inc. v. Oki Data Americas, Inc.*, 987 F.3d 1053, 1060 (Fed. Cir. 2021). A patentee's inconsistent statements about the meaning of a term may evidence and contribute to a "zone of uncertainty," rendering the claims indefinite. *Id.*

To obtain its patent, LoganTree amended the claims by adding the portions underlined: "a movement sensor capable of measuring data associated with <u>unrestrained</u> movement <u>in any</u>

---

[6] Although the questions of infringement and invalidity are separate inquiries, the two are related. As the Supreme Court has stated, "'[t]hat which infringes, if later, would anticipate, if earlier.'" *CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1294–95 (Fed. Cir. 2021) (quoting *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537, 9 S.Ct. 389, 32 L.Ed. 738 (1889)).

direction and generating signals indicative of said movement." SOF ¶ 14. To keep its patent, LoganTree stated the Vock/Flentov patents,[7] which teach measuring movement in six directions, did not teach unrestrained movement in any direction. SOF ¶ 16. Adding to the confusion, Ferrese contended that, to measure unrestrained movement in any direction, Vock/Flentov would need to measure movement in nine directions. SOF ¶ 18. But during the IPR, LoganTree said Stewart, which did measure movement in nine directions, still did not measure unrestrained movement in any direction. SOF ¶ 17. But then in this litigation, LoganTree contends that Garmin's Accused Products (that only measure movement in three directions) infringe. SOF ¶ 19. In summary, the below cannot all be true regarding "measuring unrestrained movement *in any direction*":

- Vock/Flentov - measuring movement in 6 directions = NO INFRINGEMENT

- Stewart - measuring movement in 9 directions = NO INFRINGEMENT

- Accused Products - measuring movement in 3 directions = INFRINGEMENT

Plainly, where the claims require measuring "unrestrained movement in any direction," it makes no sense that a device measuring movement in less directions infringes while devices that measure movement in more directions do not. Based on Logan Tree's shifting positions on what constitutes "unrestrained movement in any direction," it is impossible for the Court, the parties, the public, one of ordinary skill in the art, and, most importantly, the jury, to determine the meaning of these terms, let alone whether they are infringed. And, as in *CommScope*, LoganTree's infringement "argument cannot stand in light of [LoganTree's] arguments" of no indefiniteness. *CommScope*, 10 F.4th at 1298.

---

[7] The Vock and Flentov prior art references are related and share a specification.

Additionally, LoganTree made contrary arguments on the "unrestrained" versus "restrained" claim term before the Patent Office (for validity) and in this Court (for infringement). This is further illustrated below:

| '576 Patent;<br>Movement sensor connected to hip or upper torso –<br>Measures unrestrained movement in any direction | | |
|---|---|---|
| FIG. 2A | FIG. 2B | FIG. 2C |

| Vock/Flentov:<br>Movement sensor connected to user's ski/snowboard –<br>***Does not measure unrestrained movement in any direction*** | Stewart:<br>Movement sensor connected to user's head –<br>***Does not measure unrestrained movement in any direction*** | Accused Products:<br>Movement sensor connected to user's wrist –<br>Measures unrestrained movement in any direction |
|---|---|---|
| *FIG. 2* | (Profile View – FIG. 2A)<br> |  |





ECF 187, at 26–28. LoganTree has been unable to provide any reasoning for its position, either during expert discovery or even in its positions detailed in the Pretrial Order. As the Court contemplated during the *Markman* hearing, LoganTree's inconsistency of arguments and positions renders "unrestrained" indefinite. **Ex. L**, *12-18-20 Hrg. Trans.*, at 29:4–16.

This case is like *Infinity Computer*. There, the patent owner's conflicting statements during prosecution and during reexamination rendered the claims indefinite. *Infinity Computer Prods., Inc. v. Oki Data Americas, Inc.*, 2019 WL 2422597, at *4–5 (D. Del. Jun. 10, 2019). Specifically, during original prosecution, the patentee argued that the disputed "passive link" must extend all the way to a computer's I/O bus without any intervening devices. *Id.*, at *4. During reexamination, however, the patentee argued that a passive link need only extend to a computer port without any intervening device. *Id.*, at *5. The defendant illustrated this contradiction:



Location of the passive link to the
"computer" in distinguishing *Perkins*

Location of the passive link to the
"computer" during re-examination

*Id.* The district court found that the term "passive link" was indefinite based on the clear and convincing evidence presented by the defendant. *Id.* And the Federal Circuit affirmed, finding the patentee's conflicting statements rendered the claims indefinite. *Infinity Computer*, 987 F.3d at 1060. In particular, the Federal Circuit noted that the patentee's reliance during litigation on the same interpretation it used during reexamination was contrary to its statements during initial prosecution, rendering the term indefinite. *Id.*, at 1060–61.

Here, LoganTree's conflicting statements fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc.,* 134 S. Ct. at 2124. A person of ordinary skill in the art cannot discern the meaning of "movement in any direction" or "unrestrained" in light of LoganTree's conflicting statements regarding Stewart, Flentov/Vock, and the Accused Products. SOF ¶¶ 15–20. Thus, LoganTree's inconsistent positions have made the required clarity impossible and, as such, claims 1, 20, and their dependents are indefinite.

Lastly, LoganTree has no expert testimony on which to rely to establish the claims are definite. LoganTree's validity expert, Ferrese, initially opined that a person of ordinary skill would be able to determine the scope of the claims because the disclosure of the Vock and Flentov references did not contradict LoganTree's application of this claim language in litigation. Specifically, Ferrese opined that it was a "reasonable position" to contend that Flentov/Vock ¨does not teach the measurement of unrestrained movement in any direction because [Flentov/Vock] only teaches the measurement of loft (time) and speed.". SOF ¶ 20. But when confronted with Vock/Flentov's express disclosure (description of Figure 14a) teaching the using accelerometers to measure "speed, ***direction***, and vehicle height," and notably measuring in six directions (e.g. yaw, pitch, roll, heave, sway, surge disclosed in Figure 14a), Ferrese withdrew his opinions that "Vock/Flentov only teaches the measurement of loft (time) and speed." *Id*. Ferrese admitted that his only basis for arguing definiteness in light of Vock/Flentov—Vock/Flentov do not teach measuring movement but only teach measuring loft time and speed—was wrong. *Id*. And Ferrese admitted he did not identify any support in the '576 Patent for his opinions on indefiniteness and, further, did not discuss or provide any opinion relating to impact forces and the '576 Patent. SOF ¶ 18. Therefore, LoganTree has no expert testimony to rely on for the issue of indefiniteness.

And because the question of indefiniteness is determined from one of ordinary skill in the art, its determination in this case necessitates expert testimony. *Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1364 (Fed. Cir. 2018) (proper to rely on expert testimony to determine whether patent informs a skilled artisan of the meaning of a claim term with reasonable certainty when determining whether the claim is indefinite). LoganTree no longer has one of ordinary skill in the art to support its contention that "unrestrained movement" is definite and, as such, Garmin's expert testimony is unrebutted. Therefore, there is no genuine issue of material fact in dispute on the issue of indefiniteness and summary judgment is warranted.

## V.      Conclusion

This Court should not permit LoganTree to continue its meritless infringement claims against Garmin, particularly where the Court has already concluded that the '576 Patent requires a time stamp to reflect the time at which the user reached their defined step goal. It is undisputed that Garmin's Accused Products do not meet this limitation and there is no genuine dispute of material fact that LoganTree can point to persist in maintaining its claims against Garmin. Further, LoganTree's continued attempts to keep its patent alive results in its own demise, as LoganTree has twisted the scope of "unrestrained movement" such that the term is now indefinite. For these reasons, the Court should grant Garmin's motion for summary judgment of noninfringement and invalidity.

Dated: December 23, 2021

                              Respectfully submitted,

                              ERISE IP, P.A.
                              */s/ Adam P. Seitz*
                              Adam P. Seitz, KS Bar #21059
                              Megan J. Redmond, KS Bar #21999
                              Carrie A. Bader, KS Bar #24436
                              Clifford T. Brazen, KS Bar #27408

ERISE IP, P.A.
7015 College Blvd., Suite 700
Overland Park, Kansas 66211
Telephone: (913) 777-5600
Facsimile: (913) 777-5601
adam.seitz@eriseip.com
megan.redmond@eriseip.com
carrie.bader@eriseip.com
cliff.brazen@eriseip.com

*Attorneys for Defendant Garmin International, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that, on December 23, 2021, the foregoing document filed with the Clerk of the Court using CM/ECF and that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system accordingly.

<div align="center">

By: <u>*/s/ Adam P. Seitz*</u>
Adam P. Seitz

</div>