**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| LOGANTREE LP | |
| *Plaintiff*, | |
| v. | CIVIL ACTION NO. 6:17-CV-01217 |
| GARMIN INTERNATIONAL, INC. | |
| *Defendants*. | |

---

**PLAINTIFF LOGANTREE'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

---

LoganTree, LP ("Plaintiff" or "LoganTree") submits this response in opposition to Garmin International, Inc. (the "Defendant" or "Garmin") Motion for Summary Judgment. For the reasons stated below, Garmin's motion should be denied in its entirety.

## Table of Contents

I.     Introduction ........................................................................................................ 4

II.    Statement of Facts ............................................................................................. 4

    A.     Response to Garmin's Statement of Facts ............................................... 4

    B.     Plaintiff's Statement of Additional Material Facts .................................. 8

III.   Legal Standard for Summary Judgment ........................................................... 9

IV.   Argument ........................................................................................................... 9

    A.     Genuine Issues of Material Fact Exist for LoganTree's Infringement Claim .......... 9

        1.     Garmin Misconstrues the Claim Language and Applies an Unreasonable Interpretation Based on the Plain Meaning and the Court's Construction. ................. 11

        2.     LoganTree Provides Evidence of the Recorded Time Stamps and the First Event Information related to when the User Defined Step Goal is Achieved. ......................... 13

        3.     Garmin's Minute Boundary Obfuscates the Recorded Time Stamp. ................... 16

        4.     LoganTree Has Provided Sufficient Evidence of Infringement of Claim 20. ..... 18

    B.     Garmin Fails to Meet Its Burden of Establishing the '576 Patent is Invalid by Clear and Convincing Evidence and Genuine Issues of Material Fact Exist for Garmin's Invalidity Claim. ...................................................................................... 20

        1.     Garmin Fails to Show LoganTree Made Inconsistent Positions Regarding the Definition of Claim Terms "Unrestrained Movement" and "In Any Direction" ......... 21

        2.     LoganTree Provides Expert Opinion Which Creates A Factual Issue Precluding Summary Judgment of Invalidity for Indefiniteness ........................................ 23

V.     Conclusion and Prayer .................................................................................... 25

# Table of Authorities

**Cases**

*Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, 2020 WL 1333131 (D. Del. Mar. 23, 2020). ............................................................................................................................. 19

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998). .............................................. 10, 16

*Bausch & Lomb v. Alcon Laboratories, Inc.,* 64 F. Supp. 2d 233 (W.D.N.Y. 1999) .................. 24

*Cardinal Chem. Co. v. Morton Intern., Inc.*, 508 U.S. 83 (1993) ................................................ 24

*Colorado v. New Mexico*, 467 U.S. 310 (1984). ......................................................................... 21

*CommScope Techs. LLC v. Dali Wireless, Inc.*, 10 F.4th 1289 (Fed. Cir. 2021). ................. 16, 24

*Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224 (Fed. Cir. 2016) ..................... 21

*Delsa Brooke Sanderson v. Wyoming Highway Patrol*, 976 F.3d 1164 (10th Cir. 2020). ........... 10

*Duckett v. City of Cedar Park*, 950 F.2d 272 (5th Cir. 1992)........................................................ 9

*Freeman v. Gerber Products Co.*, 388 F.Supp.2d 1238 (D. Kan. 2005). .................................... 10

*Hay & Forage Indus. v. New Holland N. Am., Inc.*, 25 F.Supp.2d 1180 (D. Kan. 1998). ....... 9, 10

*In re Independent Svc. Orgs. Antitrust Litigation*, 85 F.Supp.2d 1130 (D. Kan. 2000). .............. 10

*Infinity Comp. Prods., Inc. v. Oki Data Americas, Inc.*, 987 F.3d 1053 (Fed. Cir. 2021) ...... 22, 23

*Interval Licensing, LLC v. AOL, Inc.*, 766 F.3d 1364 (Fed. Cir. 2014)........................................ 22

*LNP Eng'g*, 77 F. Supp. 2d .......................................................................................................... 24

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009); ................................. 19, 20

*McGinley v. Franklin Sports, Inc.*, 75 F.Supp.2d 1218 (D. Kan. 1999) ..................................... 10

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011). ............................................................. 21

*Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986). ................................. 19

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014). ............................................... 21

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ........................................................ 12, 13

*Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989 (Fed. Cir. 2009) ................... 21

*Snyder v. American Kennel Club* ................................................................................................. 26

*Snyder v. American Kennel Club*, 661 F.Supp.1219 (D. Kan. 2009). ......................................... 16

*TC Mfg. Co. v. Polyguard Prods., Inc.,* No. 96 C 8392, 1999 WL 753932 (N.D.Ill. Sept. 15, 1999) .................................................................................................................................. 24

*Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376 (Fed. Cir. 2018).............. 24

**Statutes**

35 U.S.C. § 282(a) ....................................................................................................................... 20

35 U.S.C. 112(b) .......................................................................................................................... 23

## I.     Introduction

Garmin has asserted that it should be granted summary judgment on LoganTree's infringement claim and claims invalidity due to indefiniteness. However, when the evidence is viewed in the light most favorable to LoganTree, as it must be for summary judgment, and when the proper case law is applied, it is clear that Garmin's motion for summary judgement should be wholly denied.

## II.     Statement of Facts

### A.  Response to Garmin's Statement of Facts

Pursuant to Local Rule of Civil Procedure 56.1, Garmin was to submit a statement of undisputed material facts in support of it motion for summary judgment. LoganTree responds to Garmin's statement of facts as follows:

1-2.     LoganTree does not dispute ¶¶ 1-2 of Garmin's Statement of Facts.

3.     LoganTree does not dispute ¶ 3 of Garmin's Statement of Facts, subject to clarification. LoganTree contends that the Accused Products record a timestamp for a step count at a second interval when activity occurs, but the recorded timestamp is tied to a "minute boundary". ECF 187, at 8; **Ex. A**, *Myers Report*, at 72-75 and 120; **Ex. B**, *Myers' Depo. Trans.*, at 38:6 – 44:19; **Ex. C**, *Blair Depo. Trans.*, at 24:16 – 25:2 and 33:7-17; **Ex. D**, *Michalson Report*, at 104-15.

4.     LoganTree does not dispute ¶ 4 of Garmin's Statement of Facts.

5.     LoganTree does not dispute ¶ 5 of Garmin's Statement of Facts, subject to clarification. LoganTree contends that Garmin's Accused Products measure and record information on a "per second basis", but further contends that that recorded timestamp is then tied to what is called a "minute boundary." ECF 187, at 8; **Ex. A**, *Myers Report*, at 72-75 and 120; **Ex.**

**B**, *Myers' Depo. Trans.*, at 38:6 – 44:19; **Ex. C**, *Blair Depo. Trans.*, at 24:16 – 25:2 and 33:7-17; **Ex. D**, *Michalson Report*, at 104-15.

6.     LoganTree does not dispute ¶ 6 of Garmin's Statement of Facts, subject to clarification. LoganTree does not dispute that Garmin's Accused Products store time stamps at certain time intervals or at the nearest minute boundary after the device detects a change in activity. However, LoganTree disputes any suggestion that Garmin's Accused Products store time stamps in **only** these instances. LoganTree contends that Garmin's Accused Products also store timestamps reflecting the time recorded or noted by the system at which the movement data causing the first user-defined event occurred. ECF 187, at 8; **Ex. A**, *Myers Report*, at 72-75 and 120; **Ex. B**, *Myers' Depo. Trans.*, at 38:6 – 44:19; **Ex. C**, *Blair Depo. Trans.*, at 24:16 – 25:2 and 33:7-17; **Ex. D**, *Michalson Report*, at 104-15.

7.     Denied. LoganTree observed that Garmin's Accused products' use of the minute boundary is a design choice of precision of the system, presumably because the user does not need to know the exact second of the day the user met their daily step goal. ECF 187, at 8.

8.     Denied. LoganTree does not dispute that its expert, Myers, performed extensive testing on the Accused Products, however, these tests consistently showed timestamps corresponding with the noted time of the step goal being met. ECF 187, at 7; **Ex. A**, *Myers Report*, at 72-75 and 120; **Ex. B**, *Myers' Depo. Trans.*, at 38:6 – 44:19; **Ex. D**, *Michalson Report*, at 104-15. LoganTree agrees that "750 is never recorded with a timestamp" because the Accused Products record all timestamps tied to a minute boundary. **Ex. A**, *Myers Report*, at 72-75 and 120; **Ex. B**, *Myers' Depo. Trans.*, at 38:6 – 44:19; **Ex. D**, *Michalson Report*, at 104-15. After moving the timestamp to the minute boundary, the Accused Products record the number of steps that correspond with that minute boundary, which is why the recorded step counts are near, but never

exactly, multiples of 750. ECF 187, at 8; **Ex. A**, *Myers Report*, at 72-75 and 120; **Ex. B**, *Myers' Depo. Trans.*, at 38:6 – 44:19.

9.      Denied. LoganTree does not rely on and allege that the listed information reflects the "time at which the user has achieved the user defined step goal of 750 steps and saved the time stamp and user defined goal to the .FIT file." ECF 191, at 7, ¶ 9. LoganTree contends that the Accused products record timestamps at a minute boundary, and store these timestamp entries in the .FIT files associated with step data.  ECF 187, at 8; **Ex. A**, *Myers Report*, at 72-75 and 120; **Ex. B**, *Myers' Depo. Trans.*, at 38:6 – 44:19; **Ex. D**, *Michalson Report*, at 104-15.

10.      Denied. LoganTree provided deposition testimony to show the Accused Products record a time stamp when the user-defined step goal is achieved. **Ex. B**, *Myers' Depo. Trans.*, at 38:6 – 44:19.

11.      Denied. LoganTree contends that Garmin's Accused Products do save a timestamp and step data causing a user step goal to be met to the .FIT file when a user achieves a manual step goal. ECF 187, at 8; **Ex. A**, *Myers Report*, at 72-75 and 120; **Ex. B**, *Myers' Depo. Trans.*, at 38:6 – 44:19; **Ex. C**, *Blair Depo. Trans.*, at 24:16 – 25:2 and 33:7-17; **Ex. D**, *Michalson Report*, at 104-15.

12.      Denied. LoganTree has expert testimony, supplemented by circumstantial documentary evidence, that Garmin practiced Method Claim 20. ECF 187, at 13-14; **Ex. A**, *Myers Report*, at 544. Myers testified that, based on his experience, people at Garmin would have performed tasks in the normal course of designing, testing, and validating the Accused Products such as setting the user-defined step goal, confirming that the goals were met and being displayed on the watch, and confirming that the material written to the .FIT file is correct. ECF 187, at 13; **Ex. B**, *Myers' Depo Trans.*, at 109:8– 111-14. Moreover, Jay Dee Krull of Garmin testified that

Garmin generally tests its products. **Ex. F**, *Krull Depo Trans.*, at 64:24–66:2. The Accused Products' manuals further support that Garmin tests its products, and in doing so, directly infringes on Method Claim 20. **Ex. G**, *Fenix 5 Manual* (Garmin 0001474 – 0001513). To create the product manuals, which instruct the user to use the Accused Products in infringing ways, people at Garmin had to carry out the very tasks they instruct the user to perform. ECF 187, at 14.

13.     LoganTree does not dispute ¶ 13 of Garmin's Statement of Facts.

14.     LoganTree does not dispute ¶ 14 of Garmin's Statement of Facts.

15.     LoganTree does not dispute ¶ 15 of Garmin's Statement of Facts.

16.     LoganTree does not dispute ¶ 16 of Garmin's Statement of Facts, subject to clarification. Garmin provides a confusing recitation the '576 Patent's prosecution history to suggest that LoganTree provided two opposing definitions of the claimed limitation to overcome prior art, which it did not. During Reexamination, LoganTree argued that neither Flentov nor Vock taught measuring movement "in any direction". **Ex. H**, *Request for Ex Parte Reexamination by Patent Owner*, at 55 and 85. LoganTree argued "the 'unrestrained movement' being measured in Flentov is restricted to the 'forward axis' (parallel to vehicle movement along surface) and the 'height axis' (perpendicular to vehicle movement along surface)" and that "the 'unrestrained movement' being measured in Vock is restricted to 'upwards' or 'downwards.'" *Id.* In making these arguments, LoganTree took into consideration the teachings of Vock and Flentov as a whole and took the position that the devices taught in Vock/Flentov were specifically structured so that they were not measuring movement "in any direction." *Id.*; ECF 187, at 29.

17.     LoganTree does not dispute ¶ 17 of Garmin's Statement of Facts.

18.     Denied. Garmin mischaracterizes Ferrese's deposition testimony. In his deposition, Garmin's attorneys suggested that Ferrese's indefiniteness section never refers to any disclosures of the '576 patent. Ferrese does not explicitly agree with this statement as Garmin suggests but merely "take[s] [Garmin] at [its] word." **Ex. I**, *Ferrese Depo. Trans.*, at 126:25–127:11.

19.     Denied. LoganTree contends Garmin's Accused Products measure unrestrained movement in any direction via accelerometers that measure 3-dimensional movement in terms of acceleration/velocity and related source code. ECF 187, at 12. Myer's testing of the Accused Products confirmed his observations in the source code in that he was able to move his body and arm in an unrestrained fashion and his steps were reasonably counted utilizing the accelerometers data. *Id.*; **Ex. A**, *Myers Report* at 63–64, 88–89, 176-77, 201-03, 285-86, 311-12, 399–400.

20.     Denied. Garmin mischaracterizes Ferrese's testimony. Further, Ferrese testified that nine accelerometers would be required for complete resolution of motion in all directions. **Ex. I**, *Ferrese Depo. Trans.*, at 22:21–23:05. Ferrese testified that a three-axis accelerometer, as in the Accused Products, is capable of measuring movement in any direction. **Ex. I**, *Ferrese Depo. Trans.*, at 130:08–130:15. Thus, Ferrese's opinions regarding the Vock/Flentov references are consistent with LoganTree's infringement contentions regarding unrestrained movement in any direction. ECF 187, at 12-13.

**B. Plaintiff's Statement of Additional Material Facts**

1.     Garmin admits that any ambiguity between restrained and unrestrained exists both on LoganTree's products as well as Garmin's Accused Products. ECF 108, at 65:25-66:8.[1]

---

[1] THE COURT: Mr. Seitz, my question is that ambiguity different between your device and LoganTree's? I realize it goes to invalidity, but with respect to infringement issues, whatever ambiguity exists as to whether the device is restrained or unrestrained, is that ambiguity materially the same with respect to both devices?
MR. SEITZ: That is correct. I'm sorry, I misunderstood. That is correct."

### III.     Legal Standard for Summary Judgment

Summary judgment is appropriate only if Garmin "demonstrates that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law." *Hay & Forage Indus. v. New Holland N. Am., Inc.*, 25 F.Supp.2d 1180, 1185 (D. Kan. 1998). The movant must make a prima facie case showing that they are entitled to the relief sought. *Celotex Corp.*, 477 U.S. at 323-24. Once a prima facie case is shown, the burden shifts to the non-movant to show that there is a genuine factual dispute requiring a trial. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). An issue is genuine when sufficient evidence exists that allows "a rational trier of fact" to resolve the issue either way. *Delsa Brooke Sanderson v. Wyoming Highway Patrol*, 976 F.3d 1164, 1173 (10th Cir. 2020). A material fact exists when based on the "substantive law it is essential to the proper disposition of the claim." *Id.* For purposes of Garmin's motion, the Court must view the evidence and make all reasonable inferences in the light most favorable to LoganTree. *McGinley v. Franklin Sports, Inc.*, 75 F.Supp.2d 1218, 1221 (D. Kan. 1999), *aff'd in relevant part,* 262 F.3d 1339 (Fed. Cir. 2001).

As the movant, Garmin must first meet its burden of "demonstrating an absence of a genuine issue of material fact." *Hay & Forage Indus.*, 25 F.Supp.2d at 1185. To meet its burden, Garmin must "point out to the court a lack of evidence for the other party on an essential element of that party's claim." *Id*. If Garmin meets its burden, then LoganTree must "set forth specific facts showing that there is a genuine issue for trial." *Id*. Specifically, "to accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

### IV.     Argument

**A.  Genuine Issues of Material Fact Exist for LoganTree's Infringement Claim.**

Literal infringement of a patent claim exists when "every limitation recited in the claim is found in the accused device." *In re Independent Svc. Orgs. Antitrust Litigation*, 85 F.Supp.2d 1130, 1165 (D. Kan. 2000). Literal infringement is a question of fact. *Freeman v. Gerber Products Co.*, 388 F.Supp.2d 1238, 1243-44 (D. Kan. 2005). Garmin's motion for summary judgment addresses only select portions of claims from LoganTree's patent.

First, Garmin misconstrues the claim language throughout its motion for summary judgment in an effort to support its position. Specifically, Garmin interprets "first event information related to the detected first user-defined event" narrowly without any basis from the Court or any evidence that Garmin's interpretation is within the "ordinary and customary meaning." Garmin also interprets "first time stamp information reflecting the time recorded or noted by the system at which the movement data causing the first user-defined event occurred" narrowly and without giving merit to the prosecution history, the scope of the claims, or the Court's Construction.

Despite Garmin's extensive restatements of the same argument, LoganTree has provided significant evidence of its infringement claim. In its motion for summary judgment, Garmin misapplies the evidence and argues that LoganTree's expert's report and testimony were speculative, despite testing, analysis, and evidence to the contrary. LoganTree's expert, Myers, conducted extensive research prior to providing his opinion and did not merely speculate on the Accused Products' infringement. *See* **Ex.** A, Myers Report, at ¶¶ 79-90. Garmin provided no evidence for how Myers' testimony was speculative, but instead solely made allegations that only suggest Garmin does not agree with the expert's opinion. Unfortunately for Garmin, it did not meet its burden or provide the Court with any evidence for why summary judgment should be granted on LoganTree's infringement claim.

Additionally, Garmin's motion for summary judgment referenced and applied inconsistent standards when discussing its unit of measurement for its time stamps. Garmin's expert made similar inconsistent statements in his deposition. Garmin did not meet its burden in its motion for summary judgment, and as exemplified below, LoganTree's evidence provides a genuine issue of material fact regarding its infringement claim, which precludes summary judgment.

Finally, Garmin contends that it does not perform Method Claim 20. In doing so, it ignores the expert and documentary evidence on the record which demonstrates Garmin practiced every limitation of the claim, in the United States, during the relevant damages period. LoganTree's evidence creates a genuine issue of material fact and summary judgment on this issue is thus precluded also.

### 1. Garmin Misconstrues the Claim Language and Applies an Unreasonable Interpretation Based on the Plain Meaning and the Court's Construction.

Garmin's interpretation of the claim language is inaccurate. Garmin argues that "first event information related to the detected first user-defined event" means the device must store the exact step count of when the user reaches its goal (e.g., a data point for the 5,000[th] step) when it records the time stamp for the user-defined event. Garmin did not dispute the interpretation of these terms at the *Markman* hearing. Therefore, the Court did not construe the term, and the words are "given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*), *as stated by the Court in* ECF 106, at p. 2. When determining the "ordinary and customary meaning," each claim does not stand alone, but rather the claims "are part of 'a fully integrated written instrument.'" *Id*. at 1315. Garmin's interpretation narrowly construes the claim, which is not supported by the Court's interpretation of the claim language as a whole or the related language in the claim which discusses the "first time stamp information." *See infra* at p. 9-10.

11

Garmin asserts that "first time stamp information" means the exact second the user meets the user-defined event. ECF 106, at p. 9. However, the Court never states that it is the exact second or that the time stamp information only reflects one moment in time. The claim language states "first time stamp information," not only a single time stamp, which Garmin assumes throughout its motion for summary judgment.

In fact, the Court's inclusion of "the movement data ***causing*** the first user-defined event" exemplifies that multiple time stamps could exist. Rather, for the time stamp to include "the movement data," it would have to encompass the steps leading up to a step goal, which would ultimately trigger the user-defined event and not just the final step in the user's goal. At the *Markman* hearing, the Court specifically declined to use Garmin's interpretation which stated "movement data ***occurrence*** causing the first user-defined event." *Id*. at p. 8. The term "occurrence" supports a narrower construction, but the Court specifically removed this term from the claim language. The Court's construction allows for a broader interpretation, which supports LoganTree's patent and its technology. Further, Garmin's own argument for this claim language cuts against its argument in its motion for summary judgment. In support of the claim language in question, Garmin cited the reexamination history, which states "the microprocessor retrieves at least one time stamp for the real-time clock and associates the retrieved time stamp with the received movement data." ECF 82, Exhibit B, at p. 1. The reexamination history supports an interpretation of more than one time stamp, by stating "at least one," and the microprocessor associates the time stamp with the "received movement data," which does not indicate that the movement data consists of solely one specific step (e.g., the 5000th step). Rather, movement data indicates a data set instead of a data point.

Additionally, the Court's claim construction states "time stamp information *reflecting* the time recorded or noted by the system." *Id*. at p. 8. The Court provided no additional definition for the term "reflecting." Therefore, this term is given its "ordinary and customary meaning." *Phillips*, 415 F.3d at 1312. Based on its ordinary and customary meaning, the term "reflecting" generally means to "embody or represent." Based on this meaning, the term "reflecting" in the claim construction means the time stamp that embodies or represents "the time recorded or noted by the system." The evidence shows the Accused Products' time stamps do embody or represent the time recorded or noted by the system for the user-defined event.

### 2. LoganTree Provides Evidence of the Recorded Time Stamps and the First Event Information related to when the User Defined Step Goal is Achieved.

Based on the Court's claim construction and the claim language, LoganTree provided evidence of the recorded time stamps in the Accused Products' source code and the .FIT files from the devices. **Ex. A**, Myers Report; **Ex. B**, Myers' Depo. Trans., at 89:9-10, 131:13-20, and 133:13-15. As explained in Myers' report and deposition, Myers conducted testing of the devices, which exemplified one or more time stamps reflecting the occurrence of the user-defined event. Myers explained how the time stamps were reflected in the .FIT file.  In particular, a manual step goal (e.g., 750 steps) was set for the devices.  **Ex. B**, *Myers' Depo. Trans.*, at 45:18-22; 50:25-51:2. The wearer of the device would walk to exceed 750 steps.  *Id*., at 87:10-12.  The test was structured to demonstrate key observations, one being that the .FIT file logs events when a daily step goal is met or a multiple events goal is met.  *Id*., at 87:12-17.  Myers structured the walking activity to where at least one 15-minute interval would be crossed to show that is a basic logging event that is baked into the Garmin devices.  *Id*., at 87:18-22.  Myers also showed how the devices log events in the .FIT file based on if you stop walking or if you change the level of vigor that you are walking or speed.  *Id*., at 87:10-88:3.

Once the step goal was met, the devices gave instant information to the wearer of the device that the step goal was met. **Ex. A**, *Myers Report*, at 67, 68, 97, 98, 180, 210, 211, 290, 291, 320, 321, 511 and 512.

Myers hands on use and testing provides evidence which demonstrates that the Accused Products infringe the '576 Patent. Contrary to Garmin's assertions, the Accused Products do not <u>*only*</u> record timestamps on regular predetermined intervals (i.e., every 15 minutes) or when a user changes activity (e.g., slows down, stops, or speeds up). The Accused Products also record a timestamp when a user-defined step goal is met. LoganTree has presented evidence that each Accused Product records time stamps when the user defined step goal is achieved.

First, the record has ample evidence to show that the Fenix 5 system records a timestamp when the user-defined step goal is met. The Fenix 5 system's timestamp is tied to what is called a "minute boundary." This timestamp is detected and recorded in connection with step count data on a second interval. **Ex. B**, *Myers Depo. Trans.*, at 101:06-07. Then, that timestamp is merely moved to the beginning of the minute boundary. **Ex. A**, *Myers Expert Report*, at 104. Myer's testing demonstrates that the Fenix 5 consistently records a timestamp at the user-defined step goal and its multiples. **Ex. B**, *Myers Depo. Trans.*, at 102:07-08; **Ex. A**, *Myers Expert Report*, at 104. What is stored in the .FIT file does not need to show 750 steps, because a timestamp is nevertheless being recorded directly in response to meeting the step goal. **Ex. B**, *Myers Depo. Trans.*, at 99:5-8.

The Vivosport works on the same level of granularity (i.e., minute boundary) as the Fenix 5, as also demonstrated by Myer's testing. **Ex. A**, *Myers Expert Report*, at 187. When the user defined goal is met, the step count is recorded in connection with a timestamp, and then the timestamp is tied to a minute boundary. **Ex. B**, *Myers Depo. Trans.*, at 133:13-19.

The Forerunner 25 and 235 devices similarly infringe the '576 Patent but record timestamps in a slightly different way. **Ex. B**, *Myers Depo Trans*. at 133:13-14.  Instead of tying one timestamp to a minute boundary, two timestamps are recorded within 15-minute boundaries. **Ex. A**, *Myers Expert Report*, at 298; **Ex. B**, *Myers Depo. Trans*., at 144:06-14. The user-defined goal is met, recorded, and encompassed within these two timestamps. **Ex. B**, *Myers Depo. Trans*., at 142:5-24.

While the Vivofit is unique from the other devices in that it does not have a physical port to directly access its files, when data is pulled from the device the data verifies that the devices logs and stores when then user-defined step goal is reached. **Ex. A**, *Myers Expert Report*, at 491. The Vivofit works differently than the other Accused Products because the data in the .FIT file is logged in a curve, which is then compared to the goal. **Ex. B**, *Myers Depo. Trans*., at 149:3-6. Myers confirmed the accuracy of this timestamp through his testing.

Additionally, Myers explained how the Accused Products show the first event information. Through his testing, the .FIT files logged "events when a goal, a daily step goal [was] met or a multiple events goal [was] met." **Ex. B**, *Myers' Depo. Trans.*, at 87:10-20. The .FIT files clearly show first event information, and Garmin's contention that the Accused Products do not record this type of information is wholly inaccurate.

Garmin contends multiple times that LoganTree's expert's opinion was pure speculation, conclusory and is not "evidence" of the patent infringement. However, case law specifically supports the use of deposition testimony as evidence to support an opposition to a motion for summary judgment. *Adler*, 144 F.3d at 670; *supra* at p. 7. In essence, Garmin's argument requests the Court determine the weight and credibility of the evidence provided by LoganTree. However, a motion for summary judgment "does not empower a court to act as the jury and determine the

witness credibility, weigh the evidence, or choose between competing testimony." *Snyder v. American Kennel Club*, 661 F.Supp.1219, 1235 (D. Kan. 2009). Therefore, Garmin's contentions regarding the weight and credibility are invalid, and LoganTree has met its burden by providing evidence of Garmin's infringement.

Further, Garmin attempts to discredit LoganTree's evidence based on the *CommScope* case. *See CommScope Techs. LLC v. Dali Wireless, Inc.*, 10 F.4th 1289 (Fed. Cir. 2021). In *CommScope*, the claim required the controller to render itself "nonoperating," when the controller was actually "continuously operating." *Id*. at 1298. *CommScope* represents a lack of literal patent infringement when the claim construction and the actual product in question are wholly opposite one another, which does not exist in this instant case. Garmin argues that a time stamp ***before*** the goal was reached is the same as a wholly opposite result as exemplified in *CommScope*, but this argument is invalid. Garmin's motion for summary judgment even states it has "unrebutted evidence showing the opposite" and claims the .FIT files show "the opposite" of the claim construction. ECF 191, at p. 18. However, Garmin fails to show how a time stamp "before" the step goal is the opposite of the time the event occurred. Garmin adds a conclusory statement that its argument is supported by its own engineers' testimonies, which even if the Court determines is evidence for Garmin it further proves that a genuine issue of material fact exists regarding the infringement of the Accused Products. Therefore, because a genuine issue of material fact exists regarding LoganTree's literal infringement claim, summary judgment is not proper.

### 3.  Garmin's Minute Boundary Obfuscates the Recorded Time Stamp.

Garmin contends that the Accused Products do not meet the claim construction because the timestamp is not stored on the device to the exact second corresponding with when the user-defined event occurs. Specifically, Garmin states under the claim construction, "the claimed time stamp

'is a recording of the time obtained from the system's real-time clock.'" ECF 191, at p. 18. Garmin continues "the specificity of 'the time stamp information is going to be measured based on the unit of measurement that the real-time clock is programmed to **obtain**.'" *Id*. (*emphasis added*). Garmin then states that the Accused Products "unit of measurement utilized by the real-time clock for recording information is on a 'per second' basis." *Id*. at p. 18. But Garmin contradicts its own unit of measurement by stating that the device records activities based on a "minute boundary." *Id*. at p. 14. For example, Garmin states that even if an activity occurred at 12:29:21 PM, "the time stamp stored does not reflect the time at which the activity change occurred down to the second." *Id*.

Therefore, based on Garmin's own admissions, the real-time clock records information on a "per second" basis, but "the unit of measurement that the real-time clock is programmed to **obtain**" and record on the source code and .FIT file is measured on a one-minute boundary. Garmin's own expert witness provides support that the system obtains step data on a one-minute boundary. He states "the watches write on one-second boundaries, the time is kept as a one-second time. For step data specifically, [the watches] happened to record that on one-minute boundaries." **Ex. E**, *Michalson Depo. Trans.*, at 47:24-25, 48:1. Based on Garmin's expert's testimony, the Accused Products measure time stamp information in both one-second increments and one-minute increments.

Due to the Accused Products recording the step data on a minute boundary, the .FIT file and source code provide step data based on the minute boundary that encompasses the user's step goal rather than the actual user goal step number (e.g. the 5000th step), which supports the movement data causing language in the Court's claim construction. *See supra* at p. 8. In response, Garmin argues that Myer's .FIT file, which provides step data for 208, 238, and 290 steps "belies the minute boundary argument." ECF 191, at p. 19. However, Garmin's expert also provided

support for this data. In addition to the minute boundary data, he stated that the watch also writes data "on a 15-minute boundary" and if it detects "some change in activity." **Ex. E**, *Michalson Depo. Trans.*, at 50:17-18. Therefore, this step data is merely part of the overall written data and not an indicator that the step goal was met prior to reaching the goal.

Garmin seeks to obscure the evidence related to the time stamp and the unit of measurement, but given LoganTree's evidence, a genuine issue of material fact exists, which precludes summary judgment.

### 4. LoganTree Has Provided Sufficient Evidence of Infringement of Claim 20.

Contrary to Garmin's contentions, LoganTree has provided sufficient evidence of infringement of method claim 20. The Federal Circuit has repeatedly found an expert's testimony, supplemented by circumstantial documentary evidence, is sufficient for a jury to find direct infringement of a method claim by a preponderance of the evidence. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986). LoganTree need not provide direct evidence of Garmin using the claimed method to prove direct infringement—"though the evidence of infringement is circumstantial, that does not make it any less credible or persuasive." *See Lucent*, 580 F.3d at 1318. The record contains both expert testimony and circumstantial evidence that (1) Garmin tested its Accused Products and in doing so performed the limitations of Claim 20; (2) that such testing would have occurred in the United States; and (3) that such testing would have been performed during the damages period between March 17, 2015 and November 21, 2017. *Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, 2020 WL 1333131, *5–6 (D. Del. Mar. 23, 2020). Thus, a genuine issue of material fact exists as to whether Garmin infringed Method Claim 20, and summary judgment of the issue is precluded.

First, LoganTree's infringement expert testified in his deposition that, based on his experience, people at Garmin would have performed tasks in the normal course of designing, testing, and validating complex products such as the Accused Products. **Ex. B**, *Myers' Depo. Trans*. at 109–10. This testing involved each limitation of Method Claim 20 because key features of the Accused Products implicate the claim's limitations. Such testing would include setting a user-defined step goal, confirming that the goal is met and displayed on the watch, and confirming that the material written to the .FIT file is correct. *Id*.

Moreover, this testimony is supported and substantiated by documentary circumstantial evidence. The Accused Products' manuals further support that Garmin tests its products, and in doing so, directly infringes Method Claim 20. To create the product manuals, which instruct the user to use the Accused Devices in infringing ways, people at Garmin had to carry out the very tasks they instruct the user to perform. These manuals are circumstantial documentary evidence which, in conjunction with the expert's testimony, sufficiently support a reasonable conclusion that "sometime during the relevant period, it was more likely than not that one person had performed the claimed method using the accused products." *See Lucent*, 580 F.3d at 1318.

Further, this testing of the Accused Products occurred in the United States, because according to Garmin, the Accused Products all fall within business segments of Garmin which are located in Olathe, Kansas. ECF 72, at 6. Specifically, Garmin won its motion to transfer venue in this case because the design and development of the Accused Products takes place in Kansas and "all sources of proof relating to the Accused Products are located in Garmin's Olathe office." ECF 72, at 7. Part of this very development must include testing, without which the manuals which accompany each Accused Product could not be written.

Finally, the copyright dates on the Accused Products' manuals, which are all copyrighted in the United States, are evidence that Garmin tested the Accused Products during the damages period. **Ex. G**, GARMIN_0001474; **Ex. G**, GARMIN_; **Ex. G**, GARMIN_0001474; **Ex. G**, GARMIN_0001474; **Ex. G**, GARMIN_0001474. All of the manuals were copyrighted in 2017. Because the manuals could not have been created without thoroughly testing the products, it follows that Garmin would have had to perform testing before it could write and copyright the manual. Thus, the testing would have been performed during the relevant damages period.

Therefore, evidence exists for LoganTree's Method 20 Claim, and summary judgment is improper.

**B.  Garmin Fails to Meet Its Burden of Establishing the '576 Patent is Invalid by Clear and Convincing Evidence and Genuine Issues of Material Fact Exist for Garmin's Invalidity Claim.**

A patent granted by the United States Patent and Trademark Office ("PTO") is presumed to be valid. 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100-03 (2011). The burden of proving invalidity rests with the patent challenger at all times, who must establish a patent's invalidity by clear and convincing evidence in order to prevail. *Microsoft Corp.*, 564 U.S. at 95; *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1228 (Fed. Cir. 2016) ("Any fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence."). Clear and convincing evidence places within the mind of the fact finder "an abiding conviction that the truth of [the] factual contentions are highly probable." *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those

skilled in the art about the scope of the invention. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  This standard "mandates clarity, while recognizing that absolute precision is unattainable." *Id*. at 910. Thus, "the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter." *Id*. (citations omitted). Despite the requirement for definiteness, the standard "'must allow for a modicum of uncertainty' to provide incentives for innovation, but must also require 'clear notice of what is claimed, thereby appris[ing] the public of what is still open to them.'" *Interval Licensing, LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014).

Despite Garmin's exaggerated assertion that Ferrese's opinion is completely withdrawn, Ferrese provides testimony and an expert report that supports LoganTree's position which causes a genuine issue of material fact, and summary judgment should therefore denied.

1. **Garmin Fails to Show LoganTree Made Inconsistent Positions Regarding the Definition of Claim Terms "Unrestrained Movement" and "In Any Direction"**

Garmin fails to meet its burden of proving indefiniteness by clear and convincing evidence. Garmin's argument heavily relies on *Infinity Computers*, which is misplaced because the facts are readily distinguishable from the instant case. In *Infinity*, the patentee wholly defined claim terms differently rather than merely making arguments against prior art. Specifically, the patentee first argued that the term "passive link" referred to a link extending all the way to the I/O bus of the computer, then, later, the patentee argued the link need only extend to a computer port. *Infinity Comp. Prods., Inc. v. Oki Data Americas, Inc.*, 987 F.3d 1053, 1060 (Fed. Cir. 2021). The patentee's contentions regarding the claim term where "materially inconsistent", thus, the Federal Circuit found that "holding Infinity to both positions results in a flat contradiction." *Id*.  Garmin illustrates this very clearly in the figure at page 27 of its Memorandum. ECF 191 at p. 27. The

illustration makes a very black and white distinction between the contradicting positions taken by the patentee. *Id*.

LoganTree has never made materially inconsistent statements about the claims of the '576 Patent. Garmin cherry picks statements LoganTree made to argue against prior art and the Accused Products, and attempts to analogize these statements to the antithetical definitions offered in *Infinity Computer*. ECF 191, at 26. The analogy plainly fails—none of LoganTree's prior statements define a claim of the '576 Patent in a contradictory manner. All of LoganTree's statements consistently support a cohesive argument which supports its definitions of the claims.

The patentee's contradictory definitions in *Infinity Computer* meant "one of ordinary skill [could not] determine with any reasonable certainty" what the claims covered. *Infinity Computer*, 987 F.3d at 1060.  Garmin has not shown by clear and convincing evidence that a person of ordinary skill in the art cannot determine with reasonable certainty what the '576 Patent's claims cover.

Further, Garmin erroneously contends that LoganTree "stated the Vock/Flentov patents... did not teach measuring unrestrained movement in any direction" to keep its patent. ECF 191, at 25. This is false. This argument during reexamination did not result in allowance. Notably, in *Infinity Computer*, the bedrock of Garmin's argument, the patentee's conflicting definitions of its claim terms did result in allowance during both the patent prosecution and reexamination. *Infinity Computer*, 987 F.3d at 1057-58. In contrast, LoganTree's arguments against prior art throughout reexamination and *inter partes* review have never resulted in allowance.

In sum, Garmin has not shown that LoganTree has taken "materially inconsistent" positions as in *Infinity Computer*. Further, Garmin has erroneously analogized LoganTree's arguments against prior art to *the Infinity Computer* patentee's conflicting claim term definitions and falsely

claims the statements it cites help LoganTree "keep its patent." Garmin has failed to meet its burden of proving indefiniteness by clear and convincing evidence.

In footnote 6, Garmin attempts to suggest that the questions of infringement and invalidity should be considered together, but confusingly cites to case law which contemplates the relationship between infringement and anticipation—not indefiniteness. ECF 191 at p. 24. In *CommScope*, the Federal Circuit was evaluating the "jury's findings of infringement and no anticipation." *CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1294 (Fed. Cir. 2021). In *Peters*, the Supreme Court was similarly considering the issue of anticipation. *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889). In this motion, Garmin is arguing that LoganTree's asserted claims are indefinite. Not only has the Supreme Court noted that validity and infringement are separate issues, anticipation and indefiniteness are two separate theories of invalidity. *See, e.g.,* 35 U.S.C. 112(b); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1383 (Fed. Cir. 2018); *Cardinal Chem. Co. v. Morton Intern., Inc.*, 508 U.S. 83, 96 (1993).  Nevertheless, Garmin, at pages 25 and 26 of the Memorandum, intermixed the issues of validity and infringement creating a confusing and misplace analysis.

With respect to "Zone of Uncertainty", the Supreme Court referred to this "zone of uncertainty" when discussing the statutory requirement of particularity and distinctness of claims in the context of anticipation. Again, Garmin confuses anticipation and invalidity, specifically, indefiniteness, which is misplaced in Garmin's argument and wholly invalid.

Garmin has not provided clear and convincing evidence of the indefiniteness that it claims exists in LoganTree's patent. Therefore, summary judgment is not proper.

**2.  LoganTree Provides Expert Opinion Which Creates A Factual Issue Precluding Summary Judgment of Invalidity for Indefiniteness**

The issue of indefiniteness under § 112 ¶ 2 is an inquiry that is a question of law with underlying issues of fact. *See, e.g., TC Mfg. Co. v. Polyguard Prods., Inc.,* No. 96 C 8392, 1999 WL 753932, at *4 (N.D.Ill. Sept. 15, 1999) (summary judgment precluded because expert evidence created genuine issue of fact as to whether one skilled in art could understand claims); *LNP Eng'g,* 77 F. Supp. 2d at 549-50 (whether person skilled in art would understand meaning of patent claim "is a fact-based inquiry"); *Bausch & Lomb v. Alcon Laboratories, Inc.,* 64 F. Supp. 2d 233, 245 (W.D.N.Y. 1999) ("[U]nderlying factual issues ... preclude the entry of summary judgment."). Ferrese's expert opinion and testimony creates genuine issue of fact precluding summary judgment.

First, Ferrese opines that a person of ordinary skill in the art would understand the scope of the claims in view of the prosecution history. **Ex. J** *Ferrese Expert Report*, 55-58.  Ferrese opined in his deposition that, as one of ordinary skill in the art, he could understand the meaning of the claimed phrase "unrestrained movement in any direction". In particular, when asked his understanding of the meaning of "unrestrained movement in any direction", Ferrese opined: "So unrestrained to me would mean that the movement is not inhibited by an external force, for example. Movement the common meaning of the term, you to know, to translate from one position in space to another perhaps and in any direction. So from an engineering standpoint we describe space using three axes Y, X and Z, if you remember that from calculus during the day, so in any direction would mean that any of those movements along any of those axes would be available." **Ex. I** *Ferrese Depo Trans.*, 8:15–9:2.  Thus, summary judgment should be precluded because Ferrese created a genuine issue of material fact as to whether one skilled in art could understand the claims.

Second, Garmin's assertion that Ferrese withdrew his opinion on indefiniteness is a complete overstatement not supported by his full deposition testimony and expert report.  Instead, Garmin's assertion is based solely on an isolated, cherry picked single Q and A of the deposition testimony.  Specifically, Garmin's counsel initially asked Ferrese regarding Vock's teachings in one form of questioning, and Ferrese disagreed. **Ex. I**  *Ferrese Depo Trans.*, 60:11-17.  Unhappy with Ferrese's answer, Garmin's counsel came back at Ferrese from another angle of questioning, and again, Ferrese disagreed. **Ex. I** *Ferrese Depo Trans.,* 60:18–61:11.  Still, unhappy with Ferrese's answer, Garmin's counsel proceeded with questioning from yet another angle. **Ex. I** *Ferrese Depo Trans.,* 61:17–62:12.  This back and forth confrontation resulted in the one statement, which Garmin relied upon, to allege that Ferrese agreed that his entire opinion on indefiniteness was wrong.  This was an oversimplification of Ferrese's deposition testimony that led Garmin to an erroneous overly broad conclusion. Even to the extent, *arguendo*, there was some inconsistency in Ferrese's testimony, such inconsistency would go to credibility, and not to factual weight of whether Ferrese's testimony is admissible and whether or not to be considered.  *See Snyder v. American Kennel Club*, at 1235. But again neither are valid issues to raise in a motion for summary judgment. *See supra* p. 13.  Garmin cannot boil down Ferrese's testimony regarding Vock/Flentov to one sentence, while ignoring Ferrese's full testimony in his deposition and expert report regarding his position, where Ferrese fully explains his opinion. *See* **Ex. I**, *Ferrese Depo. Trans.*, at 27:7–29:11; **Ex. J**, *Ferrese Expert Report*, 55-58.

## V.      Conclusion and Prayer

For all the reasons set forth in this Brief, Garmin has failed to show that no genuine issue of material fact exists regarding LoganTree's infringement claim. Further, Garmin has failed to meet its burden with clear and convincing evidence to show that LoganTree's claim is invalid due

to indefiniteness. Therefore, LoganTree prays that the Court deny Garmin's motion for summary judgment, and for all other such relief to which LoganTree is entitled.

Respectfully submitted by:

FOULSTON SIEFKIN LLP

/s/*Clayton J. Kaiser*
Clayton J. Kaiser, Kansas Bar #24066
Foulston Siefkin LLP
1551 N. Waterfront Pkwy, Suite 100
Wichita, Kansas 67206
(316) 291-9539
(866) 280-2532 FAX
Email: ckaiser@foulston.com

*and*

MCCATHERN, PLLC

/s/ *Christopher M. Barkley*
Arnold Shokouhi, TX (*pro hac vice*)
Christopher Barkley (*pro hac vice*)
James E. Sherry, TX (*pro hac vice*)
McCathern, PLLC
3710 Rawlins Street, Suite 1600
Dallas, TX 75219
(214) 443-4478
(214) 741-4717 FAX
Email: arnolds@mccathernlaw.com
Email: cbarkley@mccathernlaw.com
Email: jsherry@mccathernlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2022, I electronically filed a copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record for all parties in the case.

/s/*Clayton J. Kaiser*
Clayton J. Kaiser, #24066