**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

LOGANTREE LP,

*Plaintiff,*

vs.

Case No. 17-1217-EFM

GARMIN INTERNATIONAL, INC.,

*Defendant.*

**MEMORANDUM AND ORDER**

This patent infringement suit involves Defendant Garmin International, Inc.'s activity trackers—a popular fitness accessory more commonly known as a smartwatch. Plaintiff LoganTree LP is the owner of U.S. Patent No. 6,059,576 (the " '576 Patent"), which covers, in part, a device to monitor and train individuals during physical activity. LoganTree asserts that 41 models of Garmin's activity trackers infringe claims 1, 4, and 36 of the '576 Patent. Garmin denies that its activity trackers infringe the '576 Patent and asserts that the '576 Patent is invalid for indefiniteness.

This matter comes before the Court on Garmin's Motion for Summary Judgment (Doc. 190). Garmin seeks summary judgment on LoganTree's patent infringement claim and Garmin's affirmative defense that the '576 Patent is indefinite. Because the Court finds triable issues of fact preclude summary judgment, the Court denies Garmin's motion.

## I. Factual and Procedural Background[1]

### A. The '576 Patent

The application for the '576 Patent was filed on November 21, 1997, and the patent issued May 9, 2000. In April 2014, LoganTree filed a request for reexamination of the '576 Patent with the U.S. Patent and Trademark Office (the "Patent Office"), and the Patent Office issued a reexamination certificate on March 17, 2015. The '576 Patent expired November 21, 2017.

LoganTree asserts that Garmin is liable for infringement of claims 1, 4, and 36 of the '576 Patent (the "Asserted Claims").

Claim 1 reads (key limitations noted in bold):

> 1. A portable, self-contained device for monitoring movement of body parts during physical activity, said device comprising:
>
> **a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement**;
>
> a power source;
>
> a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters, detecting a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data, and storing **first event information related to the detected first user-defined event** along with **first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred**;
>
> at least one user input connected to said microprocessor for controlling the operation of said device;
>
> a real-time clock connected to said microprocessor;

[1] The facts are stipulated facts taken from the Pretrial Order (Doc. 187), uncontroverted, or where controverted, stated in the light most favorable to LoganTree, the party opposing summary judgment.

memory for storing said movement data; and

an output indicator connected to said microprocessor for signaling the occurrence of user-defined events;

wherein said movement sensor measures the angle and velocity of said movement.

Claim 4 depends from claim 1 and adds the following limitation: "wherein said movement sensor comprises at least one accelerometer."

Claim 36 depends from claim 1 and adds the following limitation: "wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event."

**B. Infringement Allegations**

LoganTree accuses 41 Garmin activity trackers (the "Accused Products") of literally and directly infringing the '576 Patent from March 17, 2015, through November 21, 2017. These 41 products are split among 5 model families: the Vivofit Model family, the Fenix model family, the Forerunner model family, the Quatix model family, and the Approach model family. For each Accused Product, LoganTree accuses Garmin's user-defined step-goal functionality of infringing the Asserted Claims.[2]

The system's real-time clock within Garmin's Accused Products measures and records information on a "per second" basis. The recorded time is tied to what Garmin calls a "minute boundary." A "minute boundary" is described by Garmin as the transition from one minute to another. For example, if a change of activity occurs at 12:29:21 PM, the next minute boundary would be 12:30:00 PM, while the preceding minute boundary would be 12:29:00 PM. Thus, when

[2] During oral argument, the parties agreed that the operation of the step goal and step counting features are the same throughout all of the Accused Products.

a change of activity occurs between minute boundaries, such as 12:29:21, the stored time stamp stored shows either 12:29:00 PM or 12:30:00. Garmin's choice to use the minute boundary is a choice of precision of the system, presumably because the user does not need to know the exact second of the day the user met his or her daily step goal.

LoganTree's infringement expert, Monty Myers, oversaw extensive testing on the Accused Products. The testing process began with entering 750 steps as the daily step goal ("user defined operational parameter") for the Accused Products. Myers, or another tester, then walked at a constant pace and noted the time when the Accused Products indicated the 750 step goal was reached ("user-defined event"). Myers observed that the Accused Products produce and store an ".FIT file," which contains accumulated data such as step data and time stamps. Myers' testing showed the following results:

- Forerunner 235 .FIT file- time stamp where the user achieved 208 steps;
- Forerunner 25 .FIT file- time stamp where the user achieved 238 steps;
- Vivofit 3 .FIT file- time stamp where the user achieved 290 steps;
- Fenix 5 .FIT file- time stamp where the user achieved 687 steps; and
- Vivosport .FIT file- time stamp where the user achieved 704 steps.

### C. Procedural History

This case has a long procedural history. After LoganTree filed its Complaint in 2017, Garmin moved to stay the case pending Inter Partes Review ("IPR") of the '576 Patent in the U.S. Patent Office. The Court granted Garmin's motion, and the case was stayed for over a year. After the Patent Office issued its decision on the IPR, the Court lifted the stay. The parties then conducted extensive discovery.

In January 2021, the Court issued its *Markman* Order construing certain terms of the '576 Patent.  Specifically, the Court construed the portion of the "storing" limitation found in claim 1. That limitation requires a microprocessor to store "first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred."  The Court construed the term to mean "first time stamp information reflecting the time recorded or noted by the system at which the movement data causing the first user-defined event occurred."  The Court further explained that "the time stamp information is a recording of the time obtained from the system's real time clock," and "is going to be measured based on the unit of measurement that the real-time clock is programmed to obtain, whether that be nanoseconds, seconds, minutes, or some other unit of measurement."  The Court also declined Garmin's request to determine whether the term "unrestrained movement in any direction," also found in claim 1, was rendered indefinite based on LoganTree's positions during prosecution, reexamination, IPR, and this litigation.

Garmin now moves for summary judgment on LoganTree's infringement claim as well as its affirmative defense that the '576 Patent is invalid for indefiniteness.  The Court heard oral argument on Garmin's motion on September 1, 2022.

## II.   Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[3]  In applying this standard, the Court views the evidence and reasonable inferences in the light most favorable to the nonmoving party.[4]  A fact is "material" when it is essential to the claim, and issues of fact

[3] Fed. R. Civ. P. 56(a).

[4] *City of Harrington v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (citation omitted).

are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5]

The movant must initially show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6] A movant that does not bear the burden of persuasion at trial need only show the lack of evidence on an essential element of the claim.[7] If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[8] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[9]

When a defendant moves for summary judgment on its affirmative defense, "[t]he defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."[10] Once the defendant has met this burden, "the plaintiff must then demonstrate with specificity the existence of a disputed material fact."[11] If the plaintiff cannot meet this burden,

---

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir.2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex*, 477 U.S. at 322-23, 325).

[8] *Id.* (citing Fed. R. Civ. P. 56(e)).

[9] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[10] *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) (citations omitted).

[11] *Id.*

"the affirmative defense bars [the] claim, and the defendant is then entitled to summary judgment as a matter of law."[12]

## III. Analysis

### A. Infringement

Garmin seeks a ruling that the Accused Products do not infringe the '576 Patent as a matter of law. The Court determines whether an accused product infringes a patent's claims using a two-step inquiry.[13] First, the Court must construe, as a matter of law, the claims to determine their scope and meaning.[14] In this case, the Court construed the disputed claim terms in its *Markman* Order. Thus, the Court may proceed to the second step of the infringement analysis.

In step two, the Court compares the construed claims to the accused product.[15] This step is the infringement determination and is a question of fact.[16] "To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents."[17] LoganTree asserts that the Accused Products literally infringe the '576 Patent. "Literal infringement requires that each and every claim limitation be present in the accused product."[18] Thus, at the summary judgment stage, a court may properly enter judgment "when no genuine issue of material fact exists, in particular, when no reasonably jury could find that every

---

[12] *Id.* (citation omitted).

[13] *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1370 (Fed. Cir. 2007) (citation omitted).

[14] *Id.*; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

[15] *Elbex Video, Ltd.*, 508 F.3d at 1370 (citation omitted).

[16] *Bai v. L&L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998) (citation omitted).

[17] *Playtex Prods., Inc. v. Proctor & Gamble Co.*, 400 F.3d 901, 906 (Fed. Cir. 2005) (citation omitted).

[18] *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1378 (Fed. Cir. 2006) (citation omitted).

limitation recited in the properly construed claim is or is not found in the accused device."[19] Applying this standard, the Court must determine whether each of the required limitations are found within the Accused Products.  If not, LoganTree's infringement claim fails as a matter of law.

The principal infringement issue is whether the Accused Products store "first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred" as required by independent claim 1, from which claims 4 and 36 depend.  This claim limitation was highly contested during claim construction.  The Court construed it as "first time stamp information reflecting the time recorded or noted by the system at which the movement data causing the first user-defined event occurred."  The Court further explained that "the time stamp information is a recording of the time obtained from the system's real time clock," and "is going to be measured based on the unit of measurement that the real-time clock is programmed to obtain, whether that be nanoseconds, seconds, minutes, or some other unit of measurement."

Garmin asserts two arguments as to why the Accused Products do not meet this claim limitation.  First, Garmin argues that the Accused Products do not store a time stamp when the user achieves a user-defined step goal.  Second, Garmin argues that even if the Accused Products do store a time stamp when the user achieves a user-defined step goal, the Accused Products do not record that time stamp on a second basis—the basis of measurement used by the Accused Products' real time clock—as required by the Court's *Markman* Order.

*1.      Storing "first time stamp information reflecting the time recorded or noted by the system at which the movement data causing the first user-defined event occurred"*

---

[19] *Wi-LAN USA, Inc. v. Ericsson, Inc.*, 675 F App'x 984, 992 (Fed. Cir. 2017) (quoting *Bai*, 160 F.3d at 1353).

Garmin asserts that the Accused Products do not store a time stamp when the user achieves a user-defined step goal. Rather, Garmin contends that the Accused Products store time stamps on regular pre-determined intervals (e.g., every 15 minutes) or at the minute boundary of when a user changes activity (e.g., when a user slows down, stops, speeds up, has a change in heart rate, etc.). Garmin further argues that LoganTree has not offered any evidence that the Accused Products meet this claim limitation because Myers' test results show that the Accused Products "record[] time stamps ***before*** the user-defined step goal is met when the claim requires a time stamp reflecting ***the time at which*** a user achieved his or her user-defined step goal." For example, Garmin notes that Myers' test results show a time stamp recording 208 steps for the Forerunner 235 or a time stamp recording 687 steps for the Fenix 5 when the step goal for both products was 750 steps.

In response, LoganTree argues that Garmin's argument misstates the Court's claim construction. LoganTree argues that the claim limitation does not require the product to store time stamp information when the first user defined event occurred. According to LoganTree, Garmin's interpretation impermissibly removes the following crossed-out language from the claim: "first time stamp information reflecting the time ~~*recorded or noted by the system*~~ at which ~~*the movement data causing*~~ the first user-defined event occurred." LoganTree also argues that Myers' deposition testimony and expert report create a genuine issue of material fact regarding whether the Accused Products practice the claim limitation.

The Court agrees with LoganTree. "The Supreme Court has stated that '[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention. . . .' It is generally improper to construe a patent claim so that express claim limitations or elements are

rendered superfluous."[20] Garmin's argument impermissibly eliminates the phrases "recorded or noted by the system" and "the movement data causing" from the Court's claim construction. Thus, the Court cannot accept Garmin's argument that the claim only requires "a time stamp reflecting the time at which a user achieved his or her user-defined step goal."

Furthermore, Myers' testimony and expert report are sufficient to overcome Garmin's motion for summary judgment. Myers opined that his testing data showed time stamp entries in .FIT files associated with step data other than at every 15-minute interval or a change in activity level. Myers concluded that these time stamps correspond with the time that the step goal would have been met, even though an exact 750 step count did not appear in the .FIT file.

Myers also opined as to why the time stamps did not show exactly 750 steps. It is undisputed that the Accused Products store time stamps at the minute boundary. Myers testified that when the user reaches a step goal, the Accused Products store a time stamp at the minute boundary and record the number of steps that correspond with that minute boundary, not the number of steps that caused the time stamp to be recorded. LoganTree contends that this time stamp information reflects "the movement data causing the first user-defined event" because Garmin's expert testified that the steps in the step count are what cause the step goal to occur.

At oral argument, Garmin disputed Myers' opinions and argued that its infringement expert, Robert Blair, proved that the time stamps Myers was relying upon were not created in response to a user reaching a user-defined step count. This argument, however, presents the

---

[20] *Promos Techs., Inc. v. Samsung Elecs. Co., Ltd.*, 809 F. App'x 825, 834 (Fed. Cir. 2020) (quoting *Warner -Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)).

"classic battle of the experts" at the summary judgment stage.[21] It is not the Court, but the jury's, duty to determine the weight and credibility each expert receives.[22]

Accordingly, the Court concludes that there is a genuine issue of material fact as to whether the Accused Products store "first time stamp information reflecting the time recorded or noted by the system at which the movement data causing the first user-defined event occurred." Therefore, the Court denies summary judgment on this basis.

*2. Measurement of time stamp information*

Garmin next argues that summary judgment is warranted based on the Court's construction of the term "time stamp" in the *Markman* Order. In that Order, the Court stated that the claimed time stamp "is a recording of the time obtained from the system's real time clock." The specificity of "the time stamp information is going to be measured based on the unit of measurement that the real-time clock is programmed to obtain, whether that be nanoseconds, seconds, minutes, or some other unit of measurement."

It is undisputed that the real time clock in the Accused Products measures information on a per-second basis. Garmin thus argues that, under the Court's claim construction, any time stamps relating to the user-defined step goal must record the time, accurate to the second, at which the user-defined step goal was achieved. Garmin argues that the Accused Products are intentionally designed to wait (anywhere from 1 minute to 15 minutes) to write a time stamp associated with step data in the .FIT file. Because these time stamps are recorded on a minute basis, and not a second basis, Garmin contends that they do not match the "time" of the system.

---

[21] *Lapham v. Watts Regulator Co*., 2016 WL 248471, at *6 (D. Kan. 2016) (citations omitted).

[22] *Id*.

In response, LoganTree argues that the evidence shows that the Accused Products store time stamps on a per-second basis. LoganTree points to the Garmin's infringement expert's testimony, in which Blair stated that Garmin has "a 4-byte time stamp that counts the number of seconds since . . . December 31, 1989." LoganTree also points to Myers' .FIT files which show the time stamps recorded on a second basis (by counting the number of seconds since December 31, 1989). Given this evidence, a genuine issue of material fact exists as to whether the Accused Products record time stamps on a minute or second basis.

Overall, the Court concludes that LoganTree has provided sufficient evidence that a rational trier of fact could find that the Accused Products store "first time stamp information reflecting a time recorded or noted by the system at which the movement data causing the user-defined event occurred." Therefore, Garmin's motion for summary judgment is denied as to LoganTree's infringement claim.

**B. Invalidity of the '576 Patent**

Garmin seeks summary judgment on its affirmative defense that the '576 Patent is invalid because it is indefinite. A patent granted by the U.S. Patent and Trademark Office is presumed valid.[23] The burden of proving invalidity falls on the patent challenger, who must establish invalidity with clear and convincing evidence.[24]

"The Patent Act requires that a patent specification 'conclude with one or more claims *particularly pointing out and distinctly claiming* the subject matter which the applicant regards as

---

[23] 35 U.S.C. § 282(a).

[24] *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100-03 (2011); *Cox Commc'ns v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1228 (Fed. Cir. 2016).

[the] invention.' "[25] "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.[26]

In determining whether a patent is invalid for indefiniteness, courts look to the "patent record—the claims, specification, and prosecution history—to ascertain if they convey to one of skill in the art with reasonable certainty the scope of the invention claimed."[27] The prosecution history is "the complete record of the proceedings before the PTO" and includes reexamination proceedings.[28] "Indefiniteness may result from inconsistent prosecution history statements where the claim language and specification on their own leave an uncertainty that, if unresolved, would produce indefiniteness."[29]

To obtain its patent, LoganTree amended the claims by adding the following italicized language: "a movement sensor capable of measuring data associated with *unrestrained* movement *in any direction* and generating signals indicative of said movement." Garmin argues that the '576 Patent is indefinite because LoganTree made conflicting statements during reexamination, the IPR, and this litigation as to what constitutes "unrestrained movement in any direction."

First, Garmin asserts that the LoganTree made inconsistent statements as to what "movement in any direction" means. Garmin asserts that during reexamination LoganTree

---

[25] *Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 901 (2014) (alteration in original) (quoting 35 U.S.C. § 112 (2006)).

[26] *Id*.

[27] *Infinity Comput. Prods., Inc. v. OKI Data Ams., Inc.*, 987 F.3d 1053, 1059 (Fed. Cir. 2021) (quoting *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015)).

[28] *Id*. (quoting *InTouch Techs., Inc. v. VGO Commc'ns, Inc*., 751 F.3d 1327, 1341 (Fed. Cir. 2014)).

[29] *Id*.

distinguished the Vock/Flentov patents from the '576 Patent by arguing that Vock/Flentov, which measures movement in six directions, did not teach unrestrained movement in any direction. Later, during the IPR, LoganTree argued that Stewart, which measures movement in nine directions did not teach unrestrained movement in any direction. But, in this litigation, LoganTree contends that the Accused Products, which contain a movement sensor attached to a user's wrist, do measure unrestrained movement in any direction. Garmin argues that it is nonsensical for a device measuring movement in less directions, i.e., the Accused Products, to infringe while devices that measure movement in more directions do not infringe.

Next, Garmin argues that LoganTree has taken inconsistent positions as to what "unrestrained movement" means. During reexamination, LoganTree argued that the '576 Patent is different from the Vock/Flentov patent, which shows a movement sensor connected to a user's ski/snowboard, because Vock/Flentov does not measure unrestrained movement in any direction. During the IPR, LoganTree argued that the '576 Patent is different from the Stewart patent, which shows a movement sensor connected to a user's head, because Stewart does not measure unrestrained movement in any direction. In this litigation, however, LoganTree contends that the Accused Products, which have a movement sensor connected to the user's wrist, do measure unrestrained movement in any direction. Garmin argues that LoganTree's position in this litigation is inconsistent with its prior positions on Vock/Flentov and Stewart.

The Court cannot conclude that Garmin has proven invalidity by clear and convincing evidence. The Court rejects Garmin's argument to the extent it relies on LoganTree's infringement contentions as a basis for indefiniteness. Indefiniteness results from inconsistent statements made

by the patentee to the Patent Office, not on inconsistent statements made by the patentee during prosecution and then in litigation.[30]

Furthermore, Garmin's reliance on *Infinity Computer Products, Inc. v. Oki Data Americas, Inc.*,[31] is misplaced. In that case, the Federal Circuit held that the patent was indefinite when the patentee defined a claim term in two, contradictory ways before the Patent Office.[32] First, during original prosecution, the patentee argued that the term "passive link" did not allow for intervening circuitry.[33] During reexamination, however, the patentee argued that the "passive link" does include intervening circuitry.[34] The district court found that the term "passive ink" was indefinite based on the defendant's clear and convincing evidence.[35] The Federal Circuit affirmed, finding that "the intrinsic evidence leaves an ordinary skilled artisan without reasonable certainty as to where the passive link ends and where the computer begins."[36]

---

[30] *See id*. at 1060. Garmin has not invoked the doctrine of prosecution history disclaimer, which applies to inconsistent statements made by the patentee during prosecution and litigation. The doctrine of prosecution history disclaimer "preclude[es] patentees form recapturing through interpretation specific meanings disclaimed during prosecutions." *Aylus Networks, Inc. v. Apple Inc*., 856 F.3d 1353, 1360 (Fed. Cir. 2017) (quotation marks and citation omitted). The Supreme Court explained that "when a patentee, on the rejection of his application inserts in his specification, in consequence, limitations and restrictions for the purpose of obtaining his patent, he cannot after he has obtained it, claim that it shall be construed as it would have been construed if such limitations and restrictions were not contained in it." *Id*. (quoting *Roemer v. Peddie*, 132 U.S. 313, 317 (1889)). The doctrine "ensures that claims are not 'construed one way in order to obtain their allowance and in a different way against accused infringers.' " *Id*. (citation omitted).

[31] 987 F.3d 1053 (Fed. Cir. 2021).

[32] *Id*. at 1060.

[33] *Id*. at 1056-57.

[34] *Id*. at 1058.

[35] *Id*. at 1058-59.

[36] *Id*. at 1060.

*Infinity Products* is distinguishable from this case. Unlike the patentee in *Infinity Products*, LoganTree did not provide conflicting definitions to the Patent Office during reexamination and IPR. Instead, LoganTree distinguished the prior art in different ways. During reexamination, LoganTree argues that "unrestrained movement in any direction" does not include movement in limited directions—for example, the axial or vertical movement described in Vock/Flentov. During IPR, LoganTree argued that "unrestrained movement in any direction" does not include "restrained" movement inside a football helmet. Thus, the Court cannot find the '576 Patent invalid based on the Federal Circuit's ruling in *Infinity Products*.

Finally, LoganTree has come forward with expert testimony stating that a person of ordinary skill in the art would understand the scope of the claims in view of the prosecution history. LoganTree's invalidity expert, Frank Ferrese, opined in his deposition that, as one of ordinary skill in the art, he could understand the meaning of the claimed phrase "unrestrained movement in any direction." Garmin argues that Ferrese's opinion is based on the incorrect presumption that Vock/Flentov only measures loft (time) and speed. Garmin further argues that during Ferrese's deposition, Ferrese agreed with Garmin's attorney that Vock/Flentov discloses more than loft and speed, and instead measures "speed, direction, and vehicle height." According to Garmin, this agreement by Ferrese results in a withdrawal of Ferrese's infringement opinion leaving LoganTree with no expert opinion to rely upon for invalidity.

Garmin's argument, however, overstates the deposition testimony. Ferrese's agreement with Garmin's counsel was part of a larger back and forth confrontation regarding what Vock/Flentov discloses. Garmin's counsel had approached the question in a different manner in two previous ways before Ferrese agreed with her. Furthermore, even if Ferrese's testimony was inconsistent with his opinion, this testimony goes to his credibility and can be addressed at trial.

Garmin has not moved to exclude Ferrese's opinion under Fed. R. Evid. 702.  Therefore, the Court will not exclude his testimony on summary judgment.

Overall, the Court concludes that Garmin has failed to meet its burden to show that the '576 Patent is invalid for indefiniteness.  Garmin's motion for summary judgment on its affirmative defense is denied.

**IT IS THEREFORE ORDERED** that that Garmin's Motion for Summary Judgment (Doc. 190) is **DENIED**.

**IT IS FURTHER ORDERED** that Garmin's Motion for Oral Argument (Doc. 199) is **GRANTED**.  The Court held oral argument on Garmin's motion on September 1, 2022.

**IT IS SO ORDERED**.

Dated this 14th day of September, 2022.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE